UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Nelson L. Bruce<br><br>**Plaintiff (s),**<br><br>vs.<br><br>**REV FEDERAL CREDIT UNION, TRANS UNION, LLC, et al.**<br><br>**Defendant(s).** | Case No.: 2:22-cv-01292-BHH-MGB |

### NON-PARTY BANK OF AMERICA, N.A.'S RESPONSE
### TO PLAINTIFF'S MOTION TO COMPEL

Non-Party Bank of America, N.A. ("BANA"), by and through undersigned counsel, hereby files this Response to the Motion to Compel Discovery from Non-Party Bank of America, N.A. Who Was Served a Subpoena (the "Motion") filed by Plaintiff, and state as follows:

### INTRODUCTION

1.   Non-party BANA has worked diligently to comply with the Subpoena to Produce Documents, Information, or Objects or To Permit Inspection of Premises in a Civil Action to BANA (the "Subpoena") issued by Plaintiff. The Subpoena largely included requests that were overly broad and that impose an unreasonable burden on BANA, a non-party. Nonetheless, in the interest of cooperation, BANA conducted reasonably diligent searches for responsive, non-privileged documents and produced various documents in response to the Subpoena.

2.   Despite BANA's good faith efforts to respond to the Subpoena, and having spent numerous hours investigating and researching Plaintiff's requests, Plaintiff filed the Motion requesting that BANA produce records related to the charge-off of an account that Plaintiff originated on or around July 31, 2015 in the name of his small business, Capital Return

Investments, LLC, ending in *8269 (the "Account"). Specifically, the Motion requests that BANA provide records related to "whether the [A]ccount was charged-off/written-off and charged to the[] ALLL account or whether they received a reduction as a result of writing the account off."

3.      The Motion should be denied for the simple reason that Plaintiff fails to articulate how such information is relevant to any party's claim or defenses. Additionally, the Motion ignores the limitations on discovery imposed by the Federal Rules of Civil Procedure to compel a non-party to comply with discovery requests. Moreover, the Motion fails to comply with applicable local rules, such as conferring with counsel before filing the Motion or attaching the relevant discovery requests, which are not mere technical requirements, but rather play an important role in promoting judicial efficiency to ensure parties have had an opportunity to work through any issues cooperatively prior to bringing them for adjudication.

4.      Accordingly, for the reasons further articulated below, BANA respectfully requests that the Motion be denied.

## RELEVANT FACTUAL BACKGROUND

5.      The Court issued an Order that granted in part, and denied in part, Plaintiff's motion for issuance of subpoena to BANA on January 19, 2024.

6.      On the same day, Plaintiff issued the Subpoena to BANA.

7.      BANA subsequently submitted its response and objections to the Subpoena (the "Objection Letter"). *See* Exhibit A. The Objection Letter included, in part, specific objections to the Subpoena requests numbered 3, 6, 8, 9, 10, and 11 as they "were overly broad, unduly burdensome, and not relevant to the underlying matter." *Id.* For example, Request number 8 seeks "any and all documents and information in [BANA's] custody, control and possession related to the policies and procedures [BANA] [has] in place all your charged-off debts that have been

charged to your ALLLL (Allowance for Loan and Lease Losses Account)." BANA stated that such a request "purports to require BANA to provide business records and information relating to BANA policy and procedures which are not related to the facts in the underlying case." *Id.*

8. BANA, however, conducted reasonably diligent searches for responsive, non-privileged documents and made an initial production of records with Bates labels BANA_Bruce000001–BANA_Bruce000076, on April 1, 2024.

9. On April 9, 2024, Plaintiff filed the Motion. The Court subsequently granted the Parties' Joint Motions for Extensions to permit BANA additional time to conduct additional searches for records potentially responsive to the Subpoena.

10. During this time period, BANA also worked with Plaintiff in a good-faith effort to resolve the issues raised in the Motion.

11. Plaintiff continued to seek records related to "whether the [A]ccount was charged-off/written-off and charged to the[] ALLL account or whether they received a reduction as a result of writing the account off." Motion at 3.

12. On May 8, 2024, BANA made a supplemental production of records with Bates labels BANA_Bruce000077–BANA_Bruce000082. *See* Declaration of Kristin Matysek Smith ("Smith Decl."), ¶ 8. **In particular, BANA produced records that reflected that the Account was charged off on or around September 30, 2017.** *See id.*

13. BANA informed Plaintiff that other than the documents that were produced to Plaintiff, BANA conducted numerous searches but did not locate any other records that relate to the charge-off of the Account. *Id.*, ¶ 9. However, as Plaintiff continued to request records related to charge-offs and the allowance for loan and lease losses, BANA referred Plaintiff to BANA's

2017 Annual Report which contained additional information and further explanations of charge-offs and allowance for loan and lease losses. *Id.*, ¶ 10.

