IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| NELSON L. BRUCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:22-cv-01292-BHH-MGB |
| | ) | |
| REV FEDERAL CREDIT UNION, TRANS | ) | |
| UNION, LLC, and UNKNOWN DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT TRANS UNION LLC'S**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

COMES NOW Defendant Trans Union LLC ("Trans Union"), by and through the undersigned counsel, files its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and would respectfully show the Court as follows:

## I.    INTRODUCTION

This is one of four lawsuits that *pro se* Plaintiff Nelson L. Bruce ("Plaintiff") has filed against Trans Union.  On June 21, 2022, Plaintiff filed his Amended Verified Complaint ("Complaint") against Trans Union under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*  Plaintiff also makes claims against Trans Union for common law Defamation and under the South Carolina Financial Identity Fraud and Identity Theft Protection Act, S.C. Code Ann. § 37-20-110, *et seq*.

Plaintiff's claims revolve around Trans Union's reporting of a REV Federal Credit Union ("REV FCU") savings account and bankruptcy public record on Plaintiff's credit file as well as Trans Union's reinvestigation regarding those items.  Specifically, Plaintiff contends that REV FCU account number …0121 (the "REV Account") and the bankruptcy record were inaccurately reported and improperly remained on his Trans Union credit file.  *See generally* ECF No. 29.

1

Plaintiff's misrepresentation of the underlying facts does not refute the dispositive issue that his claims ultimately fail because the Rev Account and bankruptcy record were reported accurately and were not misleading[1], in any respect. This undeniable fact disposes of all of Plaintiff's claims against Trans Union and summary judgment should be granted.

## II.     UNDISPUTED STATEMENT OF FACTS

### A.  Chapter 13 Bankruptcy

Plaintiff filed for Chapter 13 bankruptcy on June 13, 2017. Deposition of Nelson Bruce ("Pltf.'s Depo."), Ex. B, 31: 9-11. Plaintiff later filed a Motion to Dismiss, which was granted on July 7, 2017. *Id.*, 35: 6-16. Plaintiff does not dispute that his bankruptcy was dismissed and that the Bankruptcy Court's reporting of the case as being "dismissed for other reasons" is correct. *Id.*, 34: 15-16; 38: 4. Plaintiff further admits Trans Union's reporting of the bankruptcy as dismissed mirrors the Bankruptcy Court's reporting through PACER. *Id.*, 77: 9-10. Despite multiple post-dismissal communications with the Bankruptcy Court, Plaintiff never requested that the Bankruptcy Court change or alter its reporting of his Bankruptcy record as dismissed. *Id.*, 43: 11-14.

### B.     REV FCU

Plaintiff owned a REV FCU deposit account ("REV Account"). ECF No. 29 at ¶ 19. REV FCU reported a balance of $471. Pltf.'s Depo., 71: 17-20. REV FCU ultimately charged off the

---

[1] *Roberts v. Carter-Young, Inc.,* 131 F.4th 241, 250 (4th Cir. 2025) (a report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect). Without proof that a creditor was actually misled, any claim based on Plaintiff's "misleading" argument fails as a matter of law. *Jones v. Equifax Info. Servs., LLC,* No. 2:18-cv-2814, 2019 WL 5872516, at *4 (W.D. Tenn. Aug. 8, 2019). Similarly, any claim based on the argument that Trans Union's reporting was inaccurate or misleading because of an alleged failure to comply with Metro 2 cannot support a claim against Trans Union. *Gibson v. Equifax Info. Servs., LLC,* No. 5:18-cv-00465-TES, 2019 WL 4731957, at *3 (M.D. Ga. Jul. 2, 2019).

Plaintiff's REV Account with the $471 past due balance. *Id.*, 130: 24-25. Plaintiff never repaid the balance on the REV Account.

REV FCU is a reputable and experienced data furnisher that has provided accurate and reliable information regarding its accounts. Declaration of Don Wagner ("Wagner Decl."), Ex. A, at ¶ 9. Under the contract between Trans Union and REV FCU, REV FCU agreed that all information furnished to Trans Union shall be complete and accurate. Wagner Decl., at ¶ 4.

Trans Union also sends annual reminders to each of its data furnishers regarding the data furnisher's obligations to furnish complete and accurate information under the FCRA. Wagner Decl., at ¶ 9. Trans Union has never had reason to doubt the accuracy, completeness, or reliability of the credit data furnished by REV FCU. *Id.*

### C.     Plaintiff's Disputes to Trans Union

In December 2020, Plaintiff disputed the REV Account and the bankruptcy record as reported by Trans Union, saying that they "were not his." Wagner Decl., at. ¶ 12. In response to the December 3, 2020 dispute, Trans Union verified U.S. Bankruptcy Court for the District of South Carolina, case number 17-02941. Wagner Decl., at ¶ 14. Trans Union reviewed and considered Plaintiff's dispute and on December 3, 2020, an Automated Consumer Dispute Verification ("ACDV") form was sent by Trans Union to REV FCU. The ACDV included the full text of Plaintiff's dispute and his comment. Wagner Decl., at ¶ 13. In response to the ACDV, REV FCU verified the accuracy of Plaintiff's REV Account. Wagner Decl., at ¶ 15.

On February 3, 2021, Trans Union received, reviewed, and considered correspondence from Plaintiff, in which he alleged that Trans Union had not *properly verified* his bankruptcy in response to his first dispute and demanded the bankruptcy record be removed from his credit file. Wagner Decl., at ¶ 16. In response to Trans Union's February 3, 2021 request, Trans Union verified U.S. Bankruptcy Court for the District of South Carolina, case number 17-029. Wagner

3

Decl., at ¶ 16.  Trans Union reviewed and considered Plaintiff's dispute and on February 3, 2021, an ACDV was sent REV FCU. The ACDV included the full text of Plaintiff's dispute and his comment.  Wagner Decl., at ¶ 18.  In response to the ACDV, REV FCU verified the accuracy of Plaintiff's REV Account.  Wagner Decl., at ¶ 19.

