# Exhibit A

Declaration of Don Wagner
in Support of TU's MSJ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| NELSON L. BRUCE, | ) |
|           Plaintiff, | ) |
| v. | ) Case No.: 2:22-cv-01292-BHH-MGB |
| REV FEDERAL CREDIT UNION, TRANS UNION, LLC, and UNKNOWN DOES 1-100, | ) |
|           Defendants. | ) |

**DECLARATION OF DON WAGNER IN SUPPORT OF
TRANS UNION LLC'S MOTION FOR SUMMARY JUDGMENT**

"I, Don Wagner, hereby declare and state as follows:

1. I am a Specialist III in the Litigation Support department of Trans Union LLC ("Trans Union), am authorized to make this Declaration on Trans Union's behalf, and have personal knowledge of the matters stated herein. I have worked as a Specialist III since August 26, 2023, and have over 28 years of experience in the Consumer Services division at Trans Union. In that capacity, I am familiar with Trans Union's policies and procedures relating to the reporting of consumer credit data and processing of consumer disputes.

2. I have reviewed and am familiar with Trans Union's credit file for Nelson Bruce ("Plaintiff") and the processing of disputes submitted by Plaintiff. I have also reviewed Trans Union's Data Furnisher Reporting Agreement ("DFA") with REV Federal Credit Union ("REV FCU") and the data reported by REV FCU regarding Plaintiff."

3. Trans Union is a "consumer reporting agency" ("CRA") as defined by the Fair Credit Reporting Act ("FCRA"). In compliance with the FCRA, Trans Union has in place and follows reasonable procedures to assure the maximum possible accuracy of the information contained in its credit reports.

1

8419403.4

4. Virtually every action undertaken by Trans Union is designed to ensure that Trans Union maintains reasonable procedures to ensure maximum possible accuracy of the data in its consumer files and reports. Trans Union vets all of its data furnishers and information is accepted only from data furnishers that have passed Trans Union's membership standards and are under contract to provide complete and accurate data.

5. Most data is contributed by electronic data transfer in the Metro Format, and all data is reviewed for format errors (for example, data with numeric fields that contain alpha characters, data with mandatory fields that are blank, or data with an improper number of fields), and for anomalies in content (such as a creditor that normally reports 10% of its accounts as in collection suddenly reporting 90% of its accounts in collection) prior to the data being loaded to the database.

6. When the data is loaded, it is processed by complicated and proprietary algorithms, which are designed to combine data received from different creditors into a single credit file for an individual consumer. Trans Union monitors data provided by creditors to detect anomalies and patterns of inaccuracies and works with creditors to ensure any problems are corrected. The policies and procedures described above were followed in connection with the credit data received from REV FCU and Plaintiff's credit file.

7. Trans Union has hundreds, if not thousands, of procedures in place, all designed to assure the maximum possible accuracy of the information contained in its consumer files and reports. Trans Union takes a comprehensive, collaborative team approach to processing and maintaining its consumer credit data to assure the maximum possible accuracy of its consumer files and reports. For instance, Trans Union's Data Governance Department is made up of a team from across the company with expertise on implementing policies and procedures and potential

changes to assure maximum possible accuracy. Trans Union's Data Performance Team monitors how Trans Union systems are performing and evaluates potential changes to assure maximum possible accuracy of the information contained in its consumer files and reports. It is to Trans Union's advantage to have the most accurate and complete information possible in order to comply with the FCRA.

8. Trans Union requires that all consumer dispute requests be processed in accordance with an established set of reinvestigation policies and procedures. Trans Union investigates each consumer's claim(s) of credit report inaccuracies. Consumer disputes are received through online, mail or phone contact channels. Disputes are entered into Trans Union's proprietary CRS system. Where business rules permit, maintenance to the credit report is performed immediately as requested by the consumer. Where further investigation is required, an "automated consumer dispute verification" form (referred to as an "ACDV") is generated and sent to the appropriate data furnisher(s), along with information about the dispute provided by the consumer. Verification responses received from data furnishers are then checked against CRS business rules to determine what maintenance is performed to the credit file. For dispute verification requests that do not receive a response, maintenance is performed to delete the item from the consumer's credit report. Upon completion of the dispute investigation, investigation results are generated for the consumer and mailed to the consumer (for disputes received by mail or phone). For disputes received on-line, an email is sent advising the consumer that the investigation results can be viewed online. The results also contain a statement regarding procedures the consumer may follow if the consumer disagrees with the results of the reinvestigation, including contacting the data furnisher directly or adding a 100-word statement to the consumer's credit file regarding the disputed information.

