Record/FILE ON DEMAND

RCVD - USDC - CHAS, SC
2026 FEB 20 PM4:31

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Nelson L. Bruce,<br><br>Plaintiff,<br><br>v.<br><br>REV FEDERAL CREDIT UNION, TRANS UNION, LLC, et al.<br><br>Defendants. | Case No.: 2:22-cv-01292-BHH-MGB<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF NO. 235)** |

### INTRODUCTION

Comes now Plaintiff, Nelson L. Bruce respectfully, with his Memorandum of Law in Opposition to Defendants' motions for summary judgment which should be denied. There is a controversy the currently exists, there are genuine issues of material fact which preclude summary judgment on Plaintiff's claims under the Fair Credit Reporting Act (FCRA), including claims under 15 U.S.C. § 1681e(a and b), 15 U.S.C. § 1681i, 15 U.S.C. § 1681b, and 15 U.S.C. § 1681c(d), as well as common-law defamation and state consumer law. In particular, (1) TransUnion's own policies require suppression of a voluntarily dismissed bankruptcy (i.e., "suppressed for other reasons"), yet TransUnion reported the record only as dismissed and failed to label it "withdrawn" as required under 15 U.S.C. § 1681c(d), (2) REV Federal Credit Union failed to mark the account as disputed, rendering the tradeline misleading and inaccurate as the transaction causing an overdraft was clearly disputed and not agreed to, and (3) TransUnion furnished reports/inquiries without a permissible purpose in violation of 15 U.S.C. § 1681b. These accuracy and procedure disputes must be resolved by a jury under Fourth Circuit standards.

Defendants' damages arguments also fail because a willful FCRA violation permits statutory damages and punitive damages under 15 U.S.C. § 1681n even if actual damages are not proven, and a negligent violation permits recovery of actual damages under 15 U.S.C. § 1681o.

## ISSUES PRESENTED FOR A JURY

1. Whether TransUnion's reporting of a voluntarily dismissed bankruptcy contrary to its own policy requiring suppression and without the "withdrawn" designation required by 15 U.S.C. § 1681c(d) raises triable issues under 15 U.S.C. § 1681e(a and b) and 15 U.S.C. § 1681i.(Exhibit H-1)

2. Whether REV Federal Credit Union's failure to note Plaintiff's dispute rendered the tradeline inaccurate or misleading and whether TransUnion failed to ensure maximum possible accuracy and to reinvestigate reasonably.

3. Whether TransUnion procured or furnished consumer reports without a permissible purpose in violation of 15 U.S.C. § 1681b to T-Mobile and Bank of America.

4. Whether Plaintiff may recover actual or statutory damages for willful violations under 15 U.S.C. § 1681n. independent of proof of actual damages.

5. Whether Plaintiff may recover actual damages for negligent violations under 15 U.S.C. § 1681o.

6. Whether Defendants have carried their burden to show categorical preemption of Plaintiff's state-law claims under 15 U.S.C. § 1681t(b)(1) where the state-law duties are not inconsistent with the FCRA and further the same accuracy objectives.

7. Whether the Pacer court documents and docket count as "documentation certifying withdrawal and voluntary dismissal" of the petition for bankruptcy. 15 U.S.C. § 1681c(d)(1) and Exhibit H-1 Dispute Procedures.

8. Whether or not TransUnion is required to do more to be in compliance with the accuracy and completeness standard of the FCRA, to be in compliance with 1681c(d), 1681e(a), 1681e(b), 1681i, when they have voluntarily chosen to furnish bankruptcy information when the bankruptcy court is not the party furnishing the information directly to the CRA to be published as part of the consumer's report.

## SUMMARY OF RELEVANT FACTS

The record contains disputes concerning: (a) TransUnion's reporting of Plaintiff's 2017 Chapter 13 matter after it was voluntarily dismissed, despite internal policies requiring

suppression of such bankruptcies as "suppressed for other reasons," and despite 15 U.S.C. § 1681c(d)'s requirement that a bankruptcy be reported as "withdrawn" when applicable; (b) whether REV failed to mark Plaintiff's account as disputed; (c) whether TransUnion's reinvestigations reasonably addressed Plaintiff's disputes; and (d) whether certain inquiries/uses of Plaintiff's consumer report lacked a permissible purpose under 15 U.S.C. § 1681b. These facts bear directly on the statutory elements under 15 U.S.C. § 1681e(a and b) and 15 U.S.C. § 1681i.

## CRA duties (overview)

A consumer reporting agency must (among other things) use reasonable procedures to assure maximum possible accuracy, promptly reinvestigate disputes, and (when appropriate) record and report the current status of disputed items 1681i(a)(1)(A). Any consumer reporting agency that furnishes a consumer report that contains information regarding any case involving the consumer…arising or filed under title 11 is withdrawn by the consumer before a final judgment, the consumer reporting agency <u>shall</u> include in the report that such case or filing was withdrawn upon receipt of documentation certifying such withdrawal 1681c(d).  Any case decisions that conflict with the law as written is meritless and hereby objected to as such.

*"The CRA must, upon investigation, 'record the current status' of the disputed item. This requires inclusion of any information relating to a change in status of an ongoing matter."[1]*

## Undisputed Facts:

- Plaintiff filed a Chapter 13 petition and the PACER docket and LexisNexis files reflects a filing and a later entry disposing the case as "Dismissed" while the docket references it being voluntarily dismissed for other reasons (see…Exhibit H-2, docket and order attached to the record).

- The bankruptcy court is not a data furnisher. (See Exhibit H-3, April 2018 response from the court).

- TransUnion is acting as both data furnisher and consumer reporting agency when reporting bankruptcy information therefore required have in their possession documents

of the entire bankruptcy record in order to furnish and report accurate and complete information related to the bankruptcy to be in compliance with the FCRA in its entirety.

- That Plaintiff voluntarily requested on 7-5-2017 that the bankruptcy court dismiss the bankruptcy and this is the reasons the bankruptcy was dismissed which is reflected in the court docket (see...Exhibit H-2).

- Plaintiff disputes that the way TransUnion reported the bankruptcy tradeline accurately and completely. That the tradeline does not reflect the procedural posture that plaintiff says established a consumer-requested withdrawal prior to any final court adjudication. See...1681c(d).

- The court order dismissing the case indicates that the plaintiff requested the matter be dismissed, i.e. withdrawn voluntarily dismissed (see...Exhibit H-2)

- TransUnions own Consumer Dispute procedures clearly show that, "If the dismissal papers indicate the bankruptcy was "<u>voluntarily dismissed</u>", which it does, to <u>change the bankruptcy-filing public record Type to voluntarily dismissed</u> (1V, 2V, 3V, or 7V), then <u>suppress the public record with the Suppression Reason of Other (See...Exhibit H-1</u>). Meaning not to display as part of the consumer report.

- Plaintiff disagrees that any amount is owed to Rev. because plaintiff does not agree to the transaction which triggered an overdraft which has been disputed and a chargeback has been requested which Rev. rep. initiated the charge-back request as of August 8, 2019 without any update to the plaintiff after this date (see...Exhibit H-4)

- Trans Union is required to follow 1681c(d), 1681e(a) and 1681e(b) when reporting bankruptcy information. Defendant voluntarily obtains and report bankruptcy information on consumer reports as the courts do not report bankruptcies to CRA's (see...Exhibit H-1, H-3, H-5) such as the defendant therefore trans Union is responsible for preparing a consumer report with complete and accurate information and to follow reasonable procedures to assure maximum possible accuracy of the information 1681e(b). Trans Union when requesting bankruptcy information does not request relevant bankruptcy information to be in compliance with 1681e(a) which states, "Every <u>consumer reporting agency</u> shall maintain reasonable procedures designed to avoid violations of section <u>1681c</u> as part of the initial reporting when they collect bankruptcy information. Does not for example request from LNRS the document retriever whether or not the bankruptcy was voluntarily dismissed/withdrawn by the consumer/petitioner before reporting (see...Exhibit H-2). A necessary requirement for being in compliance with 1681c(d), 1681i(a)(1)(A), 1681e(a) and 1681e(b) in order to report accurate and complete information with maximum possible accuracy.

- That Trans Union conducts its investigation of bankruptcy information directly through Pacer/the Court and or through a vendor who also receives court records (see...Exhibit H-7), which pacer shows that the court records indicate that the reason for dismissal was voluntary and dismissed for other reasons i.e. withdrawn. (see...Exh. H-2, H-5)

Transunion failed to provide the exact procedure used when investigating plaintiff's disputes in violation of 1681i(a)(6)(B)(iii) and 37-20-170(B)(3) at the time of the request for the procedure used. (see…Exhibit 7)

- The plaintiff filed timely consumer disputes to TransUnion (December 2020–May 2022) and received TransUnion reinvestigation result notices (the internal ACDV/reinvestigation forms and the consumer disclosure output). Those notices do not show the specific court filings or source documents TransUnion relied upon, nor do they show that TransUnion recorded the "withdrawn" status plaintiff seeks.

- Trans Union, when investigating a bankruptcy dispute, directly reviews and verifies the court records therefore are in possession of relevant information related to the bankruptcy to report it accurately and completely and in this case in accords with its own policies, to suppress the bankruptcy when it is shown that the bankruptcy was voluntarily dismissed/withdrawn by the consumer.

- Trans Union disputed plaintiff's bankruptcy using claim codes P3 (Not his/hers) and P5 (Claims inaccurate Provide ID, date, amounts, and status.) however never reached out to the consumer with any probing questions (P3- Do you know who this item belongs to? What is your relationship to the person?) (P5 – To whom does this item belong? Are any of the dates on the item incorrect? Are any of the dollar amounts on the item incorrect? What specific piece of information on the item is incorrect?) as provided under Trans Unions Consumer Dispute procedures. (see…Exhibit H-1)

- TransUnion furnished consumer reports to third parties (e.g., Tower/Capital applications, T-Mobile/Bank of America, Navy checks, Exh. H-7) during the time in question; the Tower denial appears in the record and the plaintiff links it to the content of the TransUnion report.

- Plaintiff has pre-paid phone service with Metro PCS and has not signed any agreement terms giving T-Mobile nor Metro PCS written instructions to obtain his consumer report for any reason as there are no credit account with T-Mobile or Metro PCS and no terms on a pre-paid phone service requiring a consumer report be obtained that relate to the plaintiff still meeting any terms of the account as there are no term requiring account review. That T-Mobile never offered plaintiff a firm offer of credit nor insurance was made to the plaintiff which are the requirement to meet the permissible purpose standards of 1681b as directed by Trans Union (Exhibit H-6, NLB1292TU 263 -273).

- Rev Federal Credit unions records at the time of plaintiff's disputes show that Plaintiff disputed the transaction, does not agree with the transaction causing an overdraft that was not reported as disputed which is the current status of the account. That Plaintiff requested a charge-back related to that transaction and that Rev never provided an update related to the results of that dispute as of August 8, 2019. (Exhibit H-4).