14.     Despite the fact that BANA has produced information indicating that the account in question was, in fact, charged off, has provided information from its annual report indicating its policies relating to charge-offs, and expressly stating, through counsel, that it has not been able to locate additional records regarding this account, Plaintiff still inexplicably persists in pursuing the present Motion.

## ARGUMENT AND AUTHORITIES

**A. The Motion Should Be Denied Because the Motions and Subpoena Ignore the Limitations on Discovery Imposed by the Legal Standard to Compel a Non-Party to Comply with Discovery Requests.**

15.     The Federal Rules of Civil Procedure ("FRCP" or "Rule") by their plain terms allow the court to limit discovery so as to avoid cumulation, harassment, expense, and undue burden. *See* Fed. R. Civ. P. 26(b)(1). Indeed, "[o]n motion or on its own, the court must limit the frequency or extent of discovery if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or] (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C) (emphasis added); *see also Hinkle v. City of Clarksburg, West Virginia*, 81 F.3d 416, 426 (4th Cir. 1996) ("[d]istrict [c]ourts enjoy nearly unfettered discretion to control the timing and scope of discovery . . .").

16.     To that end, "[a]ll civil discovery, whether sought from parties or nonparties, is limited by Rule 26(b)(1) in two fundamental ways. First, the matter sought must be relevant to any party's claim or defense. Relevance is not, on its own, a high bar . . . [and] Rule 26 therefore imposes another requirement: discovery must also be proportional to the needs of the case."

4

*Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019), cert. denied, 140 S. Ct. 672, 205 L. Ed. 2d 438 (2019) (internal quotations and citations omitted).

17. A party seeking to compel discovery, therefore, "has the burden to establish its relevancy and proportionality." *Mach. Sols., Inc., v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018). "Proportionality requires courts to consider, among other things, whether the burden or expense of the proposed discovery outweighs its likely benefit" which "relieves . . . the burden of taking unreasonable steps to ferret out every relevant document." *Jordan*, supra, 921 F.3d 180, 188-89. However, "when discovery is sought from nonparties . . . its scope must be limited even more" because "[n]onparties are strangers to the litigation, and since they have no dog in the fight, they have a different set of expectations from the parties themselves." *Id.* (internal quotations and citations omitted).

18. Moreover, a "more demanding variant to the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified." *Id.* (quoting Rule 45 (d)(3)(A)(iv)). While the "ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient . . . courts must give the recipients nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally." *Id.* (internal quotations and citations omitted).

19. On the "benefit side . . . courts should consider not just the relevance of the information sought, but the requesting party's need for it," and the "information sought must likely (not just theoretically) have marginal benefit in litigating important issues." *Id.* Additionally, "[c]ourts should also consider "what information is available to the requesting party from other sources." *Id.* (internal citation omitted). Thus, the requesting party should be able to explain why

it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation . . . ." *Id.*

20. On the burden side, the court "should of course consider the dollars-and-cents costs associated with a large and demanding document production" as well as "other cognizable burdens," including where a "subpoena may impose a burden by invading privacy or confidentiality interests," a company's "interest in protecting competitively sensitive information," or "when a subpoena is overbroad – that is, when it seeks information beyond what the requesting party reasonably requires." *Id.* at 189-90 (internal citations omitted). Thus, a "nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." *Id.*

21. None of the above considerations weigh in Plaintiff's favor. Even a cursory review of the Subpoena reveals how unjustifiably overbroad the requests are. For example, the Subpoena requests that BANA produce "any and all documents and information in [BANA's] custody, control and possession related to the policies and procedures [BANA] [has] in place all your charged-off debts that have been charged to your ALLL (Allowance for Loan and Lease Losses Account)." *See* Subpoena, at 8.

22. The Motion fails to establish the relevancy or proportionality of such requests and whether such requests outweigh the burden placed on BANA.

23. In fact, the Motion makes no attempt to articulate the relevance of the information sought, his need for it, and whether Plaintiff sought to obtain the same information from other sources. *See* Motion at 3, 4. It is not clear from the Complaint or any of the exchanges with Plaintiff's counsel. Indeed, while Plaintiff seems to want information regarding whether BANA charged off the account in question and whether it received any credits for doing so from an

6

accounting and tax standpoint, Plaintiff fails to articulate how this information relates in any way to the Fair Debt Collection Practices Act ("FDCPA") and similar claims asserted in its case, not brought against BANA but brought against defendants TransUnion and Rev Federal Credit Union. Indeed, even if the claim were against BANA, the fact that BANA charged off a bad debt from an accounting standpoint would not mean that the debt is no longer owed by the borrower or collectible. *See, e.g.*, *In re McGarvey,* 613 B.R. 285, 307, n.14 (Bkrtcy. E.D.Cal., 2020) ("the creditor may continue to try and collect (or sell it to someone else to try and collect) the debt. The 'charge-off' does not change the legal enforceability of the debt.").