### III.    <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Evans v. Techs. Apps. & Serv. Co.,* 80 F.3d 954, 958-59 (4th Cir.l996).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson,* 477 U.S. at 248.  Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* The movant also meets its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. 317, 325.  The nonmovant must provide more than "conclusory allegations or mere speculation," and must present specific facts that demonstrate genuine issues for trial.  *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4h Cir. 2002).

## IV.     <u>ARGUMENTS AND AUTHORITIES</u>

### A. Trans Union is Entitled to Summary Judgment on All Causes of Action Because Its Reporting was True and Accurate and Not Misleading

Plaintiff's Complaint alleges that Trans Union inaccurately reported a "balance owed" on his REV Account (ECF No. 29 ¶ 21) and in addition, reported his bankruptcy "without [his] written permission [] and is not reporting the alleged bankruptcy as withdrawn." *Id.* ¶ 30. As a threshold matter, to succeed under §§ 1681e(b) and 1681i of the FCRA, Plaintiff must prove that information in his credit report was inaccurate. *Ritchie v. TRW, Inc., et al.*, No. 91-2208, 1992 U.S. App. LEXIS 1913, at \*5-\*6 (10th Cir. Feb. 3, 1992) (quoting *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)); *Nagim v. Equifax Info. Servs., LLC*, 2011 U.S. Dist. LEXIS 49424 \*11 (D. Colo. 2011). Similarly, Plaintiff's claim under the South Carolina Code Ann § 37-20-170, paralleling § 1681i of the FCRA, also requires that Plaintiff prove an inaccuracy in his credit report. Finally, under South Carolina law, Plaintiff must prove that Trans Union's reporting was false or misleading. Moreover, the truth or substantial truth, i.e., accuracy, of Trans Union's reporting, is a complete defense to Plaintiff's claim for defamation. *A Fisherman's Best, Inc. v. Recreational Fishing Alliance*, 310 F.3d 183 (4th Cir. 2002); *Parrish v. Allison*, 656 S.E.2d 382 (S.C. Ct. App. 2007).

Plaintiff has produced no evidence to support his allegation that his REV Account and bankruptcy record were reported inaccurately. Instead, the competent summary judgment evidence in front of the Court demonstrates that the account and bankruptcy reported accurately at all times. That fact alone disposes of all of Plaintiff's claims and, as a result, summary judgment is warranted.

1.    **Trans Union's Reporting of the REV Account was Accurate and Not Misleading**

Plaintiff contends that Trans Union inaccurately reported his REV Account as "written-off to a profit and loss, deemed uncollectible whereby they receive a tax credit in the amount written off and was supposed to credit the account to zero". ECF No. 29 ¶ 34. Plaintiff also alleges the account reported without a notation that the account was in dispute. *Id*. ¶ 22.

a.    Charged-Off Debt May Report with a Balance

Plaintiff contends that that REV FCU's charge-off (or write-off) of his delinquent account discharged his obligation to repay the debt, thereby requiring the balance to be $0. *Id*. ¶ 34. He further contends that the "write-off" indicates that REV FCU has already been "paid" for the outstanding debt—despite not alleging that he made any payment himself—and that the debt is therefore uncollectible. *Id*. ¶ 35. Plaintiff is simply incorrect, as courts have overwhelmingly held that a creditor, such as REV FCU, as part of its internal accounting practices, is permitted to determine the nature of a debt, and that a "write-off" does not equate to a cancellation of the debt. *See In re Washington*, 581 B.R. 150, 158 n. 15 (Bankr. D.S.C. 2017) ("[A]' 'write off' or 'charge off' is an internal accounting practice and does not have the legal effect of discharging a debtor from the underlying debt."); *Mitchell Bank v. Schanke*, 676 N.W.2d 849, 854 n.7 (2004) ("A 'write off' does not mean that the institution has forgiven the debt or that the debt is not still owing."); *See*, *e.g. Artemov v. TransUnion, LLC*, 2020 WL 5211068, at *4 (E.D.N.Y Sept 1, 2020) (even though banks labeled plaintiff's accounts as charged off, they had no obligation to zero out the overall or past due balance."); *See Lantos v. Equifax Info. Servs., L.L.C.;* 2024 WL 778819, at *3 (D. Me. Feb. 26, 2024) (citing *In re Jones*, 367 B.R. 564: A charged-off debt "has [not] been forgiven; rather, the balance remains on the [debtor's] account).

Here, Plaintiff confirmed that the REV Account belonged to him, was a deposit account with overdraft protection, and had a balance of $471.00. Pltf.'s Depo., 71: 17-20, 73: 16-17. Plaintiff acknowledges that the debt was "written-off" by REV FCU. ECF No. 29 ¶ 34. Although REV FCU reported the debt as written-off/charged off, REV FCU never reported that Plaintiff's balance owed had been discharged or otherwise satisfied. REV FCU's charge-off of the account does not nullify the existence or the amount of the debt owed. As in *Artemov*, the charge-off status does not nullify the existence, or the amount of the debt owed. REV FCU had no obligation to zero out Plaintiff's past due balance simply because it made an accounting decision to charge off Plaintiff's outstanding debts. Plaintiff has not provided any authority to the contrary. Consequently, Trans Union's reporting of the REV Account with a balance, even if charged off, was accurate and not misleading.