3

8419403.4

9. All of the information contained in Plaintiff's Trans Union credit file related to the REV Account was reported to Trans Union by REV FCU. Based on Trans Union's experience, REV FCU is a reputable and experienced data furnisher that has provided accurate and reliable information regarding its accounts. Trans Union also sends annual reminders to each of its data furnishers regarding the data furnisher's obligations to furnish complete and accurate information under the FCRA. REV FCU was vetted by Trans Union before becoming a data furnisher, and Trans Union has never had reason to doubt the accuracy, completeness, or reliability of the credit data furnished by REV FCU, including the information related to Plaintiff's REV Account.

10. Trans Union maintains billions of pieces of data in the form of consumer files regarding more than 200 million consumers on its computer system and has spent decades developing and perfecting its policies and procedures.

11. Trans Union obtained the record of Plaintiff's bankruptcy by using a third-party record retrieval vendor, LexisNexis, pursuant to the terms of a contract between Trans Union and LexisNexis. Pursuant to the LexisNexis Agreement, which outlines the requirements and eligibility to retrieve and deliver public record data to Trans Union, LexisNexis is not a furnisher under the FCRA or South Carolina as defined by the FCRA. Based on Trans Union's experience, LexisNexis was a reputable records retrieval vendor and Trans Union never had any reason to doubt the reliability of any records that LexisNexis collected, including the records of Plaintiff's bankruptcy.

12. On December 3, 2020, Trans Union received, reviewed, and considered correspondence from Plaintiff, claiming that the REV FCU account and bankruptcy record

reporting on his Trans Union report were "Not his/hers." A true and correct redacted copy of the Plaintiff's December 3, 2020, online dispute is attached hereto as **Exhibit A-1**.

13. Trans Union reviewed and considered Plaintiff's dispute and on December 3, 2020, an ACDV for by Trans Union to REV FCU. The ACDV included the full text of Plaintiff's dispute and his comment. True and correct redacted copies of the ACDV sent to REV FCU, is attached hereto as **Exhibits A-2.**

14. In response to the December 3, 2020 dispute, Trans Union verified U.S. Bankruptcy Court for the District of South Carolina, case number 17-02941. **Exhibit A-3**.

15. In response to the ACDV, REV FCU verified the accuracy of Plaintiff's REV Account. A true and correct redacted copy of the reinvestigation results are attached hereto as **Exhibit A-4**.

16. On February 3, 2021, Trans Union received, reviewed, and considered correspondence from Plaintiff, in which he alleged that Trans Union had not *properly verified* his bankruptcy in response to his first dispute and demanded the bankruptcy record be removed from his credit file. A true and correct redacted copy of this correspondence is attached hereto as **Exhibit A-5**.

17. In response to Trans Union's February 3, 2021 request, Trans Union verified U.S. Bankruptcy Court for the District of South Carolina, case number 17-029. A true and correct redacted copy of this correspondence is attached hereto as **Exhibit A-6**.

18. Trans Union reviewed and considered Plaintiff's dispute and on February 3, 2021, an ACDV for by Trans Union to REV FCU. The ACDV included the full text of Plaintiff's dispute and his comment. True and correct redacted copies of the ACDV sent to REV FCU, is attached hereto as **Exhibits A-7**.

5

8419403.4

19. In response to the ACDV, REV FCU verified the accuracy of Plaintiff's REV Account. A true and correct redacted copy of the reinvestigation results are attached hereto as **Exhibit A-8**.

20. REV FCU include a dispute notation in response to Plaintiff's disputes.

21. With each of Plaintiff's disputes, Trans Union's reinvestigation of Plaintiff's disputes was conducted in accordance with Trans Union's policies and procedures, which are specifically designed to meet the requirements of the FCRA. All of Trans Union's reinvestigations were completed within the statutory thirty-day time period for dispute processing under the FCRA and Trans Union verified and updated the disputed accounts and public records after the first reinvestigation. Trans Union notified Plaintiff of the results of its reinvestigations within five days of the completion of each reinvestigation.

22. At no time did anyone at Trans Union do anything or fail to do anything to knowingly, intentionally, or willfully violate any law or Plaintiff's rights or act with conscious or reckless disregard toward Plaintiff. At no time was there any information placed on or kept on Plaintiff's Trans Union credit file that anyone at Trans Union knew to be false or about which anyone at Trans Union entertained some doubt about its truth. Trans Union did not make any misrepresentation to Plaintiff about his file and did not conceal information from Plaintiff about his file.

23. The documents included in the attached **Exhibits A-1 – A-8** were made at or near the time of occurrence of the matters set forth in the attached records by, or from information transmitted by, a person with knowledge of those matters. The attached Exhibits were kept by Trans Union in the regular course of its business, and as a regular practice of Trans Union. The attached Exhibits were made in the course of the regularly conducted business activities of Trans

Union and as a regular practice of Trans Union. The attached Exhibits are exact duplicates of the originals

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed this 18th day of December 2025.

*Donald Wagner*
**Don Wagner**

7

8419403.4