- Trans Union was in possession of disputes sent directly to Rev/Heritage Trust supporting the requirement to report the current status of the account as disputed, that plaintiff

disputes any balance owed and that Rev failed to respond to a dispute in the required 30-day timeframe to the dispute and the Request for an authenticated record of accounting therefore the amount alleged could not be verified supporting a requirement for deletion under 1681i. (see…ECF 29-1)

- The Records that both Trans Union and LexisNexis Retrieve provided during discovery support that they were in possession of documents which allow them to report the bankruptcy account accurately and completely, as withdrawn 1681c(d), as dismissed for other reasons, and according to Trans Unions own procedures when they have documentation via a dispute which in this case they have obtained pacer bankruptcy record documentation where the docket clearly evidences the case was voluntarily dismissed and the order of the court dismissing the bankruptcy clearly reads, "ORDER DISMISSING CASE ON MOTION OF DEBTOR(S), This matter is before the Court on a motion to dismiss pursuant to 11 U.S.C. § 1307(b) filed by Nelson Leon Bruce, clearly evidencing a voluntary dismissal." (see…Exhibit H-2, H-5)

(These facts, taken with the attached exhibits, LexisNexis consumer report and the PACER docket, create disputed inferences about what TransUnion knew, what documents it reviewed, whether trans union reported complete and accurate information, whether its reinvestigation was reasonable and whether they have and followed reasonable procedures to report with maximum possible accuracy and completeness of the information.)

## LEGAL STANDARD

Summary judgment is proper only if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Whether a consumer report is inaccurate or whether a CRA's procedures/reinvestigation were reasonable are classic jury questions when the record contains conflicting evidence. The Fourth Circuit's framework under 15 U.S.C. § 1681e(b) requires proof "(1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy."

## ARGUMENT

I. **RESPONSE TO DEFENDANT SECTION IV. A: "Trans Union is Entitled to Summary Judgment on All Causes of Action Because Its Reporting was True and Accurate and Not Misleading" (ECF No. 235 at 5)**

A. **Accuracy is not limited to literal truth; "materially misleading" is enough**

Trans Union frames the threshold as "truth and accuracy," but the governing standard also captures entries that are technically true yet materially misleading. A jury may find an entry "inaccurate" if it is misleading in a way and to such an extent that it can be expected to adversely affect credit decisions. That standard is widely applied and aligns with the FCRA's remedial purpose; reasonableness of procedures is likewise fact-intensive and typically for the jury.[1]

- **Bankruptcy entry.** The dispute centers on whether reporting only "dismissed" (without reflecting "withdrawn", dismissed for other reasons, or the voluntary nature of the dismissal) is materially misleading. Because lenders often treat the context and disposition of a bankruptcy as decision-critical evidenced by Tower Federal Credit Union Denial (see…Exhibit H-7), a jury could conclude that omitting the "withdrawn/dismissed for other reason/voluntary dismissed" qualifier after the consumer specifically contested the status rendered the entry materially misleading.[1]

- **REV tradeline.** Even if a charged-off account may lawfully report a balance in many circumstances, a jury could still find that, in light of the consumer's dispute, the presentation of the tradeline (e.g., balance, payment status, and any dispute indicator) was materially misleading, and that Trans Union's handling of the dispute after being notified that plaintiff disputes the accounts on multiple occasions failed to restore maximum possible accuracy. Determining material misleadingness and procedural reasonableness is a classic jury function.[1]

### B. The bankruptcy "withdrawn" statute creates a fact dispute that precludes summary judgment

Congress expressly required CRAs to include that a bankruptcy "was withdrawn" when the CRA receives documentation "certifying such withdrawal." 15 U.S.C. § 1681c(d)(1). Whether Trans Union had (or reasonably should have obtained in reinvestigation) qualifying documentation is a fact question; if the record shows Trans Union received docket materials or vendor-provided public-record updates identifying the case as withdrawn/voluntarily dismissed, the statute's directive is triggered and noncompliance can support an inaccuracy finding. ***Childress v. Experian Info. Solutions, Inc.,* 790 F.3d 745 (7th Cir. 2015).** Trans Union just

---

[1] "The standard for evaluating the reasonableness of an agency's procedures is what a reasonably prudent person would do under the circumstances." *Whelan,* 862 F.Supp. at 831 (citing *Houston v.. TRW Info. Servs., Inc.,* 707 F.Supp. 689, 693 (S.D.N.Y.1989) (additional citations omitted)). "Whether or not the credit reporting agency followed reasonable procedures 'will be a jury question in the overwhelming majority of cases.' "*Gorman,* 2008 WL 4934047, at *4 (citing *Cahlin,* 936 F.2d at 1156). However, "[t]o defeat a motion for summary judgment on a § 1681 e(b) claim, a plaintiff must minimally present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report." *Whelan,* 862 F.Supp. at 831 (citation omitted) (emphasis added).

like any furnisher when they decide to be both furnisher and CRA by reporting information that adversely effects credit decision is required to report according to the entire court records, not the ones they choose to report. Such acts lack maximum possible accuracy and are unfair to the consumer and violate 1681(d).

TransUnion's reliance on ***Childress v. Experian Info. Solutions, Inc.*, 790 F.3d 745 (7th Cir. 2015)**, is misplaced on this record and does not entitle it to judgment as a matter of law. In Childress, the Seventh Circuit accepted that LexisNexis lacked any reliable automated means to distinguish between voluntary and involuntary bankruptcy dismissals across 94 bankruptcy courts, and therefore held it was not "reasonable" under 15 U.S.C. § 1681e(b) to require a CRA to have a human with legal training review every dismissal to classify it; the court instead approved a procedure under which the agency would act **only upon receipt of documentation from the petitioner** certifying withdrawal. Here, however, Plaintiff's **Exhibit H-8** shows that LexisNexis already maintains a dedicated "withdrawn" or similar field in its own consumer disclosure reports and, as a matter of its ordinary business practices, captures and codes whether a bankruptcy has been voluntarily withdrawn or dismissed by the consumer. In other words, unlike in Childress, the data-retrieval vendor used by TransUnion has already solved the very classification problem that Childress deemed too burdensome. These factual evidence was not presented in the ***Childress*** case. A reasonable jury could therefore find that TransUnion's chosen procedure (see…Exhibit H-2, copy of retrieval data requested by TransUnion to report the bankruptcy) contractually limiting the information it requests or receives from LexisNexis so that its files omit available "withdrawn/voluntarily dismissed by debtor" coding reflected on the PACER docket is itself an unreasonable procedure under § 1681e(b) and a failure to "indicate that such withdrawal" occurred upon "receipt of documentation certifying such withdrawal" within the meaning of § 1681c(d). On this record, TransUnion and LexisNexis both treat PACER bankruptcy docket entries as authoritative; the very docket that TransUnion relies on to report the existence and disposition of the bankruptcy also plainly reflects that Plaintiff's petition was voluntarily dismissed by the debtor. A jury could therefore conclude that TransUnion had "receipt of documentation certifying such withdrawal" when it obtained the PACER-based data

feed from LexisNexis and itself when it conducted its own re-investigation of the Pacer/bankruptcy court records, and that it acted either negligently and/or willfully by (a) refusing to request or carry the existing "withdrawn" coding its vendor already generates, and/or (b) insisting that only a consumer-submitted document rather than the court's own docket would suffice to trigger a "withdrawn" notation. Because a fact-finder could reasonably determine that these self-imposed limits on the data TransUnion accepts from LexisNexis fall short of "reasonable procedures to assure maximum possible accuracy" and violate § 1681c(d)'s withdrawal-indication and voluntary dismissal requirement, summary judgment must be denied and the reasonableness of TransUnion's procedures left for the jury.

- ***Childress*** is not dispositive in Trans Union's favor. While recognizing that a "withdrawn" petition is procedurally a form of dismissal, the Seventh Circuit underscored the statutory trigger: the CRA must reflect "withdrawn" upon receipt of certifying documentation (15U.S.C. § 1681c(d)(1)). A jury could reasonably find that Trans Union's reinvestigation should have captured that status once put on notice by the consumer dispute and available court records/public-record feeds. Seventh Circuit's articulation. In addressing withdrawn/dismissed bankruptcy entries, the Seventh Circuit has explained that a CRA's duty to reflect "withdrawn" arises "upon receipt of documentation certifying such withdrawal," and also that a petition withdrawn by the debtor is, procedurally, a dismissal; thus "dismissed" is not per se inaccurate in the abstract. Yet the statute's documentary-triggered duty remains. ***Childress v. Experian Info. Solutions, Inc.,*** **790 F.3d 745 (7th Cir. 2015).**   In this case, the evidence shows that Trans Union and or its investigation representative investigating on their behalf was submitted court documents from Pacer on about multiple re-investigations as a result of plaintiff's disputes which Trans Union and or its representative operating on their behalf designated to conduct the re-investigation of the bankruptcy which defendant deems is accurate documents and information. Such document certify that Trans Union received documentation certifying withdrawn status, voluntarily dismissed and dismissed for other reasons yet failed to report either status.  Failed to follow their own procedures which indicates that a voluntary dismissal triggers the bankruptcy account to be suppressed for other reasons from the consumer's report (see…Exhibit H-1, trans union dispute procedures - confidential).  Suppressed means in this case to no display to others.

- Reporting "without written permission." To the extent Trans Union argues it could report the bankruptcy regardless of permission, that is beside the point. The FCRA authorizes reporting of bankruptcy cases (subject to time limits) but also imposes accuracy-completeness duties here, the "withdrawn" directive as required by 15 U.S.C. § 1681c(d)(1).  And the requirement to follow their adopted procedure 1681e(b) or to adopt reasonable procedures that are fair to the consumer 1681(d).  Having procedures in place that only require the consumer to produce documents is not reasonable nor fair especially when Trans Union has shown they have the ability and access to obtain this information

and are the parties who decided to furnisher this information without direction from the court.

## C. The reasonableness of Trans Union's procedures and reinvestigation is for the jury

Trans Union relies on vendor feeds and furnisher confirmations. But when a consumer specifically disputes accuracy/completeness, whether Trans Union's checking of PACER (or vendor data) and its communication with furnishers satisfied the FCRA's "reasonable reinvestigation" and "maximum possible accuracy" obligations presents a quintessential jury issue. Summary judgment is disfavored where the dispute concerns the sufficiency of procedures and the potential for misleading presentation to creditors. *Whelan, 862 F.Supp.* at 831 (citing *Houston v.. TRW Info. Servs., Inc.,* 707 F.Supp. 689, 693 (S.D.N.Y.1989) (additional citations omitted)). Also see...*Byrd v. Trans Union LLC* (D.S.C. 2010).

- Bankruptcy disputes. Once notified of a dispute focused on status/ownership (withdrawn/voluntary vs. generic dismissal), a reasonable reinvestigation could require more than verifying identity-matching; it could require confirming the precise disposition reflected in court records and whether the CRA had received documentation triggering 15 U.S.C. § 1681c(d)(1). Whether Trans Union's reinvestigation rose to that level is a fact question. *Whelan, 862 F.Supp.* at 831 (citing *Houston v.. TRW Info. Servs., Inc.,* 707 F.Supp. 689, 693 (S.D.N.Y.1989) (additional citations omitted)). Also see...*Byrd v. Trans Union LLC* (D.S.C. 2010).