24. Additionally, as stated in BANA's Objection Letter, such requests purport to "require BANA to provide business records and information relating to BANA policy and procedures which are not related to the facts in the underlying case." Exhibit A. Indeed, Plaintiff has failed to articulate why BANA's policies and procedures with respect to such charge-offs would be relevant to his case against TransUnion and Rev Federal Credit Union. Production of confidential and/or proprietary business records such as policies and procedures, especially those going back several years, is exceedingly burdensome, even for a party. Here, Plaintiff is asking for those without stating any relevance to the case or other basis for needing them from a non-party. BANA has already provided records indicating that it did, in fact, charge off the account in question, and that should be sufficient for Plaintiff in the present case. Accordingly, Plaintiff is plainly not entitled to the relief sought in the Motion.

25. Further, Plaintiff's Subpoena failed to comply with Rule 45(d)(1) requiring that a party take steps to avoid imposing an undue burden or expense on a person subject to the Subpoena. Accordingly, BANA is entitled to protections to the extent that the Subpoena requires disclosure

of privileged or protected matters, trade secrets or other confidential commercial information, and respectfully requests that the Motion be denied.

**B. The Motion Should Be Denied Because the Motion Fails to Comply with Applicable Local Rules.**

26. The motion should also be denied because Plaintiff failed to attach the discovery requests served on BANA to the Motion. Pursuant to Local Rule 37.01(B), a motion to compel discovery must be accompanied by the relevant discovery requests. Because of this iron-clad rule, this Court routinely denies motions to compel when the moving party fails to attach discovery requests and/or responses. *See Davis v. Richland County*, No. 4:12-cv-3429-RMG-TER, 2013 WL 5797270 (D.S.C. Oct. 24, 2013) (denying motion to compel where movant failed to attach the discovery requests); *Cuyler v. Dept. of the Army*, No. 3:08-cv-3261-CMC-JRM, 2009 WL 1749604 (D.S.C. June 22, 2009) (same); *Burgess v. Mathis*, No. 7:17-cv-3343-HMH-KFM, 2018 WL 5849480 (D.S.C. Oct. 16, 2018) (same).

27. In addition, the Court should deny the Motion for the separate and independent reason that Plaintiff failed to meet and confer prior to filing the Motion as required by Local Rule 7.02. The meet and confer requirement under Local Rule 7.02 is not a mere technical requirement. Rather, it plays an important role in promoting judicial efficiency to ensure parties have had an opportunity to work through any issues cooperatively prior to bringing them for adjudication. *See e.g., Atanassova v. Gen. Motors LLC*, No. 2:20-CV-01728-RMG, 2021 WL 3054723, at *2 (D.S.C. Jan. 26, 2021); *Fort v. Leonard*, No. 7:05 1028 HFF WMC, 2006 WL 1487034, at *1 (D.S.C. May 26, 2006). Here, Plaintiff never indicated to BANA's counsel that he was intending to file the Motion.

28. This Court has held that a "party's failure to comply with the Local Civil Rules is sufficient to deny his or her motion." *See CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 715

8

(D.S.C. 2017). Accordingly, the Court should deny the Motion for failing to comply with the Local Rules.

## CONCLUSION

29. For the foregoing reasons, BANA respectfully requests that Plaintiff's Motion to Compel be denied, and all further relief to which it may be justly entitled to.

Date: June 28, 2024

Respectfully submitted,

*/s/ Nicole M. Arcodia*
Nicole M. Arcodia
(SC State Bar #105135)
T. Richmond McPherson III
(SC State Bar #80432)
MCGUIREWOODS LLP
201 North Tryon Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: (704) 343-2038
Facsimile: (704) 444-8783
rmcpherson@mcguirewoods.com
narcodia@mcguirewoods.com

**Counsel for Non-Party**
**Bank of America, N.A.**

## CERTIFICATE OF SERVICE

    I hereby certify that on June 28, 2024, I presented the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

Nelson L. Bruce
P.O. Box 3345
Summerville, South Carolina 29484
E: leonbruce81@yahoo.com

*Pro Se Plaintiff*

Wilbur E. Johnson
Clement Rivers, LLP
25 Calhoun Street, Suite 400
Charleston, South Carolina 29401
E: wjohnson@ycrlaw.com

*Counsel for Trans Union*

Kyle Pietrzak
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

*Counsel for Trans Union*

              */s/ Nicole M. Arcodia*
              Nicole M. Arcodia