### b. A Dispute Notation on an Account is Not an Item of Information that Creates an Inaccuracy Under the FCRA

Plaintiff alleges that Trans Union's reporting of the REV Account, without notating that the account as "in dispute", is inaccurate and misleading. ECF No. 29 ¶ 22. Plaintiff is wrong. The failure to report a dispute remark is neither an inaccuracy nor is it considered an "item of information" required to be reinvestigated under the FCRA. *Hardnett v. Equifax Info. Servs.*, LLC, No. 120CV03017LMMRDC, 2020 WL 9598943, at *4 (N.D. Ga. Dec. 16, 2020), report and recommendation adopted, No. 120CV03017LMMRDC, 2021 WL 2201301 (N.D. Ga. Apr. 26, 2021).

The FCRA requires *data furnishers* to include a dispute notation on an account if they receive a dispute directly from a consumer. Section 1681s-2(a)(3) of the FCRA provides, [i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to

any consumer reporting agency without notice that such information is disputed by the consumer." 15 U.S.C.A. § 1681s-2(a)(3) (emphasis added). Trans Union as a CRA, is likewise required to include the dispute notation on credit reports *if it received the dispute notation from the furnisher*. 15 U.S.C.A. § 1681c(f) provides, "[i]f a consumer reporting agency is notified pursuant to section 1681s-2(a)(3) of this title that information regarding a consumer who was furnished to the agency is disputed by the consumer, the agency shall indicate that fact in each consumer report that includes the disputed information." 15 U.S.C.A. § 1681c(f). According to the plain language of 15 U.S.C.A § 1681s-2 titled "Responsibility of furnishers of information to provide accurate information," it is incumbent upon the furnisher to identify an account as "disputed by the consumer." Trans Union's obligation to report that the account as "disputed" under Section § 1681(c)(f) is triggered only "if a consumer reporting agency is notified pursuant to section 1681s-2(a)(3)".

Here, REV FCU, the furnisher of the account information, never reported a dispute notation to Trans Union. Wagner Decl. at ¶ 19. Even if Plaintiff had provided Trans Union with proof of a direct dispute with REV FCU, such notice does not allow, much less require Trans Union to override the creditor's reporting and mark the account as "in dispute." Furthermore, the FCRA does not require Trans Union to reinvestigate dispute notations as these are not considered "items of information" subject to Trans Union's reinvestigation requirements under § 1681i. *See Hardnett,* 2020 WL 9598943, at *4. The Court in *Hardnett,* clarified that "[t]he important information that the FCRA sought to protect, as evidenced by its definition of the consumer report' in which that information is housed, is decidedly information *about the consumer* — e.g., her identifying information, credit account history, and certain public records." *Hardnett,* 2020 WL 9598943, at *4. The decision to dismiss *Hardnett* underscored the difference between personal

consumer information and a dispute notation, establishing that there's no requirement to reinvestigate a dispute notation. *Id.*

Accordingly, Plaintiff's claims to Trans Union regarding a dispute notation can be distinguished from items of information (e.g., balance, delinquency, payment history), which the FCRA was enacted to protect. *See id.* Therefore, it follows that an allegedly missing dispute notation is not an *inaccuracy* that would require reinvestigation under the FCRA. Because the addition of a "dispute notation" falls outside of Trans Union's purview and Trans Union was not instructed by REV FCU to mark the account as disputed, Plaintiff cannot prove an inaccuracy; thus, entitling Trans Union to summary judgment on Plaintiff's §§ 1681e(b) and 1681i claims.

Furthermore, even if the REV Account included a dispute notation and was reported with a $0 balance, the charged-off account would still be reported as derogatory, indicating to any prospective creditors that Plaintiff had not fulfilled the payment terms of his agreement with REV FCU. Plaintiff has not offered any proof that any potential creditor was misled by Trans Union's reporting of his REV FCU account with a balance. Therefore, the Court should find that Trans Union's reporting of the REV Account was accurate and not misleading.

### 2. Trans Union's Reporting of Plaintiff's Bankruptcy Record was Accurate

#### a.    Plaintiff's Chapter 13 Bankruptcy was Dismissed

Plaintiff contends that Trans Union's reporting of his bankruptcy, without his written consent, constituted an invasion of privacy and an inaccuracy under the FCRA. ECF No. 29 ¶ 30. Plaintiff bases this assertion on his misinformed view that the bankruptcy should have been reported as "withdrawn" rather than "dismissed." *Id.* While the Fourth Circuit has not directly addressed this precise issue, the Seventh Circuit has made clear that reporting a bankruptcy case as "dismissed," rather than "withdrawn," does not constitute an inaccuracy. *Childress v. Experian*

9

*Information Solutions, Inc.*, 790 F.3d 745 (7th Cir.2015). In *Childress*, the court affirmed summary judgment in favor of a CRA that reported in a consumer report that a bankruptcy had been "dismissed," when the consumer argued that it was voluntarily withdrawn. The Seventh Circuit held that there was no inaccuracy because when a case is withdrawn, it is also dismissed. *Id.* at 747. "Every bankruptcy case that is withdrawn at the request of the petitioner is dismissed. There was, therefore, no inaccuracy in the statement in the plaintiff's credit report that her bankruptcy petition had been dismissed." *Id.* (internal citations omitted). District courts within the Fourth Circuit have followed the same reasoning, recognizing that CRAs are entitled to rely on the face of court records or information furnished by a reliable source and are not required to parse nuanced procedural distinctions between types of dismissals. *See Myrick v. Equifax Information Servs., LLC*, No. 5:15-CV-562, 2017 WL 10526179, at *4 (E.D.N.C. Aug. 3, 2017).