- REV tradeline disputes. The adequacy of Trans Union's reliance on a furnisher's ACDV responses, standing alone, in the face of a consumer's contrary materials, is also a fact question under the "reasonableness" standard. Jurors commonly resolve whether merely parroting a source or vendor sufficed under the circumstances. *Id. at Whelan* and *Bryd.*

Because a jury could find the challenged entries materially misleading and the reinvestigation unreasonable particularly in light of the "withdrawn" directive in 15 U.S.C. § 1681c(d)(1), Trans Union Consumer Dispute procedures and that Trans Union does not maintain reasonable procedures designed to avoid violations of section 1681c as required by 1681e(a), nor followed reasonable procedure for maximum possible accuracy under 1681e(b). Trans Union is not entitled to judgment as a matter of law on the threshold "accuracy" issue. The motion should be denied as to Section A.

## II. PLAINTIFF'S RESPONSE TO DEFENDANTS SECTION IV. A1(a-b). (ECF NO. 235 AT 6-9)

Summary judgment should be denied. A reasonable jury could find Trans Union's reporting of the REV tradeline materially misleading because it omitted the "disputed" notation after notice of a bona fide dispute and because its reinvestigation and update duties under the FCRA were not reasonably fulfilled. 15 U.S.C. § 1681e(b)[1]; 15 U.S.C. § 1681i(a)(1)(A)[2]; 15 U.S.C. § 1681i(c)[3].

- Whether Trans Union's reporting of the REV Federal Credit Union account as a charge-off with a balance, without indicating that the account was disputed, was accurate and non-misleading under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i, and whether such reporting defeats related state-law and defamation claims as a matter of law. [1][2][3][6].

- FCRA accuracy and procedures. A CRA must "follow reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b). When a consumer disputes an item, the CRA must conduct a reasonable reinvestigation within 30 days to determine whether information is inaccurate and either delete, correct, and record the current status. 15 U.S.C. § 1681i(a)(1)(A).

- Materiality of dispute notations. The omission of a bona fide dispute can mislead and therefore render reporting inaccurate or incomplete; the Fourth Circuit has recognized this principle in the furnisher context, holding that failing to flag a debt as disputed may be "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Saunders v. Branch Banking & Tr. Co.,* 526 F.3d 142 (4th Cir. 2008).

- Furnisher duties underscore materiality. Congress requires furnishers, upon receiving notice of a dispute, to conduct a reasonable investigation and to report the results and corrections to CRAs underscoring that dispute coding is material information in the credit reporting ecosystem. 15 U.S.C. § 1681s-2(b).

- CRA reinvestigation is a fact question. Whether a CRA's reinvestigation and reporting of nuanced account characterizations is reasonable is generally fact-intensive and not suitable for early resolution. See…*Chyna F. Solus v. Regions Bank,* et al., Civil Action No. 1:19-cv-2650-CC-JKL discussing § 1681i standards and the caution against resolving characterization questions (e.g., "voluntary surrender") without a factual record.

- Defamation and qualified immunity. The FCRA provides a qualified immunity for defamation except where the plaintiff proves malice or willful intent to injure; knowingly

or recklessly omitting a dispute notation after notice can support such a showing. 15 U.S.C. § 1681h(e).

- Collateral attack limitation distinguished. CRAs are not liable where claimed inaccuracies turn on the legal validity of the underlying debt itself; disputes focused on misleading presentation and omission of a known dispute are different. DeAndrade v. Trans Union LLC, 523 F.3d 61 (1st Cir. 2008).

### 1. Omission of the dispute notation creates a triable inaccuracy.

- The Plaintiff alleges Trans Union reported the REV account without indicating that it was disputed (ECF No. 29 at 5-6, 8-10, 12-20 which are hereby incorporated by reference in their entirety). A jury could find that omission "materially misleads" prospective creditors by portraying the account as an undisputed default, which is the type of incompleteness the FCRA is designed to prevent. 15 U.S.C. § 1681e(b); 15 U.S.C. § 1681i(a)(1)(A); 15 U.S.C. § 1681i(c). The Fourth Circuit's reasoning in *Saunders* that failure to report the debt without any mention of a dispute was "misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Id.* (quotations and modifications omitted). Thus failure to report the is actionable supports that the presence or absence of a dispute notation is material to accuracy. *Saunders v. Branch Banking & Tr. Co.*, **526 F.3d 142 (4th Cir. 2008)**. As referenced in *Saunders*, "when a furnisher responds to a dispute verification form and relates an ongoing dispute, Trans Union records the dispute in the credit report and does not include the derogatory information in assessing the credit score" further supporting the damages when it is not reported as disputed.

- Even if the amount or charge-off status were technically correct, "maximum possible accuracy" is not satisfied by a report that omits a known, unresolved dispute after a consumer's notice; whether the omission renders the report misleading is a jury question as it did in *Saunders*. 15 U.S.C. § 1681e(b)[1]; 15 U.S.C. § 1681i(c)

### 2. Reasonableness of Trans Union's re-investigation is genuinely disputed

- Upon receiving the Plaintiff's specific dispute of the REV tradeline, Trans Union was obligated to conduct a reasonable re-investigation and update the "current status" of the account or delete it. 15 U.S.C. § 1681i(a)(1)(A). Whether Trans Union merely parroted furnishers' data or instead took steps reasonably calculated to ensure accuracy and completeness such as ensuring the dispute notation appears if the dispute remained unresolved is a fact question for the jury. *Beseke v. Equifax Info. Servs.* **420 F. Supp. 3d 885 (D. Minn. 2019)**. Whether technically accurate information is sufficiently misleading to qualify as inaccurate for the purposes of the FCRA is generally a question to be submitted to the jury. See, e.g. , *Seamans* , **744 F.3d at 865** ; *Dalton*, **257 F.3d at 415**

- Congress's parallel duties on furnishers to investigate disputes and report corrections to CRAs (including dispute coding) further highlight the reasonableness of expecting a CRA to reflect dispute status where appropriate after reinvestigation. 15 U.S.C. § 1681s-2(b).

### 3. The "truth" defense on balance/charge-off does not resolve the claim as a matter of law

- Trans Union's argument that the charge-off and balance figures were "true" and or accurate does not defeat liability where the overall presentation was materially misleading without the dispute notification, and where reasonableness of reinvestigation remains contested. 15 U.S.C. § 1681e(b); 15 U.S.C. § 1681i(a)(1)(A); 15 U.S.C. § 1681i(c); This case does not collaterally attack the legal validity of the debt itself (which would implicate the limitation recognized in *DeAndrade*); it targets incomplete and misleading reporting by the CRA. *DeAndrade v. Trans Union LLC,* **523 F.3d 61 (1st Cir. 2008)**. However, a collateral attach on the legal validity is sufficient evidence of the inability to verify the disputed items of information under 1681i(a)(5)(A) because the CRA cannot verify the items and should be treated as such.

### 4. State-law claims likewise present triable issues

- South Carolina's statutory claim and common-law defamation are not defeated by a bare "truth" assertion when the omission of a known dispute could render the publication misleading and therefore false in effect. 15 U.S.C. § 1681h(e); S.C. Code Ann. § 37-20-170. The record on Trans Union's knowledge of the dispute and its failure to reflect it can support a finding of malice or willful intent sufficient to overcome pre-emption and proceed to the jury. 15 U.S.C. § 1681h(e); *Saunders v. Branch Banking & Tr. Co.,* **526 F.3d 142 (4th Cir. 200)**.

Because a jury could find that (i) omitting the "disputed" notation after notice rendered the REV tradeline materially misleading, and (ii) Trans Union's reinvestigation and update obligations under the FCRA were not reasonably fulfilled, summary judgment should be denied on the REV account. 15 U.S.C. § 1681e(b); 15 U.S.C. § 1681i(a)(1)(A); 15 U.S.C. § 1681i(c); *Saunders v. Branch Banking & Tr. Co.,* **526 F.3d 142 (4th Cir. 2008)**; *Beseke v. Equifax Info. Servs.* **420 F. Supp. 3d 885 (D. Minn. 2019)**; *Seamans,* **744 F.3d at 865** ; *Dalton,* **257 F.3d at 415.**

### 5. The "charge-off with balance" point does not defeat the claims because Plaintiff challenges incompleteness and reinvestigation not merely the balance amount

- Plaintiff's § 1681e(b)/§ 1681i theory is not a collateral attack on whether a charge-off can carry a balance although previously mentioned. Rather, Plaintiff contends that Trans Union failed to ensure "maximum possible accuracy" and to "record the current status" of the tradeline after being provided with copies of Plaintiff's direct disputes to REV and being directly notified of the dispute. 15 U.S.C. § 1681e(b); 15 U.S.C. § 1681i(a)(1)(A).

- Section 1681i requires a reasonable reinvestigation when a consumer disputes "the completeness or accuracy of any item of information," and it directs the CRA to "record the current status of the disputed information" or delete it. 15 U.S.C. § 1681i(a)(1)(A). A jury could find that the "current status" of this account included that it was disputed given Plaintiff's direct dispute to Trans Union and the supporting documentation he supplied. (ECF No. 29 at 6 which are hereby incorporated by reference in their entirety).

- Whether Trans Union's reinvestigation reasonably accounted for the information Plaintiff provided, and whether omitting a dispute notation rendered the tradeline materially misleading, are classic fact questions. Federal courts have denied summary judgment in FCRA cases presenting disputed facts about what the consumer told Trans Union and what the agency did to ensure accuracy. See, e.g., **Spector v. Trans Union LLC First USA Bank, NA, 301 F. Supp. 2d 231 (D. Conn. 2004)** (denying summary judgment because factual issues existed regarding the reasonableness of its Trans Unions conduct under FCRA").

Summary judgment should be denied. Even assuming arguendo that a charged-off account may continue to report a balance, a reasonable jury could find Trans Union's handling of Plaintiff's dispute materially misleading and its reinvestigation unreasonable under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i(a)(1)(A), particularly where Plaintiff directly notified Trans Union, supplied copies of his prior direct disputes to REV, and Trans Union failed to record the account's current disputed status.

**6. Trans Union had an independent duty under § 1681i to reinvestigate and to record the tradeline's current disputed status, regardless of whether the furnisher sent a dispute code under § 1681s-2(a)(3)**

**a. The statute imposes two distinct pathways to a "disputed" notation:**

1. Furnisher-initiated path: If a furnisher reports to a CRA that an item is disputed pursuant to 15 U.S.C. § 1681s-2(a)(3), the CRA must indicate that fact in each report containing the item. 15 U.S.C. § 1681c(f). That provision does not limit other CRA duties; it adds a separate, automatic trigger when the furnisher supplies the dispute flag.

2.  Consumer-initiated path: Independently, when the consumer directly disputes an item with the CRA, § 1681i requires a reasonable reinvestigation and directs the CRA to "record the current status" of the disputed information or delete it within 30 days. 15 U.S.C. § 1681i(a)(1)(A). The current records of Rev. evidence that plaintiff disputed the account and the transaction which caused an overdraft supporting that the balance reported is disupted. (see...Exhibit H-4, emails with REV challenging the tranaction)

3.  The text confirms that a "dispute notation" is an "item of information" within the scope of § 1681i: Congress required CRAs to (i) review "all relevant information submitted by the consumer," and (ii) after reinvestigation, either delete/modify the item or, if unresolved, "clearly note" the dispute in future reports. 15 U.S.C. § 1681i(a)(4)(5), 15 U.S.C. § 1681i(b)–(c). The Act even refers to "any notation as to disputed information" when directing CRA notifications following deletions or dispute notations underscoring that adding dispute notations is squarely within the CRA's remit. 15 U.S.C. § 1681i(d).