Here, Plaintiff alleges that his chapter 13 bankruptcy was withdrawn rather than dismissed; however, his own testimony confirms that his bankruptcy, was in fact, voluntarily dismissed. Pltf.'s Depo., 38: 4-6; 39: 7-10. Plaintiff further testifies that he requested a voluntary dismissal for "legal reasons" so that he could pursue litigation [against furnishers outside of bankruptcy court]. *Id.* 39: 16-20. Even assuming, arguendo, that a meaningful distinction exists between a bankruptcy that is "dismissed" versus "withdrawn"—which it does not—Plaintiff's own summary judgment evidence establishes that he voluntarily dismissed his bankruptcy case. Accordingly, the reporting of the bankruptcy as "dismissed" was accurate, no inaccuracy existed, and Plaintiff's claim fails as a matter of law.

        b.  <u>A Dispute Notation is Not an Item of Information that Creates an Inaccuracy<br>Under the FCRA</u>

While not specifically pled, it appears that Plaintiff is attempting to bring a claim under 15 U.S.C.A. § 1681c(f) for the alleged failure to include a dispute notation on his bankruptcy record.

ECF No. 29 ¶ 22.  As addressed above in Section IV.A.1.b., Plaintiff's claim fails.  Because public records, including bankruptcy records, are not related to Plaintiff's transactions or experiences as a consumer, they are not considered "information furnished" as regulated by § 1681s-2(a)(2)-(3).  Furthermore, even if the Court was to consider the bankruptcy record to fall under § 1681c(f)'s notation requirement, Plaintiff admits he did not dispute the reporting of his bankruptcy directly with the Bankruptcy Court.  Pltf.'s Depo., 43: 11-14.  Therefore, § 1681c does not apply and Trans Union's reporting of Plaintiff's bankruptcy as dismissed and without a "disputed" remark was not inaccurate.

### B.  Plaintiff's § 1681e(b) Claim Fails as a Matter of Law

As stated above, Plaintiff claims that Trans Union inaccurately reported his REV Account with a balance owed and reported his bankruptcy as dismissed.  ECF No. 29 ¶¶ 21, 30.  To succeed under § 1681e(b), "a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."  *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).  A consumer must plead and prove that: (1) inaccurate information was included in his consumer report; (2) an inaccurate consumer report was provided to a third party; (3) the inaccuracy was due to Trans Union's failure to follow reasonable procedures; (4) he suffered damages; and (5) his damages were caused by Trans Union's failure to follow reasonable procedures. *See, e.g., Trans Union LLC v. Ramirez, 141 S. Ct. 2190, 2210 (2021); Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995).*  Plaintiff's claims fail because he cannot prove any of the elements of his claims.

**1. The Reporting of Plaintiff's REV Account and Bankruptcy Was Accurate**

As fully discussed in Sections IV.A.1 and IV.A.2, Plaintiff's REV Account and bankruptcy record reported accurately.  In order to prevail under § 1681e(b), the Plaintiff "must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information.  If [s]he fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation of [§ 1681e(b)], and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency." *Ritchie v. TRW, Inc., et al.*, No. 91-2208, 1992 U.S. App. LEXIS 1913, at *5-*6 (10th Cir. Feb. 3, 1992) (quoting Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991)); see also Eller, 2013 U.S. App. LEXIS 25852 *13-*15.  Plaintiff has not produced any summary judgment evidence that the reporting of his REV Account and bankruptcy record was inaccurate.  To the contrary, all of the evidence before the Court shows that Plaintiff did not repay the debt owed on his REV Account, REV FCU charged off the debt, and Trans Union reported the charged-off account with a balance.

Further, Plaintiff confirms that he filed chapter 13 bankruptcy and voluntarily dismissed his case.  Because there is no inaccuracy, Plaintiff's § 1681e(b) claim fails as a matter of law and Trans Union is entitled to summary judgment.  "[A] CRA's reporting procedures did not violate § 1681e(b) where it reported a bankruptcy petition without later reporting it was withdrawn because requiring a CRA to monitor all dismissals of bankruptcy petitions and investigate whether a case was voluntarily or involuntarily dismissed would 'require a live human being, with at least a little legal training' and 'put an enormous burden on the consumer credit-reporting agencies'" *Childress* at 747. *See also Henson v. CSC Credit Services, et. al.*, 29 F.3d 280, 285 (7th Cir.1994) (noting the reasonable procedures requirement of § 1681e(b) does not require a CRA to go beyond the

face of court records to determine whether they correctly report the outcome of the underlying action).

### 2. Plaintiff Has No Summary Judgment Evidence That an Inaccurate Report Was Published to Third-Party

Plaintiff alleges that Trans Union published his credit report to T-Mobile on May 18, 2020 and Bank of America on November 16, 2020 and January 15, 2021. ECF No. 29 ¶ 31. As discussed above, Plaintiff's credit report did not contain the inaccuracy he alleged and Plaintiff has no evidence what T-Mobile or Bank of America received, much less that it was inaccurate. At the summary judgment stage, Plaintiff must come forth with competent summary judgment evidence. Because Plaintiff has not met that burden, his § 1681e(b) claim fails as a matter of law. *Baker v. Trans Union LLC,* 2009 WL 4042909, at *5-6 (D. Ariz. Nov. 19, 2009). "Consumer reports" are generated by a CRA and delivered to a third party for use in deciding whether the consumer is eligible for credit or for other purposes. *Pettway v. Equifax Info. Servs., LLC*, No. 08-0618-KD-M, 2010 U.S. Dist. LEXIS 13800, at *22 (S.D. Ala. Feb. 12, 2010) (citing 15 U.S.C. § 1681a(d)). Liability only arises under § 1681e(b) when a CRA issues an inaccurate consumer report, or inaccurate consumer reports, to a third party. *TRW Inc. v. Andrews*, 534 U.S. 19, 28-31 (2001); *Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092, 1097 (D. Ariz. 2003). This Court previously held that dissemination of inaccurate information on a credit report to a third party is enough to constitute a concrete injury, but *inaccuracy* is needed. *Burns v. Trans Union, LLC*, No. 4:18-cv-03120-MGL, 2019 WL 3890833, at *3 (D.S.C. Aug. 19, 2019) (emphasis added).