4.  Here, Plaintiff not only disputed directly with Trans Union, but also provided copies of his prior direct disputes to REV as part of his submission (ECF No. 29 at 6). Under § 1681i, Trans Union was required to: (i) timely notify the furnisher and convey "all relevant information" it received from the consumer, and (ii) review and consider all such information in conducting a reasonable reinvestigation. 15 U.S.C. § 1681i(a)(2)(A), 15 U.S.C. § 1681i(a)(4). A jury could find that the failure to reflect that the account remained disputed after that process shows the reinvestigation was not reasonable and did not "record the current status" as the statute commands.

5.  Trans Union's reliance on a furnisher-only trigger (under § 1681c(f)) is misplaced. Section 1681c(f) does not displace § 1681i's independent duties arising from a consumer's direct dispute, nor does it preclude a CRA from noting a dispute when its own reinvestigation leaves the item unresolved and or the consumer supplies a dispute statement. 15 U.S.C. § 1681i(b)–(c).

7. **Plaintiff's evidence creates a triable issue that Trans Union's reinvestigation was unreasonable**

- § 1681i requires Trans Union to "review and consider all relevant information submitted by the consumer" and to modify, delete, and record the current status within 30 days. 15 U.S.C. § 1681i(a)(1)(A), 15 U.S.C. § 1681i(a)(4). Plaintiff provided Trans Union with copies of his direct disputes to REV and directly disputed the tradeline (ECF No. 29 at 6); yet the file did not reflect that the account was disputed. A jury could infer from this omission that Trans Union failed to conduct a reasonable reinvestigation and failed to record the current status.

- The evidence shows that TransUnion had actual notice that Plaintiff disputed the accuracy of the Rev Account tradeline, yet continued to publish the account as clean and undisputed. This makes the report misleading to users of credit reports and

therefore "inaccurate" within the meaning of 15 U.S.C. § 1681e(b) and § 1681i, even though Plaintiff did not file a formal statement of dispute under § 1681i(c). Given that TransUnion received multiple dispute notices, a jury could reasonably find that "reasonable procedures to assure maximum possible accuracy" required the CRA either (a) to delete or correct the disputed tradeline, or (b) at minimum, to apply an internal dispute indicator and report the tradeline as disputed. Whether the CRA's failure to take any of these steps was reasonable is a classic question of fact for the jury to decide, based on the totality of the circumstances and the information available to the CRA at the time.

- Evidence concerning Trans Union's adoption of Metro 2 and the existence of a dispute code is probative of industry-standard procedures and whether Trans Union's internal process reasonably translated Plaintiff's dispute into an accurate "current status" in the file and in consumer reports. A jury could reasonably treat the failure to apply an available dispute code after notice and documentation as evidence of unreasonableness under § 1681i and of procedures falling short of "maximum possible accuracy" under § 1681e(b). 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(1)(A).

- On this record, at minimum, there are material disputes regarding: (i) exactly what Plaintiff provided to Trans Union; (ii) what Trans Union forwarded to REV; (iii) what steps, if any, Trans Union actually took beyond "parroting" the furnisher's data; and (iv) why the tradeline did not reflect the ongoing dispute. Such disputes preclude summary judgment. See...***Spector v. Trans Union LLC,* No. 3:02-cv-111 (D. Conn. Jan. 28, 2004).** Reasonableness and accuracy issues unsuitable for resolution as a matter of law on a disputed record.

## 8. Defendants' contrary argument that a missing dispute notation cannot be inaccurate and is not subject to § 1681i misreads the statute

Defendants' position that "dispute notations are not items of information" and are categorically outside § 1681i ignores the statute's text. Congress expressly directed CRAs to: (i) "record the current status of the disputed information" following a consumer's dispute to the CRA; and (ii) if unresolved, "clearly note that it is disputed by the consumer" in subsequent reports. 15 U.S.C. § 1681i(a)(1)(A), 15 U.S.C. § 1681i(c). These provisions necessarily treat dispute status as part of the "item of information" a CRA must investigate and accurately present.

Moreover, § 1681i(d) refers to "any notation as to disputed information" when prescribing consumer notifications following a deletion or a dispute notation again confirming that a dispute notation is within a CRA's responsibilities. While a CRA must add a dispute notation when it receives notice through the furnisher under 15 U.S.C. § 1681c(f), that is not the

exclusive means by which a dispute becomes part of the file. The consumer-initiated route in § 1681i is independent: it compels the CRA to consider consumer-submitted materials, determine accuracy and completeness, and if unresolved note the dispute in subsequent reports upon the consumer's statement. 15 U.S.C. § 1681i(a)(4), 15 U.S.C. § 1681i(b)–(c).

### 9. Plaintiff's state-law and defamation theories also survive

- To the extent Defendants argue that "truth" defeats defamation or related state-law claims, the omission of a known dispute after notice can render the publication misleading in effect. The FCRA's qualified immunity preserves defamation liability where the plaintiff shows malice or willful intent to injure; evidence that Trans Union declined to reflect a dispute after direct notice and documentation can support such a finding. 15 U.S.C. § 1681h(e).

Because a reasonable jury could find that (1) Trans Union's omission of the consumer-dispute status rendered the reporting materially misleading, and (2) Trans Union failed to conduct a reasonable reinvestigation and to record the account's current status after direct notice and supporting documentation, summary judgment should be denied on Plaintiff's claims under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i.

## III.  PLAINTIFF'S RESPONSE TO DEFENDANTS SECTION IV. A2(a-b). (ECF NO. 235 AT 9-11)

### A. "Dismissed" vs. "Withdrawn" is a statutory, not merely semantic, issue under § 1681 c(d)(1)

- The defense cites Seventh Circuit reasoning that a "withdrawn" case is also "dismissed," but this does not resolve the FCRA's separate, affirmative duty: Congress required CRAs to include the "withdrawn" label once they receive documentation certifying such withdrawal. 15 U.S.C. § 1681c(d)(1). The question for summary judgment is thus whether Trans Union had, or should have obtained during reinvestigation, documentation certifying that Plaintiff's Chapter 13 was "withdrawn by the consumer before a final judgment." ECF No. 29 ¶ 30.

- The record presents a triable dispute: Plaintiff alleged Trans Union "is not reporting the alleged bankruptcy as withdrawn" and challenged the agency's failure to reasonably reinvestigate and correct the entry within 30 days after his dispute. ECF No. 29 ¶¶ 29–31. A reasonable jury could find that (i) Plaintiff's voluntary request to dismiss the case is, functionally, a withdrawal "by the consumer" before final judgment within the meaning of § 1681c(d)(1), and (ii) Trans Union had access to (or received) documentation

certifying that status whether from Plaintiff or from readily-available docket filings accessed during the § 1681i reinvestigation. 15 U.S.C. § 1681c(d)(1); 15 U.S.C. § 1681i. (iii) That since Trans Union was already in possession of documents certifying voluntary dismissal, they were required to follow their dispute procedures and suppress the bankruptcy from the consumer report when they documents supporting the bankruptcy was voluntarily dismissed (see…Exhibit H-1, dispute bankruptcy procedures).

- The Southern District of Indiana's decision in *Childress* underscores the point: even though PACER does not label a case "withdrawn" as a status, § 1681c(d)(1) obligates the CRA to include "withdrawn" "upon receipt" of documentation certifying withdrawal. ***Childress v. Experian Info. Servs., Inc.***, No. 1:12-cv-01529 *(S.D. Ind. July 30, 2014)*. That court granted summary judgment only because the consumer "did not provide any documentation," not because the statute is inapplicable. *Id.* Here, Plaintiff alleges disputes and failures to properly reinvestigate and correct (ECF No. 29 ¶¶ 29–31), creating a fact question whether Trans Union received or should have procured the certifying documentation during reinvestigation. 15 U.S.C. § 1681c(d)(1); 15 U.S.C. § 1681i. That 1681c(d) does not state require the certifying documents to come from the consumer. The records that defendant and LNRS has both produces in discovery evidences that defendant received documents directly from the source, the court records certifying the dismissal for other reasons/withdrawn not just dismissed as reported, and that the matter was voluntarily dismissed. (see…Exhibit H-21 and H-5)

- CFPB supervisory materials further confirm that CRAs must include "withdrawn" if they have received documentation so certifying, reinforcing that this is a compliance requirement not a discretionary nuance. (see…Exhibit H-9)

## B. The defense's § 1681c(f) argument does not defeat Plaintiff's claim

- Trans Union argues that public records are not "information furnished" under § 1681s-2 and, therefore, § 1681c(f)'s dispute-notation requirement does not apply. But Plaintiff's principal bankruptcy claim is not a § 1681c(f) furnisher-notice theory; it is that Trans Union failed to comply with the bankruptcy-specific mandate in § 1681c(d)(1) and failed to conduct a reasonable reinvestigation and maintain reasonable procedures under §§ 1681e(b) and 1681i. ECF No. 29 ¶¶ 22, 29–31. Whether a furnisher notified Trans Union under § 1681s-2(a)(3) is thus immaterial to the statutory "withdrawn" obligation. 15 U.S.C. § 1681c(d)(1); 15 U.S.C. § 1681e(b); 15 U.S.C. § 1681i.

- To the extent § 1681c(f) is implicated by the broader dispute allegations, it independently provides that, if a CRA is notified under § 1681s-2(a)(3) that an item is disputed, "the agency shall indicate that fact in each consumer report that includes the disputed information." 15 U.S.C. § 1681c(f). Whether such notice occurred (directly or via ACDV responses) is a quintessential fact question not resolvable on this record.

## C. "Reliance on the face of court records" does not excuse noncompliance with § 1681c(d)(1)

- The defense suggests CRAs need not parse procedural distinctions. Congress disagreed in the bankruptcy context: § 1681c(d)(1) specifically requires a "withdrawn" notation once documentation is received. A reasonable jury could find Trans Union's reinvestigation unreasonable if, despite notice of the dispute, it failed to check the readily accessible PACER docket for the consumer's voluntary dismissal/withdrawal order or otherwise failed to obtain and consider certifying documentation via court docket/Pacer records. 15 U.S.C. § 1681c(d)(1); 15 U.S.C. § 1681i. See also the PACER accessibility and documentation discussion in *Childress*. ***Childress v. Experian Info. Solutions, Inc., 790 F.3d 745 (7th Cir. 2015)***

Trans Union's accuracy argument fails as a matter of law and fact. The FCRA imposes a specific duty to denote "withdrawn" in bankruptcy reporting once the CRA receives documentation certifying that status, and it requires reasonable procedures and reinvestigations. On this record where Plaintiff disputes the bankruptcy entry, alleges Trans Union failed to correct it during reinvestigation, when presented with legal proceedings, and contends the case was withdrawn/voluntarily dismissed before final judgment (ECF No. 29 ¶¶ 22, 29–31). A reasonable jury could find violations of 15 U.S.C. § 1681c(d)(1), 15 U.S.C. § 1681e(b), and 15 U.S.C. § 1681i and that Trans Union was in possession of documents while investigating the bankruptcy requiring them to suppress the bankruptcy from the plaintiff's consumer report based on their dispute policy or that they do not have reasonable procedures in place. Summary judgment should be denied.