Plaintiff has no evidence that a Trans Union credit report containing an inaccuracy was published to a third party. Because Plaintiff has not produced any evidence that an inaccurate credit report was published to a third-party, his § 1681e(b) claim ultimately fails.

**3.** **Plaintiff Cannot Prove that Trans Union Failed to Follow Reasonable Procedures**

Putting the accuracy of the REV Account and bankruptcy aside, Trans Union is entitled to summary judgment because Plaintiff has no evidence to show that Trans Union failed to follow reasonable procedures.  Plaintiff bears the burden of proof to establish that the procedures followed by Trans Union were unreasonable.  *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1080-81 (D. Or. 2007); *Dalton v. Capital Assoc. Indus., Inc*., 257 F.3d 409, 416 (4th Cir. 2001).  The FCRA does not impose strict liability on CRAs.  *See Guimond*, 45 F.3d at 1333.  Instead, it requires that Trans Union follow reasonable procedures to ensure the maximum possible accuracy of its reports*. See id.*  Plaintiff must show more than a mere inaccuracy; he must show that an inaccuracy resulted from Trans Union's negligent or willful failure to follow reasonable procedures when it prepared his reports.  *See id.*  Plaintiff has no such evidence, and therefore, his § 1681e(b) claim fails as a matter of law.

Furthermore, the affirmative evidence offered by Trans Union defeats Plaintiff's § 1681e(b) claim as a matter of law.  As set forth in the Declaration of Don Wagner:

> Virtually every action undertaken by Trans Union is designed to ensure that Trans Union maintains reasonable procedures to ensure maximum possible accuracy of the data in its consumer files and reports.  Information is accepted only from data furnishers and public records vendors that have passed Trans Union's membership standards and are under contract to provide complete and accurate data.

> Most data is contributed by electronic data transfer in the Metro Format, and all data is reviewed for format errors (for example, data with numeric fields that contain alpha characters, data with mandatory fields that are blank, or data with an improper number of fields), and for anomalies in content (such as a creditor who normally reports 10% of its accounts as in collection suddenly reporting 90% of its accounts in collection, or a creditor reporting all its accounts with the same current balance) prior to the data being loaded to the database.  These procedures were utilized in connection with the data reported on Plaintiff's consumer file and reports.

> When the data is loaded, it is processed by complicated and proprietary algorithms, which are designed to combine data received from different creditors into a single credit file for an individual consumer.  Trans Union monitors data provided by creditors to detect

14

anomalies and patterns of inaccuracies and works with creditors to ensure any problems are corrected. The foregoing policies and procedures were followed in connection with the credit data received from REV FCU and the handling of Plaintiff's Trans Union credit file and disputes.

All of the information contained in Plaintiff's Trans Union credit file related to the REV Account and bankruptcy was reported to Trans Union by REV FCU. Based on Trans Union's experience, REV FCU is a reputable and experienced data furnisher that has provided accurate and reliable information regarding its accounts. Trans Union also sends annual reminders to each of its data furnishers regarding the data furnisher's obligations to furnish complete and accurate information under the FCRA. REV FCU was vetted by Trans Union, and Trans Union has never had reason to doubt the accuracy, completeness, or reliability of the credit data furnished by REV FCU, including the information related to Plaintiff's REV Account.

Trans Union maintains billions of pieces of data in the form of consumer files on its computer system and has spent decades developing and perfecting its policies and procedures. Trans Union followed its procedures in connection with Plaintiff's consumer files and reports.

With each of Plaintiff's disputes, Trans Union's reinvestigation of Plaintiff's disputes was conducted in accordance with Trans Union's policies and procedures, which are specifically designed to meet the requirements of the FCRA. All of Trans Union's reinvestigations were completed within the statutory thirty-day time period for dispute processing under the FCRA and Trans Union verified and updated the disputed accounts after the first reinvestigation, then deleted the disputed accounts after the second reinvestigation. Trans Union notified Plaintiff of the results of its reinvestigations within five days of the completion of each reinvestigation. PenFed never reported any of its accounts to Trans Union as sold, assigned, or transferred.

Wagner Decl. at ¶¶ 4-6, 21.

In addition, Trans Union obtained the record of Plaintiff's bankruptcy by using a third-party record retrieval vendor, LexisNexis, pursuant to the terms of a contract between Trans Union and LexisNexis. Wagner Decl. at ¶ 11. Pursuant to the LexisNexis Agreement, which outlines the requirements and eligibility to retrieve and deliver public record data to Trans Union, LexisNexis is not a furnisher under the FCRA or South Carolina as defined by the FCRA. Based on Trans Union's experience, LexisNexis was a reputable records retrieval vendor and Trans Union never had any reason to doubt the reliability of any records that LexisNexis collected, including the records of Plaintiff's bankruptcy. *Id*.

Moreover, *Childress* makes it clear that Trans Union did not violate 1681e(b) in this case. "[A] CRA's reporting procedures did not violate § 1681e(b) where it reported a bankruptcy petition without later reporting it was withdrawn because requiring a CRA to monitor all dismissals of bankruptcy petitions and investigate whether a case was voluntarily or involuntarily dismissed would 'require a live human being, with at least a little legal training' and 'put an enormous burden on the consumer credit-reporting agencies'" *Childress* at 747. *See also Henson v. CSC Credit Services, et. al.*, 29 F.3d 280, 285 (7th Cir.1994) **(**noting the reasonable procedures requirement of § 1681e(b) does not require a CRA to go beyond the face of court records to determine whether they correctly report the outcome of the underlying action).

Plaintiff has no evidence that Trans Union did not follow reasonable procedures to ensure the maximum possible accuracy of its consumer reports nor can Plaintiff produce any evidence that Trans Union's procedures utilized to verify a bankruptcy public record are unreasonable. The affirmative evidence offered by Trans Union demonstrates that it maintained and followed reasonable procedures in the preparation of its consumer reports in compliance with § 1681e(b). Accordingly, Plaintiff's § 1681e(b) claims fail as a matter of law.