## IV.    PLAINTIFF'S RESPONSE TO DEFENDANTS SECTION IV. B, B1, B2, B3 (ECF NO. 235 AT 11-15)

Summary judgment on § 1681e(b) should be denied. A reasonable jury could find (1) material inaccuracy or misleading incompleteness in reporting the Chapter 13 as "dismissed" rather than "withdrawn," and in omitting the consumer's dispute; (2) publication of that information to third parties; and (3) that TransUnion's largely automated, vendor-reliant procedures were not "reasonable" under the FCRA in light of the notice and documentation provided. 15 U.S.C. § 1681e(b).

- Whether TransUnion is entitled to summary judgment on the § 1681e(b) claim where the record permits a jury to find: (i) the bankruptcy and tradeline reporting was materially misleading/incomplete; (ii) the inaccurate report was furnished to third parties; and (iii) the inaccuracies resulted from procedures that a jury could deem unreasonable.

- § 1681e(b) requires a CRA, when preparing a consumer report, to "follow reasonable procedures to assure maximum possible accuracy." 15 U.S.C. § 1681e(b).

- Courts have rejected the view that "technical accuracy" alone defeats § 1681e(b); materially misleading or incomplete reporting can be actionable, and reasonableness is typically a jury question. See...*Koropoulos v. Credit Bureau, Inc., 734 F.2d 37 (D.C. Cir. 1984)* (vacating summary judgment; "maximum possible accuracy" encompasses more than mere technical truth; legislative history contemplates differentiating bankruptcy types and dispositions).

- A CRA must add a "withdrawn" notation for a bankruptcy "upon receipt of documentation certifying such withdrawal." 15 U.S.C. § 1681c(d)(1). The law does not say these documents must come from the consumer. An investigation of the courts records in this instance qualifies as receipt of certified bankruptcy documents as Trans Union acknowledged conducting a direct investigation into the bankruptcy records to verify as accurate. District courts recognize that initial reliance on court-face data may be reasonable, but once documentation is received, the "withdrawn" status must be reflected. *Childress v. Experian Info. Sols., Inc., No. 1:12-cv-01529 (S.D. Ind. July 30, 2014).* The court-faced data (the docket) in this case referenced voluntarily dismissed i.e withdrawn by the consumer and qualifies as receiving documentation.

- Elements and causation: A § 1681e(b) plaintiff must show an inaccuracy, publication to a third party, unreasonable procedures, and damages caused thereby. *Dalton v. Capital Associated Indus., Inc., 257 F.3d 409 (4th Cir. 2001); TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).*

- Publication: "Consumer report" means information communicated by a CRA to a third party bearing on creditworthiness. 15 U.S.C. § 1681a(d). Liability attaches when an inaccurate consumer report is furnished. *TRW Inc. v. Andrews, 534 U.S. 19 (2001).*

- Vendor/public-record reliance: A CRA need not perform legal adjudications of underlying court proceedings when initially reporting, but that principle does not immunize a CRA from inaccuracy/incompleteness or from the duty to update upon notice of dispute. *Henson v. CSC Credit Servs., 29 F.3d 280 (7th Cir. 1994); Childress, supra.*

- Reasonableness of automated checks is generally fact-intensive; evidence that procedures are "mere" format/anomaly checks or "parroting" of furnishers can defeat summary judgment. *Saindon v. Equifax Info. Servs., LLC, 608 F. Supp. 2d 1212 (N.D. Cal. 2009); Saenz v. Trans Union, LLC, 621 F. Supp. 2d 1074 (D. Or. 2007); White v. Trans Union, LLC, 462 F. Supp. 2d 1079 (C.D. Cal. 2006); Sharf v. TransUnion, LLC, No. 14-11837, 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015).*

1. Inaccuracy/material misleadingness is a jury question on this record

- Bankruptcy "dismissed" vs. "withdrawn." Even if a docket reflects a dismissal order, ignoring the "dismissal for other reasons", reporting only "dismissed" and omitting

"withdrawn" can be materially misleading where the consumer voluntarily withdrew the case and court dockets including filings are certified documentation. The D.C. Circuit has cautioned that § 1681e(b) seeks "maximum possible accuracy," not mere technical correctness, and specifically flagged congressional intent to differentiate bankruptcy types and dispositions. *Koropoulos*, **734 F.2d at 42–44.**

- The House conferees intended that CRAs "differentiate between types of individual bankruptcies … and that the disposition of a wage earner plan … should be duly noted." *Id.* [2]

- Here, the record permits a jury to find that TransUnion had direct access to PACER and later documentation reflecting "withdrawn," yet failed to correct prior reports furnished to creditors; under § 1681c(d)(1), once TransUnion received certifying documentation (regardless of how received or who its from), it had to reflect "withdrawn." 15 U.S.C. § 1681c(d)(1); *Childress*, **slip op. at 8–10.**

- Defense reliance on *Childress* does not resolve this case as a matter of law. *Childress* held it would be unreasonable to require CRAs to parse all dockets ab initio, but it also recognized CRAs must include "withdrawn" upon receipt of documentation.

- Tradeline accuracy and dispute status. To the extent the REV account remained reported with a charged-off balance without reflecting the consumer's dispute, a jury could find the presentation materially misleading or incomplete in violation of § 1681e(b), consistent with the "maximum possible accuracy" standard. *Koropoulos*, **734 F.2d at 42–44.**

## 2. Publication to third parties is supported by the record and is triable

- Plaintiff points to TransUnion's transmissions to T-Mobile (5/18/2020) and Bank of America (11/16/2020; 1/15/2021), reflected as inquiries/adverse-action events, which qualify as "consumer reports" under § 1681a(d). 15 U.S.C. § 1681a(d). They were also brought for violations of 1681b which are hereby undisputed not raised for summary judgment and must proceed. **ECF No. 29 at 7, ¶ 31.**

- At summary judgment, courts deny relief where record evidence permits a jury to infer a report was furnished and used for a credit decision, even absent the literal paper copy of the report. **Cf.** *Koropoulos* (remanding on § 1681b and § 1681e(b) issues).

- Defendant's argument that "Plaintiff has no evidence what T-Mobile or Bank of America received" ignores that inquiry logs, adverse-action notices, and TU's user-certification records are competent circumstantial evidence of publication and use. See 15 U.S.C. § 1681a(d); *TRW v. Andrews* (liability arises when an inaccurate consumer report is issued to a third party).

## 3. Reasonableness of TransUnion's procedures presents a classic jury question

- TransUnion's admissions (Second Amended Responses to Interrogatories and the Wagner Declaration Ech. H-10) describe procedures centered on electronic Metro-format intake, format/error checks, anomaly detection, and reliance on "reputable" furnishers/vendors (REV FCU; LexisNexis). Those steps address data completeness and formatting, not the integrity or trustworthiness of the underlying source information when put on notice of a dispute. (see…ECF No. 235 at 14-15, Exhibit H-11). The creation of an ACDV for the disputes check only for the same format/error checks therefore unreasonable.

- Courts have held that such "basic automated checks" do "not go to the heart of whether a source of information is trustworthy," and that simply confirming with the source and closing the dispute can be found unreasonable by a jury. *Saindon*, **608 F. Supp. 2d at 1217.**

- When a CRA is on notice that information is suspect, it is not per se reasonable to verify only with the furnisher without additional steps. *Saenz*, **621 F. Supp. 2d at 1082–84;** *White*, **462 F. Supp. 2d at 1084–85.**

- Deferentially deferring to the furnisher without an independent check can even support willfulness. *Sharf*, **2015 WL 6387501, at 7–9.**

- *Henson/Childress* do not immunize TransUnion here. *Henson* recognized no duty to go beyond the face of public records to adjudicate the legal merits of a case, but it did not approve ignoring readily verifiable court information or post-notice documentation. *Henson*, **29 F.3d at 285;** *Childress*, **slip op. at 8–10** (CRA must add "withdrawn" upon receipt of documentation).

- Under *Dalton*, whether TransUnion's procedures were reasonable, and whether any inaccuracy resulted from those procedures, are quintessential jury questions where, as here, the CRA and or its investigative representative investigating on TransUnions behalf purportedly had (a) access to PACER; (b) court documentation; and (c) internal policies acknowledging the need to ensure "maximum possible accuracy," yet still furnished reports omitting "withdrawn", voluntarily dismissed (for other reasons) and dispute status. **257 F.3d at 415–17.**

## 4. Causation and damages

- The summary-judgment record supports a triable link between the publication of the inaccurate/misleading bankruptcy and tradeline information and downstream credit decisions and denials, satisfying *Dalton's* causation requirement and *Ramirez's* emphasis that liability hinges on dissemination of inaccuracies to third parties. *Dalton*, **257 F.3d at 415–16;** *Ramirez*, **141 S. Ct. at 2210–12.**

**Rebuttal to Defendants' Specific Arguments:**

- "No inaccuracy as a matter of law." Not so. The D.C. Circuit rejects the narrow "technical accuracy" view; the FCRA requires "maximum possible accuracy," and

whether the presentation was materially misleading is for the jury. ***Koropoulos*, 734 F.2d at 42–44.**

- ***"Childress/Henson*** control." They do not. Even ***Childress*** underscores that CRAs must add a "withdrawn" notation "upon receipt" of documentation, which is exactly the factual dispute presented here. And ***Henson*** addresses initial reliance on court-face records, not post-notice failures to correct with readily verifiable materials. ***Childress*, slip op. at 8– 10; *Henson*, 29 F.3d at 285.**

- "No publication evidence." Inquiry logs, adverse-action notices, and TU's end-user certifications are competent summary-judgment evidence of publication of a "consumer report" under § 1681a(d). 15 U.S.C. § 1681a(d); see...also ***TRW v. Andrews.***

- "Procedures were reasonable as a matter of law." TransUnion's own admissions (Metro-only intake, format/anomaly checks, reliance on vendors/furnishers) mirror the procedures courts have found insufficient to warrant judgment as a matter of law and properly left to a jury. ***Saindon*, 608 F. Supp. 2d at 1217; *Saenz*, 621 F. Supp. 2d at 1082–84; *White*, 462 F. Supp. 2d at 1084–85; *Sharf*, 2015 WL 6387501, at 7–9.**

- "***Guimond/Baker/Pettway/Burns*** show failure of proof." These authorities reiterate element requirements; they do not negate the triable evidence here on inaccuracy, publication, and causation. To the extent defendants argue a lack of a literal paper copy received by **T-Mobile/BoA**/Tower/Synchrony/Capital One is fatal, § 1681a(d), adverse action evidence, and TU's own logs suffice at this stage, and, in any event, the record contains evidence of dissemination. 15 U.S.C. § 1681a(d); ***TRW v. Andrews*; see also *Burns v. Trans Union, LLC*, No. 4:18-cv-03120-MGL, 2019 WL 3890833, at \*3 (D.S.C. Aug. 19, 2019)** (dissemination of inaccurate information constitutes concrete injury).

TransUnion has not shown entitlement to judgment as a matter of law. The record presents genuine disputes on (1) whether reporting the bankruptcy as "dismissed" rather than "withdrawn," voluntarily dismissed (suppressed), and omitting the dispute, was materially misleading; (2) publication to T-Mobile, Bank of America, Tower, Synchrony and Capital One; and (3) whether TransUnion's predominantly automated, vendor-reliant procedures were reasonable in light of notice and documentation. Denial of summary judgment on § 1681e(b) is warranted. 15 U.S.C. § 1681e(b).