### 4. Plaintiff Cannot Establish the Existence of Recoverable Damages

Plaintiff cannot establish the existence of recoverable damages. In the Fourth Circuit, a plaintiff asserting claims under the FCRA must demonstrate actual damages resulting from the alleged violation. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001) ("To recover under the FCRA, a consumer must present evidence of actual damages sustained as a result of the failure to comply with the Act."). While Plaintiff listed a variety of damages in his Complaint, after discovery, his damage claims boil down to the following: (1) a credit denial from

Tower Credit Union and (2) emotional distress. Pltf.'s Depo. 215: 17-25; 216: 1.   However, Plaintiff has failed to support any of his allegations with competent summary judgment evidence.

A plaintiff must present specific, admissible evidence demonstrating actual damages were sustained as a result of Trans Union's conduct.  *See Dalton* 257 F.3d 409, 418 (4th Cir. 2001). Without any evidence, Plaintiff cannot demonstrate that any of the claimed damages were proximately caused by a violation of the FCRA. As a result, his claims fail as a matter of law.

### a.   Towers Credit Union Denial

The FCRA provides a remedy only for consumers who are actually damaged by a failure to comply with the FCRA. *Cahlin*, 936 F.2d at 1160-61 (affirming summary judgment where Plaintiff failed to offer proof of alleged damage). Where a consumer cannot present any evidence substantiating actual damages, summary judgment must be granted to a credit reporting agency. *E.g., Nagle v. Experian Info. Sols., Inc.,* 297 F.3d 1305, 1307 (11th Cir. 2002) (noting that "failure to produce evidence of damage resulting from a FCRA violation mandates summary judgment."); *Jackson v. Equifax Info. Servs., LLC,* 167 F. App'x 144, 146 (11th Cir. 2006)  (affirming district court's grant of summary judgment to a credit reporting agency on a § 1681i claim because "Jackson failed to produce any evidence indicating that he was damaged as a result of an allegedly inaccurate Equifax report."); *Enwonwu v. Trans Union,* 164 F. App'x 914, 918 (11th Cir. 2006) (affirming district court's grant of summary judgment on a § 1681e claim because "Enwonwu has not created a genuine issue of material fact that the inaccurate information reported by Trans Union caused him harm."); *Jianqing Wu v. Trans Union*, No. CIVA AW-03-1290, 2006 WL 4729755, at *11 (D. Md. May 2, 2007), *aff'd sub nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007).

Here, Plaintiff alleges that on December 12, 2021, Towers Credit Union ("Towers") denied his application for a $30,000 line of credit due to Trans Union's reporting of his bankruptcy status as dismissed. Pltf.'s Dep. 171: 3–6; 21–23; 172: 1. However, Plaintiff admits that he has no evidence that Towers denied his application solely because of the bankruptcy status reported on his Trans Union credit file. Pltf.'s Dep. 175: 15–18. He further concedes that he is unfamiliar with Towers's lending criteria, including whether Towers independently verified his bankruptcy records before making its decision. *Id.* 174: 21–22. Accordingly, even assuming the existence of an inaccuracy—which there is not—Plaintiff cannot produce any evidence that Towers actually relied on his Trans Union credit report in rendering its decision. In the absence of evidence of lender reliance or causation, Plaintiff cannot establish credit-denial damages as a matter of law.

### b. Emotional Distress

Plaintiff claims to have suffered emotional distress in the form of depression and headaches as a result of the alleged inaccuracies reporting. Pltf.'s Depo. 193: 1-2. A consumer has the affirmative duty to present evidence in support of a claim that a CRA's negligence proximately caused emotional distress. *See Casella v. Equifax Credit Info. Srvcs.,* 56 F.3d 469, 474 (2nd Cir. 1995); *Guimond,* 45 F.3d at 1333. Thus, Plaintiff must present evidence or testimony linking his alleged emotional distress to action or inaction of Trans Union (rather than to some other cause).

Plaintiff has no evidence of an inaccurate credit report published by Trans Union to a third-party and Trans Union's affirmative evidence defeats any such claim, Plaintiff has no basis upon which to recover damages for emotional distress. *See Casella* at 474-75 (declining to hold that a plaintiff is "entitled to damages for pain and suffering simply because he knew of an inaccurate and potentially damaging item in his credit report"); *Wenning v. On-Site Manager, Inc*., No. 14-CV-09693, 2016 WL 3538379, at *20 (S.D.N.Y. June 22, 2016).

**5. Plaintiff Cannot Show Causation**

Even if Plaintiff could show that he suffered some damage, which Trans Union denies, he must then show that the alleged damage was caused by an inaccuracy in a Trans Union credit report. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 969 (3rd Cir. 1996). A plaintiff must produce evidence that the alleged inaccurate information was a "substantial factor" in the denial of credit. *See Id.; Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010). Plaintiff's damage claims fail because he has no evidence substantiating that his alleged damages were caused by Trans Union's alleged reporting of inaccurate information. Without a causal relation between the alleged violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of actual damages. *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004).