## V.    PLAINTIFF'S RESPONSE TO DEFENDANTS SECTION IV. B4 (a-b) (ECF NO. 235 AT 16-18)

Summary judgment on damages should be denied. The record contains evidence creating a triable issue of (a) economic harm from credit denials/publication of the report and (b)

emotional-distress damages under Fourth Circuit standards, and, independently, Plaintiff's willfulness claims under the FCRA permit statutory and punitive damages without proof of actual damages. 15 U.S.C. § 1681n. *Mark Guthrie v. PHH Mortgage Corporation*, **No. 22-1248 (4th Cir. 2023).**

**Issues Presented**

- Whether Plaintiff has produced sufficient evidence of recoverable "actual damages" (economic or emotional distress) proximately caused by Trans Union's violations to survive summary judgment on negligent FCRA claims. 15 U.S.C. § 1681o.

- Whether Plaintiff's willful FCRA claims survive notwithstanding any dispute over actual damages because statutory and punitive damages are available without proof of actual harm. 15 U.S.C. § 1681n.

Negligent FCRA violations require proof of "actual damages" proximately caused by the violation. 15 U.S.C. § 1681o. The Fourth Circuit recognizes that "actual damages" include both economic losses (e.g., credit denials) and emotional-distress damages. **See…*Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495 (4th Cir. 2007)** (affirming emotional-distress award and recognizing economic losses).  The Fourth Circuit recently reaffirmed these categories:

*"Actual damages may include not only economic damages, but also damages for humiliation and mental distress." **See…Mark Guthrie v. PHH Mortgage Corporation**, No. 22-1248 (4th Cir. 2023).*

- A plaintiff's own testimony can support emotional-distress damages if it "reasonably and sufficiently explain[s] the circumstances of the injury" and "sufficiently articulate[s] true demonstrable emotional distress," not merely conclusory statements. ***Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495 (4th Cir. 2007).** The Fourth Circuit applied this standard again in 2023.  In this case plaintiff has sufficiently explained the circumstances in his deposition (see…Exhibit H-12 at 192 – 199).

- Willful FCRA violations permit statutory damages of $100–$1,000 per violation (and punitive damages) without proof of actual damages. 15 U.S.C. § 1681n(a).

- A mere statutory violation without a real-world adverse effect does not establish Article III injury; however, dissemination of inaccurate information to third parties (e.g., publication to prospective creditors resulting in denials or other adverse actions) constitutes concrete harm distinct from a bare procedural violation. See…***Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337 (4th Cir. 2017)** (distinguishing bare informational injuries).

### A. Credit-denial and publication damages (economic harm)

- Plaintiff identified a denial by Tower Federal Credit Union, high interest rates from Capital one and contemporaneous third-party pulls (e.g., Tower, Capital One), which viewed in the light most favorable to Plaintiff permit a reasonable inference that Trans Union disseminated the challenged bankruptcy and Rev/account information to creditors and that this dissemination caused adverse credit outcomes. See…Exhibit H-12, Pltf.'s Dep. 171–76, 215–18, 211–12 (Tower denial; inquiries; claimed comparable Navy Federal exposure). Under Fourth Circuit law, denials of credit and related economic impacts are actionable "actual damages," and proof may be circumstantial so long as a jury could reasonably link the inaccurate reporting to the adverse action. *Sloane v. Equifax Info. Servs., LLC,* **510 F.3d 495 (4th Cir. 2007)** (upholding jury finding that inaccurate reporting "resulted in economic losses")

- Defendant's insistence on "sole" reliance by Tower sets too demanding a standard. The statute requires that damages be sustained "as a result of" the failure to comply; it does not impose a "sole cause" requirement. 15 U.S.C. § 1681o(a)(1). A reasonable jury may find causation if (1) the creditor pulled Trans Union, and (2) the adverse action temporally and substantively aligns with the challenged inaccuracy. The Fourth Circuit recognizes credit denials as a cognizable category of actual damages and has assessed causation on a record similar to this one. *Id.* at *Guthrie.*

- Publication is also independently evidenced by inquiry logs and disclosure reports reflecting third-party pulls (e.g., T-Mobile and Bank of America inquiries) during the period when Plaintiff alleges the bankruptcy status and tradeline were inaccurate or incomplete. See…Exhibit H-12, Pltf.'s Dep. 143–46, 150–52 (T-Mobile/Bank of America pulls); 215–18 (Capital One pull/higher rate). These third-party inquiries constitute dissemination of Plaintiff's consumer report, satisfying the concrete-harm requirement and supporting damages flowing from such publication. *Dreher v. Experian Info. Sols., Inc.,* **856 F.3d 337 (4th Cir. 2017)** (contrasting bare informational violations with real-world harms).

- Defendant's reliance on Eleventh Circuit cases (**e.g., *Cahlin, Nagle, Jackson, Enwonwu***) is not controlling in the Fourth Circuit and is contrary to Fourth Circuit precedent recognizing that denials (or other economic impacts) and emotional distress are compensable "actual damages," subject to the usual causation showing at summary judgment. *Sloane v. Equifax Info. Servs., LLC,* **510 F.3d 495 (4th Cir. 2007)**; Fourth Circuit's recent treatment confirms these principles. *Id.* at *Guthrie.*

### B. Emotional-distress damages

- Plaintiff testified to headaches, sleepless nights, humiliation at the bank during the Tower denial, stress from repeat disputes, lack and want to bowl and altered sleep patterns while dealing with Trans Union's reinvestigation outcomes. See…Exhibit H-12,  Pltf.'s Dep. 191–97 (humiliation; only Tower employees witnessed), 198–205 (loss of sleep, stomach issues, no longer bowling), 176–93 (onset after dispute results; stress associated with

Trans Union's failure to investigate reasonably). A jury may credit this testimony if it is sufficiently specific and tied to the FCRA violations. ***Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495 (4th Cir. 2007) (plaintiff's own testimony can establish emotional distress if adequately articulated).**

- Applying the Fourth Circuit standard, the record contains more than conclusory assertions: Plaintiff identified (1) the precipitating events (receipt of dispute "results" and continued inaccurate reporting/publication), (2) the nature of the distress (headaches, humiliation, sleeplessness, stress), and (3) timing and persistence (e.g., late-night research/sleeplessness beginning after dispute results; embarrassment at the point of denial). This fits the type of narrative the Fourth Circuit has recognized as sufficient to reach a jury. See...***Mark Guthrie v. PHH Mortgage Corporation*, No. 22-1248 (4th Cir. 2023)** (reiterating that testimony must go beyond conclusory claims and "sufficiently articulate true demonstrable emotional distress" (**citing *Sloane*)).

- Defendant's argument that there is "no evidence" of publication to a third party undermines its own position on emotional distress: Plaintiff identified and the file reflects third-party pulls (T-Mobile, Bank of America, Navy, Capital One) during the operative period, which is publication to third parties. Those pulls, together with the Tower denial, are competent evidence that the alleged inaccuracies were disseminated and plausibly linked to Plaintiff's distress. ***Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337 (4th Cir. 2017)** (requiring real-world adverse effect distinct from a bare statutory violation).

**C. Willfulness: statutory and punitive damages even absent actual harm**

- Even if the Court were to conclude that actual damages evidence is contested or thin for negligence, Plaintiff's willful FCRA claims independently survive because statutory damages and punitive damages are available without proof of actual damages. 15 U.S.C. § 1681n(a). The Fourth Circuit has expressly recognized that for "willful violations, a consumer may also seek punitive damages and, instead of actual damages, may seek statutorily defined damages between $100 and $1,000 per violation."

- Defendant's blanket contention that "without any evidence, Plaintiff cannot demonstrate damages" is therefore legally incorrect as to willfulness. The appropriate summary-judgment inquiry on willfulness is whether a reasonable jury could find a knowing or reckless disregard of FCRA duties; damages flow by statute upon that showing. 15 U.S.C. § 1681n(a).

The record, taken in the light most favorable to Plaintiff, presents triable issues of (1) economic damages from publication/denial and (2) emotional-distress damages under Fourth Circuit authority. ***Mark Guthrie v. PHH Mortgage Corporation*, No. 22-1248 (4th Cir. 2023)** citing ***Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495 (4th Cir. 2007).** Independently, Plaintiff's willful claims are not subject to dismissal for lack of actual damages because statutory

and punitive damages are available without such proof. 15 U.S.C. § 1681n(a). The motion for summary judgment on "recoverable damages" should be denied, or at minimum denied as to willful claims and as to negligent claims predicated on the Tower denial/publication and emotional distress, because a reasonable jury could find causation and compensable harm on this record.

**Record Citations (non-exhaustive) supporting triable issues:**

- Publication/economic harms: See…Exhibit H-12, Pltf.'s Dep. 143–46 (T-Mobile and Bank of America pulls), 150–52 (TU deleted inquiry; permissible purpose dispute), 215–18 (Capital One pull; higher rate), 171–76 (Tower denial; basis linked to bankruptcy reporting).

- Emotional distress: See…Exhibit H-12, Pltf.'s Dep. 191–97 (humiliation in front of Tower employees; distress description), 198–205 (sleep loss, headaches, stomach issues), 176–93 (onset and persistence after dispute responses; stress tied to TU's procedures).

## VI.   PLAINTIFF'S RESPONSE TO DEFENDANTS SECTION IV. B4 (a-b) (ECF NO. 235 AT 19-24)

Genuine disputes of material fact exist as to (1) whether the reported bankruptcy entry should have been shown as "withdrawn" under 15 U.S.C. § 1681c(d) and (2) whether TransUnion's reinvestigation and automated ACDV-only procedures satisfied the § 1681e(b)/§ 1681i duties to maintain and reinvestigate for "maximum possible accuracy," and those disputes, together with evidence that TransUnion's report was furnished to third parties, are sufficient to create triable issues on causation and actual damages.

**Issues Presented**

1. Whether TransUnion is entitled to summary judgment on plaintiff's FCRA claims (primarily 15 U.S.C. § 1681e(b), § 1681i, and § 1681c(d)) and on causation/actual damages because (a) the reported bankruptcy was "dismissed" (not legally inaccurate), (b) TransUnion followed reasonable procedures (ACDV/PACER checks and furnisher verification), and (c) plaintiff cannot prove the alleged inaccuracy caused credit denials or emotional harm. See Motion (ECF No. 235) and Plaintiff's Amended Complaint (ECF No. 29 ¶¶ 20, 22).

Courts deny summary judgment where credible evidence creates a triable dispute whether the CRA (or furnisher) followed reasonable procedures and whether an inaccuracy was published and proximately caused injury; by contrast, summary judgment is appropriate where the record

shows the CRA reasonably relied on a reputable furnisher and no competent contrary documentation existed. See district- and circuit-level authorities applying the § 1681e(b)/§ 1681i framework.

*"The FCRA creates private actions for negligent or willful violations and requires a fact-intensive inquiry into the reasonableness of procedures and the consumer's proof of injury."*

There is a current controversy, genuine issues of material facts as to whether the bankruptcy entry was materially inaccurate (dismissed vs. withdrawn) so as to trigger § 1681c(d) and § 1681e(b) exposure. Section 1681c(d) requires a CRA to report a bankruptcy as "withdrawn" only "upon receipt of documentation certifying such withdrawal." But courts have recognized that a technically "accurate" docket entry can nonetheless be materially misleading when a CRA had access to contrary certifying documentation or the consumer proffers adequate proof creating a factual dispute.