**C. Plaintiff's § 1681i Claims Fail as a Matter of Law**

Plaintiff alleges that Trans Union reported inaccurate information regarding his REV Account and bankruptcy record, he further avers that Trans Union failed to include a notation that the REV Account and bankruptcy were disputed. ECF No. 29 ¶¶ 20, 22. Plaintiff further alleges that Trans Union failed to conduct a reasonable reinvestigation of his disputes, giving rise to his claim under the FCRA. *Id.* ¶ 26. Section 1681i(a) states, "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer," the agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A). Plaintiff must provide sufficient evidence to show: (1) his credit report contains inaccurate or incomplete information; (2) he notified Trans Union of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4)

Trans Union failed to respond or conduct a reasonable reinvestigation of the disputed items; and (5) the failure to reinvestigate caused him to suffer actual damages. *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 451 (E.D. Va. 2009); *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1334 (S.D. Fla. 2011) (citing *Bermudez v. Equifax Info. Servs., LLC*, No. 607CV-1492-ORL-31GJK, 2008 WL 5235161, at *4 (M.D. Fla. Dec. 15, 2008)).  Plaintiff cannot prove his Trans Union credit report contained an inaccuracy nor can Plaintiff prove that Trans Union failed to respond or conduct a responsible reinvestigation therefore, all of his claims fail.

### 1. Plaintiff Cannot Establish the Existence of an Inaccuracy

Plaintiff's § 1681i claim fails for the same reasons stated above in Sections IV.A.1 and IV.A.2.  Plaintiff has no evidence to support his claim that his REV Account and bankruptcy record were reporting inaccurately on his Trans Union credit report.  In order to prevail on his § 1681i claim, Plaintiff must show the existence of an inaccuracy. *Nagim v. Equifax Info. Servs., LLC*, 2011 U.S. Dist. LEXIS 49424 *11 (D. Colo. 2011).  Plaintiff cannot present any summary judgment evidence that the disputed REV Account or the bankruptcy record is inaccurate, therefore, his § 1681i claim fails as a matter of law and summary judgment should be granted.

### 2. Trans Union's Reinvestigation of Plaintiff's REV FCU Disputes Were Reasonable

Trans Union's reporting of Plaintiff's REV Account was accurate.  If the Court went beyond the question of accuracy—which it should not—the summary judgment evidence shows Trans Union reinvestigations of the disputed REV Account were reasonable and in compliance with the FCRA.

Generally speaking, Trans Union has developed detailed procedures for providing consumers with access to their credit files and means to request reinvestigations if they disagree with items appearing in their credit reports. Wagner Decl. ¶ 8.  Trans Union investigates each

consumer's claim(s) of credit report inaccuracies. Consumer disputes are received through online, mail or phone contact channels. *Id*. Disputes are entered into Trans Union's proprietary CRS system. Where business rules permit, maintenance to the credit report is performed immediately as requested by the consumer. *Id*. Where further investigation is required, an "automated consumer dispute verification" form (referred to as an "ACDV") is generated and sent to the appropriate data furnisher(s), along with information about the dispute provided by the consumer. *Id*. Verification responses received from data furnishers are then checked against CRS business rules to determine what maintenance is performed to the credit file. *Id*. For dispute verification requests that do not receive a response, maintenance is performed to delete the item from the consumer's credit report. Trans Union then compares the furnisher's response to what is contained in Trans Union's records. Trans Union makes any appropriate updates or deletions based on the furnisher's response, and Trans Union then sends the consumer a summary reflecting the results of the reinvestigation and the status of the items disputed. *Id*.

Courts have held that use of the ACDV process satisfies the credit reporting agency's reinvestigation duty as a matter of law. *Quinn v. Experian Solutions, et al*., No. 02-C-5908, 2004 WL 609357, at *6 (N.D. Ill. Mar. 22, 2004) ("[T]he CDV procedures alone is accepted by courts as an adequate method both for assuring accuracy and for reinvestigation.").

In this case, Plaintiff submitted his first dispute online on December 3, 2020, claiming that the REV Account was not his. Wagner Decl. ¶ 12. That same day, Trans Union sent the dispute to REV FCU via an ACDV, providing a description of the nature of the Plaintiff's dispute, that the account was (not his/hers). Wagner Decl. ¶ 13. In response, REV FCU verified that the disputed information was accurate, and Trans Union sent Plaintiff the results of its investigation on December 12, 2020. Wagner Decl. ¶ 14. Trans Union received another dispute on February 3,

2021. Wagner Decl. ¶ 16. In response to both disputes, REV FCU timely verified that the disputed information was accurate. Wagner Decl. ¶¶ 15,18. Trans Union sent Plaintiff the results of its investigations within 30 days as required under the FCRA. Wagner Decl. ¶ 21.

Despite Plaintiff's dissatisfaction with the outcome, there is no indication that Trans Union failed to conduct a reasonable reinvestigation of in response to each of Plaintiff's disputes of his REV Account and Plaintiff cannot produce any evidence supporting his claim. Therefore, Plaintiff cannot prevail on his §1681i claim and Trans Union's Motion should be granted.

### 3. Trans Union's Verification of Plaintiff's Bankruptcy Record was Reasonable

The FCRA imposes specific duties on consumer reporting agencies regarding the reporting of a consumer's bankruptcy. Under 15 U.S.C. § 1681c(d)(1), "if any case arising or filed under title 11 is withdrawn by the consumer before a final judgment, the consumer reporting agency shall include in the report that such case or filing was withdrawn upon receipt of documentation certifying such withdrawal." This statutory language establishes two essential prerequisites before a CRA has any duty to report a bankruptcy as "withdrawn": (1) the bankruptcy must actually have been withdrawn, and (2) the CRA must receive documentation certifying that withdrawal. Only then does any obligation to modify reporting arise. Courts interpreting the FCRA—including courts within the Fourth Circuit—have consistently held that a plaintiff must demonstrate that the CRA received competent, verifiable documentation before liability can attach. *See Nelson v. Experian Info. Sols., Inc.*, No. 2:23-cv-01634, 2024 WL 3201760, at *4 (D.S.C. June 27, 2024) (granting summary judgment where the plaintiff failed to provide documentation establishing the purported inaccuracy and emphasizing that CRAs may rely on the face of court records absent contrary certified information).