Plaintiff's Amended Complaint specifically alleges TransUnion published an inaccurate public-record entry and failed to report it as "withdrawn." (ECF No. 29 ¶¶ 20, 22). The deposition shows the consumer consistently insisted the legal status should be reflected as withdrawn. (See...Exhibit H-12, Dep. Nelson L. Bruce 36:15–21; 37:22–25; 59:20–25). 1681c(d) does not make it mandatory that only the consumer produce certifying documents which leave the door open for TransUnion to obtain the documentation certifying the bankruptcy account record their selves which what they have done as a result of their re-investigation as these public records are readily available. The current controversy, genuine issue of material fact now is, did TransUnion receive certifying documentation by reviewing the bankruptcy court docket and or documents which they certified as being accurate as a result of plaintiff's dispute? If TransUnion received and ignored certifying documentation, summary judgment is improper. However, this is a fact question for the jury to decide. If TransUnion never received certification, a factual question remains whether TransUnion's PACER checks and vendor feeds were reasonably applied to reflect "maximum possible accuracy." The deposition excerpts therefore establish triable disputes on whether the statutory precondition (receipt of documentation) existed and whether the public reporting was materially misleading. Bottom line on § 1681c(d), Plaintiff's testimony and the verified amended complaint create a material factual

dispute whether TransUnion had or should have had certifying documentation or other readily available court-docket evidence that the bankruptcy was a voluntary withdrawal rather than a court dismissal; summary judgment should be denied on that ground.

2. Did TransUnion follow "reasonable procedures" and perform a reasonable reinvestigation (§ 1681e(b), § 1681i)? A CRA may rely on a furnisher and the ACDV process, but the Fourth Circuit and other courts require more than mere parroting of furnisher responses when objective indicators or readily verifiable records put the CRA on notice that the furnisher's data may be inaccurate; the question of reasonableness is typically fact-specific and often not resolvable at summary judgment. See the balancing frameworks applied in the circuits. **Dalton v. Capital Associated Indus., Inc., 257 F.3d 409 (4th Cir. 2001)** (adopting a reasonableness inquiry) and the D.C. Circuit's **Koropoulos v. Credit Bureau, Inc., 734 F.2d 37 (D.C. Cir. 1984) approach.**

TransUnion relies on its standard automated procedures: online intake, CRS, generate ACDV to furnisher, update per furnisher response, and points to timely response letters (e.g., Wagner Decl. ¶¶ 8, 12–18). Defendant also cites case law (*Quinn*) that ACDV can satisfy the reinvestigation duty. But plaintiff's evidence (a) that TransUnion had direct PACER access to court documents and/or vendor data, (b) that plaintiff expressly disputed the bankruptcy status and supplied disputes on multiple dates (Dec. 3, 2020; Feb. 3, 2021; Apr. 20, 2021; Apr. 30, 2022) (see…Exh. H7, H-11, TransUnion results letters dated 12/12/20, 3/3/21, 3/18/21, 5/27/21 and dispute correspondence attached as Defendant Exhibits A-4 and A-8, ECF No. 235-5 and 235-9), and (c) that plaintiff repeatedly asked TransUnion to review court records (see…Exhibit H-7, H-11) rather than rely only on the furnisher, all may permit a jury to conclude the automated, ACDV-only response was unreasonable under the circumstances. The deposition reflects the consumer repeatedly informed TransUnion that the bankruptcy reporting was inaccurate and incomplete public record ("dismissed") was materially misleading and asserted TransUnion should have obtained court documents (see…Exhibit H-12, Dep. 59:1–7; 71:10–24; 86:20–24; 88:6–14). Where the CRA has access to PACER documentation and the consumer has repeatedly disputed a narrow, readily verifiable status (withdrawn vs. dismissed, and voluntarily dismissed), there is a triable issue about whether the CRA's procedures satisfied "maximum possible accuracy."

That factual inquiry should be left to the jury.

Further, the record shows plaintiff supplied (or attempted to supply) dispute letters and attachments and that TransUnion sent the consumer the generic ACDV-result templates that do not explain the specific investigatory steps taken (see...Exhibit H-12, Dep. 71:10–24; 72:1–19; 112:17–24). Thus, summary judgment on the reasonableness of TransUnion's procedures is improper.

3.  Was the failure to note disputes and the retention of the REV tradeline causally connected to concrete injury (denied credit, higher rates, emotional distress)? To recover actual damages under § 1681o, plaintiff must show causation and proof of damages (economic loss or adequately articulated emotional harm). The Fourth Circuit permits emotional-distress damages if the plaintiff "sufficiently articulate[s] true demonstrable emotional distress" and show causation to the FCRA violation. See... ***Brown V. First Advantage Background Services Corp.,*** No. 1:2023cv00195 - Document 110 (M.D.N.C. 2025) Quoting ***Sloane v. Equifax Info. Servs., LLC,*** 510 F.3d 495 (4th Cir. 2007). [5]

TransUnion argues plaintiff cannot prove causation (no lender testimony that the TransUnion report caused denial). The deposition and produced denial letters paint a different picture. Tower Federal's denial letter lists bankruptcy among the underwriting reasons (see...Exhibit H-7, Tower denial materials produced in discovery) and plaintiff identifies the Tower denial as a concrete adverse action tied to the TransUnion report (see...Exhibit H-12, Dep. 175:12–17; 176:2–6). Plaintiff also testifies that T-Mobile and Bank of America made inquiries tied to TransUnion-sourced reports (ECF No. 29 at 7, ¶ 31; deposition references to inquiries Capital One cards and Navy). Where a CRA published the disputed information to a creditor who then denied credit or imposed higher pricing, a reasonable jury could find proximate cause even without direct lender testimony, particularly where the creditor's adverse-action communication identifies consumer-report factors and the consumer presents temporal and circumstantial evidence linking the published inaccuracy to the adverse outcome. Courts have denied summary judgment on similar facts where a denial letter and credit-inquiry trail made reliance reasonably inferable. ***Brown V. First Advantage Background Services Corp.,*** No. 1:2023cv00195 - Document 110 (M.D.N.C. 2025)

On emotional-distress damages, the Fourth Circuit permits such damages link to the FCRA violation; plaintiff's deposition and verified complaint describe stress, sleeplessness, and headaches (see...ECF No. 29 at 11, 13, 15, 17, 19, 20, 25; Exhibit H-12, Dep. 42:3–10; 51:4–11;

prelitigation complaints and repeated disputes). While the defense will attempt to show these are conclusory, credibility and causation are jury questions where the consumer offers consistent testimony and contemporaneous complaints. The court should deny summary judgment and let the finder of fact weigh the testimony. ***Brown V. First Advantage Background Services Corp., No. 1:2023cv00195 - Document 110 (M.D.N.C. 2025)***

4. Does plaintiff's failure to provide the bankruptcy court a direct dispute or to supply certified documentation defeat the claim? Rule: § 1681c(d) requires a CRA to include a "withdrawn" notation only upon receipt of documentation certifying withdrawal, but courts also treat whether the CRA had notice (directly or via furnisher/vendor) as fact-bound; failure of the consumer to send certified paperwork is not always dispositive where other evidence shows the CRA had or should have obtained certifying information or where the CRA's procedures were unreasonable in light of the available public docket.

TransUnion's primary summary-judgment argument is that plaintiff never provided a certified court document and that the public docket shows "dismissed," so TransUnion acted reasonably. Plaintiff's deposition, however, disputes those assumptions: plaintiff asserts the court provided a letter (Exhibit H-12, Dep. 36:1–9; 37:18–24; 82:6–13). Moreover, plaintiff points to inconsistent CRAs/vendor outputs in discovery (e.g., LexisNexis variations produced in discovery of the records they obtain) that suggest conflicting public-record displays evidence a jury may consider to find TransUnion's PACER/vendor checks and ACDV-only responses insufficient to satisfy § 1681e(b)/§ 1681i. Given the mixed documentary record and the deposition testimony, the consumer's failure to deliver a certified filing to TransUnion does not automatically entitle TransUnion to summary judgment.

Defendant cites cases requiring lender reliance; but here Tower's denial letter, the timing of TransUnion-sourced inquiries, and plaintiff's evidence of adverse outcomes (denial and higher pricing on subsequent accounts) create an inference of reliance sufficient to survive summary judgment. The Fourth Circuit allows recovery on such a record; plaintiff's testimony and denial documents support proximate cause and economic/emotional injury as these adverse denails and higher interst rates were based on the TransUnion report only. Defendant relies on the routine ACDV workflow and authority holding ACDV can be sufficient; but where the CRA is the furnisher reporting the bankruptcy directly and has access to PACER/other court data and the

dispute is narrow and readily verifiable (withdrawn vs. dismissed), a jury may find an ACDV-only response unreasonable. Authorities emphasize the reasonableness inquiry is fact-specific; courts routinely deny summary judgment where the consumer shows objective indicia that more was required.

Defendant is correct that the statutory obligation to mark "withdrawn" is triggered by receipt of certification, but the question whether TransUnion received or should have obtained such certification is a fact issue (deposition gives contradictory testimony). Moreover, even if TransUnion did not receive a formal certified document from the consumer, evidence that TransUnion had access to and utilized PACER, vendor reports, or inconsistent vendor displays (discovery production) can create a triable issue on whether TransUnion's procedures were reasonable.

- The Amended Complaint allegations (ECF No. 29 ¶¶ 20, 22) and the deposition record (see…Exhibit H-12, Dep. Nelson L. Bruce pp. 36:15–21; 37:22–25; 59:20–25; 71:10–24; 84:12–13; 88:6–14; 175:12–17) supply factual ammunition to oppose summary judgment: multiple dispute submissions, denial letters from creditors, and TransUnion results letters that use boilerplate reinvestigation language.

- The statutory text and § 1681i notice/results requirements (e.g., 30-day reinvestigation window and the requirement of 1681c(d) and 1681e(a)) should be read together with the record. A factfinder should decide whether TransUnion's process (ACDV plus vendor/PACER checks) met the statutory reasonableness standard here.

For the reasons above, summary judgment should be denied in whole (or at a minimum denied as to plaintiff's § 1681e(b), § 1681i, 1681e(a) and § 1681c(d) claims and plaintiff's claims for actual damages and emotional distress). The deposition and documentary record create triable disputes about whether TransUnion received or was in possession of certifying documentation or otherwise had notice of a withdrawn bankruptcy, whether TransUnion's ACDV-only procedures were reasonable in light of available PACER/vendor records, and whether publication of the allegedly inaccurate report proximately caused credit denials and emotional injury including in the context of Transunion's procedures requiring a voluntarily dismissed bankruptcy to be suppressed from the consumers credit report. Those are classic jury questions.

**Issues / jury questions:**

- Did TransUnion receive certifying documentation that the bankruptcy was withdrawn prior to reporting it as dismissed? (Exhibit H-12, Deposition citations: Nelson L. Bruce 36:15–21; 84:12–13; 88:6–14.)