Here, Plaintiff presents no competent summary judgment evidence that he ever provided Trans Union with any certified documentation reflecting that his bankruptcy was "withdrawn" within the meaning of § 1681c(d)(1). To the contrary, Plaintiff's own testimony establishes that his bankruptcy case was voluntarily dismissed, meaning that even under his own characterization, Trans Union's reporting accurately reflected the disposition appearing on the public docket. Plaintiff therefore cannot satisfy the evidentiary requirement necessary to trigger any reporting obligation under § 1681c(d)(1), and summary judgment is proper on this basis alone.

In the event the Court was to proceed further in its analysis, even though Plaintiff cannot establish any inaccuracy in the reporting of his bankruptcy, the undisputed record demonstrates that Trans Union's verification of Plaintiff's bankruptcy information was reasonable. When presented with a dispute from a consumer, where the information submitted by a consumer does not allow Trans Union to update the consumer's file internally, Trans Union conducts an internal investigation of the disputed information. Wagner Decl. ¶ 8. Although Trans Union employs various methods of investigating disputed details in a bankruptcy record, in this instance, the focus was on verifying that the records were properly associated with Mr. Bruce, as he disputed it as "not his." Wagner Decl. ¶ 12. Here, where the dispute centers solely on the ownership of a bankruptcy record, Trans Union confirms the record's association with the Plaintiff by accessing the Court's records through PACER, to ensure the details of the bankruptcy filing correspond with the consumer's personal information, such as name, address, and social security number. Wagner Decl. ¶¶ 14, 17.

Again, Trans Union was never notified that Plaintiff's bankruptcy was withdrawn—because it was voluntarily dismissed—therefore Trans Union was under no obligation to report the bankruptcy record differently. Section 1681c(d)(1) applies only when bankruptcy is withdrawn

23

and only when the CRA receives certified documentation establishing that withdrawal. Plaintiff's failure to produce any evidence triggering a statutory duty under § 1681c(d)(1) warrants summary judgment in Trans Union's favor.

### D. Plaintiff Cannot Prove That Trans Union Willfully Violated the FCRA

Because Trans Union did not negligently violate the FCRA, it could not have willfully violated the FCRA. Willfulness under the FCRA encompasses both intentional and reckless violations of the law. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 58-59 (2007). To prove willfulness, Plaintiff must show (1) Trans Union had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language; and (2) how Trans Union ran a risk of violating the FCRA that was substantially greater than the risk associated with a reading that was merely careless. *Id.* Further, neither the failure to correct alleged errors after receiving notification of an alleged inaccuracy in a consumer's file, nor the mere existence of inaccuracies in a consumer's report alone, can amount to willful noncompliance with the FCRA. *See Barrepski v. Capital One Bank (U.S.A.) N.A.*, No. 11-30160-NMG, 2014 WL 9355983, at *12 (D. Mass. Jan. 24, 2014).

Plaintiff has no evidence to show either required element of his willfulness claim. He has no evidence that Trans Union had a practice or policy that was objectively unreasonable or that Trans Union ran a risk of violating the FCRA that was substantially greater than the risk associated with a reading that was merely careless. Thus, summary judgment should be granted for Trans Union with respect to Plaintiff's willfulness claims.

**E.  Plaintiff's State Law Claims are Preempted**

As discussed above, this suit is merely one in a series of numerous lawsuits Plaintiff has filed against Trans Union and various furnishers in this District.[2]  In each case, Plaintiff repeatedly asserts the same state law theories against Trans Union, common law defamation and alleged violations of the South Carolina Consumer Protection Code, despite rulings from this Court finding such claims preempted or legally deficient.  Here, Plaintiff's Seventh Cause of Action alleges that Trans Union violated §§ 37-20-170 and 37-20-200[3] of the South Carolina Consumer Protection Code ("*SCCPC*"), by purportedly failing to provide him with "sufficient evidence that the information is true and accurate as it relates to the consumer" in response to his credit-report dispute. ECF No. 29 ¶¶ 42, 101.

This Court has already rejected these exact theories.  In *Bruce v. Pentagon Fed. Credit Union*, No. 2:22-cv-02211-BHH, ECF No. 474 (Sept. 29, 2025), this Court granted summary judgment on duplicative SCCPC and defamation claims brought by Plaintiff.  Judge Hendricks held that Plaintiff's state law claims were expressly preempted by the FCRA, explaining that § 1681t(b)(1)(F) bars state requirements or prohibitions concerning the responsibilities of consumer reporting agencies or furnishers related to the handling of disputed information.  *Id*. at 25.  The Court specifically found that § 37-20-170 of the SCCPC is preempted by § 1681t and therefore cannot form the basis of liability against Trans Union.  *Id*.

---

[2] Plaintiff testified that he is able to satisfy his living expenses with proceeds he receives from various lawsuits.  Pltf.'s Depo. 27: 24-25, 28: 1-2.

[3] Any claim based on § 37-20-200 can be easily disposed of by the Court because that Section expressly states that "Damages provided in this section do not apply to section 37-20-170."

## V.     CONCLUSION

For the foregoing reasons, Trans Union respectfully requests that this Court grant its

Motion for Summary Judgment on all of Plaintiff's claims asserted against Trans Union.

Respectfully submitted,


*s/ Wilbur E. Johnson*
Wilbur E. Johnson
Federal ID No.: 2212
CLEMENT RIVERS, LLP
25 Calhoun Street, Suite 400
Charleston, SC 29401
Telephone: (843) 724-6659
Fax: (843) 579-1332
wjohnson@ycrlaw.com
**Counsel for Defendant Trans Union LLC**

Date: December 19, 2025

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th of December 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

I further certify that I forwarded a copy of the foregoing by United States First Class Mail to the following non-CM/ECF participant:

Nelson L. Bruce
P.O. Box 3345
Summerville, SC 29484-3345
***Pro Se Plaintiff***

*s/ Wilbur E. Johnson*
**WILBUR E. JOHNSON**