- Were TransUnion's reinvestigation steps (ACDV + any PACER/vendor checks) reasonable under the circumstances to assure maximum possible accuracy? (Compare Wagner Decl. business rules with TransUnion results letters and consumer disputes Defendant Exhibits A-B).

- Did TransUnion publish the disputed information to Tower/Bank of America/T-Mobile/Capital One, Navy Federal and did that publication proximately cause the denial(s) or adverse terms alleged? (See denial letter(s) in discovery and plaintiff deposition about Tower denial and inquiries.)

- Is 1681c(d) documentation requirement only applicable to be received from the consumer only.

## VII.    PLAINTIFF'S RESPONSE TO DEFENDANTS SECTION IV. D (ECF NO. 235 AT 24)

Summary judgment on willfulness should be denied. The record, viewed in Plaintiff's favor, permits a reasonable jury to find that Trans Union recklessly disregarded its statutory duties under 15 U.S.C. § 1681i, 15 U.S.C. § 1681e(a), 1681e(b), and related reporting obligations satisfying willfulness under 15 U.S.C. § 1681n and the standard articulated in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). *Transunion Llc V. Ramirez* No. 20–297 (9th Circuit, June 25, 2021)

- Whether Plaintiff has adduced sufficient evidence for a reasonable jury to find Trans Union willfully (i.e., knowingly or recklessly) violated the FCRA in (a) its reinvestigation of the REV Federal Credit Union tradeline and (b) its handling and reporting of the bankruptcy record thereby precluding summary judgment on willfulness under 15 U.S.C. § 1681n. *Barron v. Trans Union Corp.,* 82 F. Supp. 2d 1288 (M.D. Ala. 2000)

- Willfulness under the FCRA includes reckless disregard of statutory duties; a CRA acts willfully if it adopts an objectively unreasonable reading of the statute and "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007).* [1]

- A jury may find willfulness where a CRA persists in objectively unreasonable practices after receiving judicial guidance that such practices violate the FCRA. *Ramirez v. TransUnion LLC, 951 F.3d 1008 (9th Cir. 2020)* (upholding willfulness verdict where Trans Union continued name-only OFAC matching and confusing disclosures after *Cortez v. Trans Union, LLC, 617 F.3d 688 (3d Cir. 2010)*).

- "Maximum possible accuracy" under 15 U.S.C. § 1681e(b) requires more than allowing for the possibility of accuracy; CRAs cannot avoid FCRA obligations by outsourcing or siloing data. *Cortez* (as described in the Ramirez Joint Appendix).

- Whether CRA procedures and reinvestigation efforts reflect reckless disregard is typically a jury question where the record shows haphazard verification, parroting, or failure to meaningfully review consumer-provided materials. ***Barron v. Trans Union Corp.*, 82 F. Supp. 2d 1288 (M.D. Ala. 2000).**

Trans Union's motion asserts Plaintiff "has no evidence" of a willful policy or objectively unreasonable practice. The summary-judgment record, however, permits a jury to find reckless disregard on multiple, independent grounds.

1. Continued reliance on objectively unreasonable verification and disclosure practices despite clear judicial guidance

- After *Cortez*, Trans Union had "guidance from the courts of appeals" that (i) OFAC/public-record data integrated into reports is subject to FCRA duties; (ii) rudimentary matching/verification and confusing, bifurcated disclosures are not reasonable; and (iii) CRAs must take "utmost care" to ensure accuracy, using additional identifiers when available. *Ramirez* affirmed that a jury could find Trans Union's post-*Cortez* choices objectively unreasonable and reckless.

- The Ninth Circuit specifically upheld a willfulness finding where Trans Union continued name-only matching and separate mailings conduct the court found "objectively unreasonable" and carrying a risk beyond mere carelessness. ***Ramirez*, 951 F.3d at 1033–39.**

- The Joint Appendix confirms that Trans Union's interpretation of "consumer file" to exclude siloed/outsourced data was "emphatically rejected" by *Cortez*, underscoring the unreasonableness of persisting in practices that treat critical data (e.g., public records) as outside FCRA duties "regardless of how the information is stored." ***TransUnion v. Ramirez* Joint Appendix (SCOTUS) Supreme Court of the United States Joint Appendix 2021.**

- By close analogy, a jury could find recklessness if Trans Union (a) "parroted" an ACDV response on the REV tradeline without meaningfully assessing contrary documents Plaintiff submitted, or (b) treated bankruptcy/public-record updates as outside core FCRA accuracy and disclosure obligations because they were obtained via third-party sources or PACER scrapes, rather than rigorously cross-checking identifiers and promptly reflecting the consumer's corrected status. See *Cortez* principles as described in the Ramirez appellate record.

- Amended Complaint ECF No. 29 (filed 6/21/2022) Counts under 15 U.S.C. § 1681i and 15 U.S.C. § 1681e(b) alleging repeated disputes and TU's failure to conduct a reasonable reinvestigation on the REV tradeline; allegations that TU ignored consumer-

supplied court documents regarding the bankruptcy reporting, readily available court public records regarding the status and failed to align reporting with its own policies.

- **Deposition of Nelson L. Bruce — testimony describing: (a) multiple direct disputes to TU with attachments (court docket printouts, correspondence), (b) TU's standardized ACDV responses, and (c) continued reporting that omitted dispute notations or failed to update the bankruptcy characterization. See Bruce Dep. at [pp:lines].**

Here, a reasonable jury could view TU's standardized ACDV "parroting," failure to incorporate consumer-provided case materials, and prolonged failure to correct the bankruptcy characterization as "reckless indifference" to Plaintiff's FCRA rights especially given the well-known risks of public-record misreporting and the judicial guidance warning CRAs to take "utmost care." *Ramirez* and *Cortez*.

Defendants' premise that "no negligence means no willfulness" is legally and factually flawed:

- ***Safeco's*** framework does not require intentional wrongdoing; reckless disregard suffices. Where a plaintiff adduces evidence of objectively unreasonable policies and known risks ignored by a CRA, a jury may find willfulness even if the CRA claims it attempted compliance. ***Ramirez*** affirmed a willfulness verdict under this standard.
- Moreover, Trans Union's own litigation record shows that persistence in objectively unreasonable interpretations and processes after adverse appellate guidance can support a willfulness finding. ***Ramirez* and *Cortez***

Distinguishing Defendants' "mere inaccuracy/failure to correct" argument Defendant invoke the notion that neither an inaccuracy alone nor a failure to correct, standing alone, proves willfulness. But Plaintiff's evidence goes beyond "mere" inaccuracy: it shows repeat, documented consumer disputes; disregard of specific, contradictory court documents; continued reliance on automated ACDV/PACER or third-party pipelines with or without adequate human review; and failure to adopt additional identifiers or procedures despite known risks. Jurors could deem that combination objectively unreasonable and reckless, consistent with ***Ramirez* and *Cortez***.

Because a reasonable jury could find that Trans Union adopted and persisted in objectively unreasonable procedures and disregarded known risks and judicial guidance summary judgment on willfulness must be denied. 15 U.S.C. § 1681n; ***Ramirez v. TransUnion***

*LLC,* **951 F.3d 1008 (9th Cir. 2020);** ***Barron v. Trans Union Corp.,*** **82 F. Supp. 2d 1288 (M.D. Ala. 2000).**

## I.   PLAINTIFF'S RESPONSE TO DEFENDANTS SECTION IV. E (ECF NO. 235 AT 25)

The preemption section of Trans Union's motion does not warrant summary judgment. Section 15 U.S.C. § 1681t(b)(1)(F) addresses furnishers' duties and, even where implicated, does not impose blanket preemption; Plaintiff's SCCPC and defamation claims against a CRA are at least partially preserved particularly under the malice carve-out in 15 U.S.C. § 1681h(e) and the defense's authorities are distinguishable. [1][2][3]

Issue

- Whether Plaintiff's SCCPC claims (S.C. Code Ann. §§ 37-20-170, -200) and common-law defamation are preempted by the FCRA such that Trans Union is entitled to summary judgment.

SCCPC claims against a CRA are not categorically preempted by § 1681t(b)(1)(F)

The defense invokes § 1681t(b)(1)(F), but that subsection speaks to the "subject matter regulated under § 1681s-2," i.e., duties of furnishers not CRA's. Trans Union is a CRA; Plaintiff's Amended Complaint's Seventh Cause of Action alleges CRA-side failures to provide "sufficient evidence that the information is true and accurate as it relates to the consumer" when responding to a dispute (Am. Compl. ¶¶ 42, 101, ECF No. 29).   The word "shall" under 37-20-170(B) makes it mandatory that section 37-20-170(B)(4) is complied with.   The records show that Defendant has not produced to the plaintiff sufficient evidence of their investigation which helped them determine the accuracy of the information reported which they verified as accurate or updated.   Because the identified statutory preemption hook is targeted to furnishers, the argument is misdirected. At minimum, the defense has not shown that the SCCPC claim imposes a "requirement or prohibition" on the subject matter Congress assigned to CRA's 1681t(a). Section 1681t(b)(1)(B) is the only section that applies to a CRA and that section only preempts state law as to the time by which a consumer reporting agency must take action, including the provision of notification to a consumer or other person in any procedure related to the disputed

accuracy of information in a consumer's file.  There are no other state preemptions against a CRA.  Courts are to examine whether the state claim actually conflicts with or adds to the federally occupied subject matter. Plaintiff agrees that § 37-20-200 expressly states that "Damages provided in this section do not apply to section 37-20-170 therefore section 37-20-170 survives over 37-20-200.

Express preemption under 15 U.S.C. § 1681t(b)(1)(F) reaches only the "subject matter" of 15 U.S.C. § 1681s-2 duties of furnishers.  15 U.S.C. § 1681h(e) preserves defamation-type claims upon a showing of malice or willful intent, confirming that not all state claims are extinguished. Plaintiff's SCCPC target CRA conduct (investigation and reporting), not furnisher duties under 15 U.S.C. § 1681s-2, so § 1681t(b)(1)(F) does not categorically preempt them.  Plaintiff pleads malice/willfulness and recklessness supporting defamation under 15 U.S.C. § 1681h(e), creating a triable question that defeats preemption at summary judgment. [1][2]

Because § 1681t(b)(1)(F) is furnisher-focused, because § 1681h(e) expressly preserves defamation with malice, and because Plaintiff's SCCPC and defamation claims address CRA conduct with evidence sufficient for a jury, Trans Union's preemption arguments do not justify summary judgment. The motion should be denied so these claims can proceed to trial. [1][2][3]

## CONCLUSION

For the foregoing reasons, the Court should deny Trans Union's Motion for Summary Judgment in its entirety. Material disputes exist as to the accuracy of the REV tradeline and bankruptcy reporting, the reasonableness of Trans Union's ACDV- and PACER-based reinvestigations, causation and damages, willfulness, and the viability of the state-law claims issues for the jury, not summary judgment.  Plaintiff respectfully requests that the Court deny the motion and set this matter for trial.

Done this **20**th day of February, 2026.


**RESPECTFULLY PRESENTED,**

*Nelson L. Bruce*

Nelson L. Bruce, Sui Juris
All Secured Natural Rights Explicitly Reserved and Retained "with prejudice"
c/o P.O. Box 3345, Summerville, South Carolina [29484]
ph. 843-437-7901
leonbruce81@yahoo.com
