**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Nelson L. Bruce, | ) | Civil Action No. 2:22-cv-01292-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Trans Union LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Nelson L. Bruce ("Plaintiff" or "Bruce"), proceeding *pro se* and *in forma pauperis*, originally filed this civil action against REV Federal Credit Union ("REV"),[1] Trans Union, LLC ("Trans Union"), and "Unknown Doe's 1-100" on April 21, 2022, asserting claims pursuant to the Fair Credit Reporting Act ("FCRA"), among others. (ECF No. 1.) Plaintiff filed an amended complaint on June 21, 2022, raising similar allegations.[2] (ECF No. 29.) Now before the Court is a motion for summary judgment filed by Defendant Trans Union LLC ("Trans Union"). (ECF No. 235.) For the reasons discussed below, the Court **grants** Trans Union's motion (ECF No. 235.)

---

[1] On October 5, 2023, REV was dismissed in light of the parties' joint stipulation of dismissal with prejudice. (ECF No. 81.)

[2] Although Plaintiff named "Unknown Doe's 1-100" as Defendants in the caption of his amended complaint, he does not mention these Defendants anywhere else. (*See generally* ECF No. 29.) Regardless, "Unknown Doe's 1-100" remain unidentified and therefore must be dismissed from this case. Indeed, John Doe suits are permissible only against "real, but unidentified, defendants," *Schiff v. Kennedy*, 691 F.2d 196, 197 (4th Cir. 1982), and the designation of a John Doe defendant "is generally not favored in federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." *Chidi Njoku v. Unknown Special Unit Staff*, 217 F.3d 840, 2000 WL 903896, at *1 (4th Cir. 2000) (unpublished table decision). When a defendant is labeled as John Doe, he must "be identified by the time the issues are adjudicated on their merits" because "judgments may not be entered against unnamed defendants." *Randolph v. Allen*, No. 2:22-cv-00315, 2023 WL 4207482, at *1 (S.D.W. Va. June 27, 2023); *see also Chidi Njoku*, 217 F.3d 840, 2000 WL 903896, at *1 (stating that "there is no basis to permit a judgment against an unidentified John Doe defendant to be sustained"); *Myers v. City of Charleston*, No. 2:19-cv-757, 2021 WL 925326, at *10 (S.D.W. Va. Mar. 10, 2021). As such, Trans Union is the only remaining Defendant in this case.

1

**BACKGROUND[3]**

While difficult to parse, the amended complaint contains the following allegations. REV issued an account to Plaintiff, which was "routinely reported on Plaintiff's consumer credit report." (ECF No. 29 at 5.) More specifically, TransUnion issued a credit report "to third parties concerning the Plaintiff that included inaccurate and materially misleading information relating to an alleged REV[] account and Bankruptcy." (*Id*.) Plaintiff alleges that the information provided by REV to TransUnion is inaccurate and misleading because "the Plaintiff disputes the balance owed on this alleged debt and disputes the bankruptcy being reported," and because "the account and bankruptcy being reported [were] not marked . . . as disputed when disputed by [P]laintiff." (*Id*.)

According to Plaintiff, on or about January 21, 2021, and April 20, 2021, he notified both REV and TransUnion that he disputed the accuracy of the information at issue in his credit report and requested an investigation. (*Id*. at 6.) Plaintiff alleges he again disputed his alleged debt with REV on or about April 4, 2022. (*Id*. at 8.) Plaintiff alleges that his account was written off by REV as a loss, and REV "has already been paid by receiving a payment from the IRS in the form of tax credits." (*Id*.) According to Plaintiff, REV was "supposed to credit the account to zero out the account [and] therefore they violated the FCRA by falsely and inaccurately reporting this unverified account balance." (*Id*.) Plaintiff alleges that due to Defendants' actions, he has suffered, *inter alia*, "a diminished credit score, loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on credit applications, and the mental and emotional distress and pain." (*Id*. at 11.)

---

[3] This background section recounts the facts as they are alleged in the amended complaint in an effort to present them in the light most favorable to Plaintiff, the nonmoving party.

The amended complaint states that it is brought under the FCRA, the FDCPA, the Federal Trade Commission Act ("FTC Act"), the Uniform Commercial Code ("UCC"), the South Carolina Unfair Trade Practices Act ("SCUTPA"), and the South Carolina Consumer Protection Code ("SCCPC"). (*Id*. at 1.) Plaintiff seeks injunctive relief, declaratory judgment, and monetary damages including punitive, compensatory, and statutory damages. (*Id*. at 25.)

On June 30, 2022, REV filed a motion to partially dismiss, which the Court granted in part and denied in part on February 24, 2023. (ECF Nos. 30, 39, 52.) REV was ultimately dismissed as a defendant in this civil action pursuant to a joint stipulation of dismissal with prejudice filed on October 5, 2023. (ECF No. 81.) As such, only Plaintiff's claims against Trans Union for willful and negligent violations of the FCRA, defamation, and violations of the SCCPC remain. (ECF No. 29.)

On December 19, 2025, Trans Union filed a motion for summary judgment as to each of Plaintiff's remaining claims. (ECF No. 235.) On December 22, 2025, the Court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. After requesting and receiving an extension of time, Plaintiff filed a response in opposition on February 20, 2026. (ECF No. 241.)[4] Trans Union replied to Plaintiff's response on February 27, 2026. (ECF No. 245.) On March 10, 2026, Plaintiff filed a motion for leave to file a sur-reply, which the Court granted on March 12,

---

[4] On February 23, 2026, Plaintiff also filed an "Emergency Petition for Leave to File Exhibits Under Seal" pertaining to certain exhibits he filed in connection with his response. (ECF No. 242.) On February 25, 2026, the Court entered a text order explaining that it would limit access to the exhibits at issue to the Court and the parties, in light of Plaintiff's *pro se* status, the confidentiality order, and the current procedural posture of the case. (ECF No. 243.) An order granting in part and denying in part Plaintiff's motion (ECF No. 242) was filed on March 20, 2026. (ECF No. 250.)

3

2026. (ECF Nos. 246, 247.) Plaintiff's sur-reply was filed on that same day. (ECF No. 248.) As such, the motion before the Court has been fully briefed and is ripe for disposition.

## **LEGAL STANDARDS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Sedar v. Reston Town Center Prop., LLC*, 988 F.3d 756, 763 (4th Cir. 2021) ("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case.[5] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**DISCUSSION**

I.    **FCRA Claims**

    **A. Legal Framework**

The FCRA is "a comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. F.D.I.C.*, 625 F.3d 808, 812 (4th Cir. 2010). Relevant here, the FCRA imposes distinct requirements on the different entities within the consumer reporting industry. As the Fourth Circuit recently summarized:

> Under [the FCRA], a consumer reporting agency creates and provides credit reports. Consumer reporting agencies "compile . . . data [about consumers] into a comprehensible format," which allows providers of credit, landlords and other entities to evaluate individuals and make informed decisions. *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020). The data contained in those reports comes from furnishers like "banks, credit lenders, and collection agencies." *Id.* "Consumer reporting agencies and furnishers, though interrelated, serve discrete functions: furnishers report data to incentivize the repayment of debts, while consumer reporting agencies compile and report that data for a fee." *Id.* Consumer reporting agencies and furnishers thus work together as the two primary components of our credit reporting system to "produc[e] a vast flow and store of consumer information." *Id.*
>
> The FCRA requires furnishers to ensure that the information they provide to consumer reporting agencies is accurate. *See* 15 U.S.C. § 1681s-2(a). If a consumer believes information in her credit report is inaccurate or incomplete, she can dispute the information directly with the furnisher. *See id.* § 1681s-2(a)(8). But she can also dispute the accuracy of information in her report indirectly by notifying a consumer reporting agency rather than

---

[5] Although the Court must liberally construe Plaintiff's filings in light of his *pro se* status, it is worth noting that Plaintiff is a seasoned *pro se* litigant who has filed over fifteen civil actions in this Court.

5

the furnisher. *See id.* §§ 1681i(a)(2), 1681s-2(b); *see also Ingram v. Experian Info. Sols., Inc.*, 83 F.4th 231, 237 (3d Cir. 2023) (explaining that direct disputes are made with the "person or entity that furnished the incorrect or incomplete information," while indirect disputes "are when a consumer instead disputes information with the consumer reporting agency . . . ."). If a consumer notifies a consumer reporting agency "that [she] disputes the accuracy of an item in [her] file, [the] FCRA requires the [consumer reporting agency] to notify the furnisher of the dispute." *Saunders v. Branch Banking And Tr. Co. Of VA.*, 526 F.3d 142, 148 (4th Cir. 2008).

Once the consumer reporting agency notifies the furnisher of the consumer's dispute, it must "conduct an investigation with respect to the disputed information." § 1681s-2(b)(1)(A). The furnisher must also review "all relevant information provided by the consumer reporting agency" related to the dispute. *Id.* § 1681s-2(b)(1)(B). And it must "report the results of the investigation to the consumer reporting agency." *Id.* § 1681s-2(b)(1)(C). If the investigation reveals that the information is "incomplete or inaccurate," the furnisher must report those findings to the pertinent credit reporting agencies. *See id.* § 1681s-2(b)(1)(D). What's more, if part of the information disputed by the consumer is either (1) found to be inaccurate or incomplete, or (2) cannot be verified after the required reasonable investigation, the furnisher must "modify," "delete" or "permanently block" the reporting of the information. *Id.* § 1681s-2(b)(1)(E). . . .

*Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 245-46 (4th Cir. 2025).

At the outset, the undersigned notes that much of Plaintiff's amended complaint centers around purported FCRA violations committed by REV, as a furnisher. (*See generally* ECF No. 29.) However, as noted above, REV is no longer a Defendant in this case. (*See* ECF No. 81.) Thus, only Plaintiff's claims against Trans Union, a credit reporting agency ("CRA"), remain, and this order has been limited accordingly.

Specific to Trans Union, the amended complaint alleges negligent and willful violations of the FCRA through: (i) failing to promptly and properly investigate and delete inaccurate information pursuant to § 1681i(a); (ii) failing to conduct a reasonable reinvestigation of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a); and (iii) failing to establish or follow reasonable procedures to assure the maximum possible accuracy of

6

Plaintiff's consumer file pursuant to 15 U.S.C. § 1681e(b). (ECF No. 29 at 12–13, 14–15.) Plaintiff further alleges that Trans Union negligently and willfully violated the FCRA by: (i) failing to note that he disputed the accuracy of the information reported regarding his REV account and bankruptcy; (ii) failing to take adequate steps to verify the accuracy of the information at issue and to inform him of those exact steps; and (iii) furnishing and selling his consumer report to persons without a certified permissible purposes and/or his written consent. (*Id.*)

Section 1681e(b) states that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "Thus, a [CRA] violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001). To establish the first prong of a § 1681e(b) violation, "a consumer must present evidence tending to show that a [CRA] prepared a report containing inaccurate information." *Id.* at 415 (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). "[A] report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Id.* (cleaned up) (explaining that reports containing technically accurate information can still be inaccurate if the information is presented in a misleading way); *see also Saunders*, 526 F.3d at 148 ("[A] credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression."). To establish the second prong, "the plaintiff bears the burden

under § 1681e(b) to show that the [CRA] did not follow reasonable procedures." *Dalton*, 257 F.3d at 416. "The issue of whether the agency failed to follow 'reasonable procedures' will be a 'jury question[] in the overwhelming majority of cases.'" *Id.* (alteration in original) (quoting *Guimond*, 45 F.3d at 1333).

Relatedly, "[s]ection 1681i requires consumer reporting agencies to conduct reinvestigations of allegedly inaccurate information contained in credit reports in certain circumstances . . . ." *Campbell v. Experian Info. Sols., Inc.*, No. 3:24-cv-5772-JFA-SVH, 2024 WL 5498104, at *3 (D.S.C. Dec. 30, 2024). More specifically:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer . . . .

15 U.S.C. § 1681i(a)(1)(A).

To prevail on a claim for a violation of § 1681i, Plaintiff must allege "(1) that [he] disputed the accuracy of an item in [his] credit file; (2) the [credit reporting agency] failed to conduct a reasonable reinvestigation; and (3) that a reasonable reinvestigation by the [credit reporting agency] could have uncovered the inaccuracy." *Davis v. Trans Union LLC*, No. 1:24-cv-02338-JRR, 2025 WL 886173, at *3 (D. Md. Mar. 21, 2025). "The reasonableness of a reinvestigation under these circumstances depends on the facts of each case, . . . but multiple courts have explained that a [credit reporting agency] has no obligation to resolve legal disputes between a consumer and a creditor." *Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 WL 4521651, at *10 (D. Md. Aug. 26, 2016)

(collecting cases in other circuits); *see also Saunders*, 526 F.3d at 142 (noting that claims under both §§ 1681e(b) and 1681i "brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not a party to the suit"); *Perry v. Toyota Motor Credit Corp.*, No. 1:18-cv-00034, 2019 WL 332813, at *5 (W.D. Va. Jan. 25, 2019) ("A number of courts have found that to make the required showing of inaccurate reporting under FCRA §§ 1681e(b) and 1681i, a complaint's allegations must dispute facts underlying a purported inaccuracy, as the presentation of legal defenses to payment will not suffice." (internal quotation marks and citation omitted)). Indeed, the Fourth Circuit recently reiterated that CRAs "are not expected to function like full tribunals." *Roberts*, 131 F.4th at 252, n.8.

Also, "if a consumer later sues a [credit reporting agency] for a violation of its reinvestigation duty under § 1681i(a), he or she may only sue based on alleged violations of which the consumer provided notice to the CRA." *Petty v. Equifax Info. Servs., LLC*, No. CCB-10-694, 2010 WL 4183542, at *3 (D. Md. Oct. 25, 2010). Such notice is required because without it the credit reporting agency cannot have been expected to know what information to reinvestigate, how to reinvestigate it, or whether upon reinvestigation the information is indeed inaccurate or incomplete. *Id*. "If the consumer raises additional alleged violations in his or her lawsuit for which the consumer had not previously provided notice of the dispute to the CRA, those claims must be dismissed." *Id*.

### B. Analysis

Trans Union moves for summary judgment on all of Plaintiff's FCRA claims, arguing, *inter alia*, that Plaintiff's claims fail as a matter of law because Plaintiff cannot prove that Trans Union reported inaccurate information and/or failed to properly

reinvestigate Plaintiff's disputes. (ECF No. 235.) For the reasons set forth below, the undersigned agrees and **grants** Trans Union's motion for summary judgment (ECF No. 235) as to each of Plaintiff's FCRA claims against it.[6]

### 1.     Inaccuracies

#### i. REV Account

With respect to his REV account, Plaintiff first alleges that Trans Union inaccurately reported this account with a balance, even though his debt under such account was "charged off." (ECF No. 29 at 5–8.) The undersigned finds this argument unconvincing. Indeed, a debt is not extinguished merely because the lending institution has charged off the account. A charge-off is "a declaration by a creditor that an amount is unlikely to be collected." *Frost v. Resurgent Cap. Servs., L.P.*, No. 5:15-cv-03987-EJD, 2016 WL 3479087, at *1 n.1 (N.D. Cal. June 27, 2016) (quoting *Hanks v. Talbots Classics Nat'l Bank*, C-12-2612-SI, 2012 WL 3236323, at *2 n.2 (N.D. Cal. Aug. 6, 2012)). Black's Law Dictionary explains that to charge off an account is "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." Black's Law

---

[6] Plaintiff may not use his briefs to change his claims and/or to assert new claims not previously presented in his amended complaint. Plaintiff has been afforded every reasonable opportunity to develop his claims throughout this litigation, and it is well settled that "[a] plaintiff may not argue a new claim in response to a motion for summary judgment." *Haggwood v. Magill*, No. 5:15-cv-3271-RMG, 2016 WL 4149986, at *6 (D.S.C. Aug. 3, 2016) (citing *White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992)); *see also S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (stating that parties cannot amend their complaints through briefing or oral advocacy); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004) (explaining that a plaintiff may not amend a complaint through argument in brief opposing summary judgment); *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (noting that a party may not expand its claims to assert new theories in response to summary judgment); *Bryan v. Def. Tech., U.S.*, No. 1:10-cv-2834-TLW-SVH, 2011 WL 4435597, at *4 (D.S.C. Aug. 10, 2011) ("A plaintiff may not amend his pleadings to avoid summary judgment."), *adopted*, 2011 WL 4435579 (D.S.C. Sept. 23, 2011), *aff'd*, 466 F. App'x 208 (4th Cir. 2012). Accordingly, the undersigned has considered only the discernable claims raised in Plaintiff's amended complaint. (ECF No. 29.)

Dictionary (11th ed. 2019). "Bad debt," in turn, is defined as "[a] debt that is uncollectible and that may be deductible for tax purposes." *Id.*

The act of charging off "does not diminish the legal right of the original creditor to collect the full amount of the debt." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016); *Towle v. TD Bank USA, N.A.*, No. 22-CV-0624 (PJS/TNL), 2023 WL 3018665, at *3 (D. Minn. Apr. 20, 2023) ("The fact that a creditor 'charges off' an account does not mean that the debtor is no longer legally obligated to pay the amount 'charged off'; it simply means that the creditor does not expect the debtor to fulfill that legal obligation."); *Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175 (CS), 2020 WL 6809059 (S.D.N.Y. Nov. 19, 2020) ("[A] creditor charging off or writing off a debt is simply an internal accounting action by which the creditor stops carrying the debt as a receivable because the chances of collecting it are so low."); *In re Washington*, 581 B.R. 150, 159 n.15 (Bankr. D.S.C. 2017) (finding that the Supreme Court of South Carolina's definition of a charge off, which relies on Black's Law Dictionary, "supports the proposition that a 'write off' or 'charge off' is an internal accounting practice and does not have the legal effect of discharging a debtor from the underlying debt") (citing *South Carolina Dep't of Revenue v. Anonymous Co. A*, 678 S.E.2d 255, 257 n. 2 (S.C. 2009)). Thus, as one federal court explained, "[c]reditors . . . could attempt to collect the debt themselves— either by utilizing internal collections staff or by contracting with a third-party agent willing to collect the debt on their behalf." *Artemov v. TransUnion, LLC*, 20-cv-1892 (BMC), 2020 WL 5211068, at *4 (E.D.N.Y. Sept. 1, 2020) (citing *Hinkle*, 827 F.3d at 1297–98). "Alternatively, they could sell the debt to a third-party purchaser at a discounted price based on the reduced likelihood of collection." *Id*. In short, this Court finds no merit to any

11

assertion that REV changed the legal enforceability of the debt owed by Plaintiff when it charged off the account at issue. *See also Towle*, 2023 WL 3018665, at *3 (rejecting as "frivolous" the claim that "if a creditor who is stuck with a bad debt either receives payment from an insurer or deducts the bad debt on its tax returns, the debtor is somehow absolved of his legal responsibility to pay the debt").

Accordingly, Trans Union's reporting of this account with a balance was not inaccurate. As numerous courts have found, "consumer reporting agencies may lawfully report accurate information regarding closed accounts, discontinued lines of credit, or debts marked as charged off." *Lensendro v. TransUnion LLC*, No. 3:25-cv-128 (AWT), 2025 WL 1104611, at *7 (D. Conn. Apr. 14, 2025) (citing *Ciment v. TransUnion, LLC*, No. 24-cv-212(CS), 2025 WL 307871, at *6 (S.D.N.Y. Jan. 27, 2025) ("FCRA allows charged-off accounts to be reported for seven years . . . ." (quoting *Shelton v. AmeriCredit Fin. Servs., Inc*., No. 23-10543, 2023 WL 2761702, at *3 (E.D. Mich. Apr. 3, 2023))); *Boyer v. TransUnion, LLC*, No. 3:21-cv-00918 (KAD), 2023 WL 1434005, at *6 (D. Conn. Feb. 1, 2023) ("Plaintiff does not attempt to distinguish the instant case from the numerous others in which courts have determined that reporting historical account data on closed accounts is neither inaccurate nor misleading."); *Artemov,* 2020 WL 5211068, at *4–5 ("[I]t should be obvious that, even though the banks labeled plaintiff's accounts as charged off, they had no obligation to zero out the overall or past due balance. . . . At any moment, BOA could decide to collect the charged off debt and seek the delinquent amount."); *Ostreicher*, 2020 WL 6809059, at *5 ("Chase here reported exactly what it should have: that Plaintiff had failed to pay on four accounts (which a potential future creditor would want to know) but had no monthly obligation on those accounts because Chase had

written the accounts off (which Plaintiff would want the potential creditor to know)."). As the court explained in *Artemov v. TransUnion, LLC*:

> If I were to adopt plaintiff's reasoning—that a charge off categorically precludes a creditor from reporting the total past due amount—it would vitiate the entire existence and purpose of credit reporting companies: to present an evenhanded and fair representation of a particular consumer's ability and willingness to pay off debt, so as to encourage a creditor to take a risk and extend a line of credit to a particular consumer.

2020 WL 5211068, at *6.

In light of the foregoing, the Court cannot find that where Plaintiff does not dispute that he failed to complete the payment owed on his REV account, it was "actually inaccurate or incomplete" for Trans Union to report the unpaid balance on that account simply because it had been "charged off" by REV. Critically, where Trans Union reported a balance on the REV account, the account was clearly marked as charged off and closed. (*See, e.g.*, ECF Nos. 29-1 at 5.) Under such circumstances, Trans Union's reporting of a balance on Plaintiff's charged-off REV account was not inaccurate, and Plaintiff's FCRA claims premised upon this alleged inaccuracy therefore fail. *See Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 125-26 (4th Cir. 2022) (noting that "Fourth Circuit precedent requires that a plaintiff bringing a claim under . . . § 1681e(b) . . . show the defendant's 'consumer report contains inaccurate information'"); *Campbell*, 2024 WL 5498104, at *4 ("As courts in this circuit [have] repeatedly held, in asserting an FCRA claim under 15 U.S.C. §§ 1681e(b) and 1681i, 'a plaintiff must make a threshold showing of inaccuracy.'" (quoting *Dawkins v. Experian Info. Sols., Inc.*, No. 6:22-cv-774-TMC-JDA, 2022 WL 17668425, at *7 (D.S.C. Oct. 19, 2022))); *Peoples v. Equifax Info. Sols.*, No. 3:23-CV-495-MOC-DCK, 2023 WL 6883650, at *2 (W.D.N.C. Oct. 18, 2023) ("[W]ithout pleading an inaccuracy Plaintiff does not have a valid claim under

either § 1681[i] or § 1681e(b).”); *Alston v. Equifax Info. Servs., LLC*, C/A No. TDC-13-1230, 2016 WL 5231708, at *10 (D. Md. Sept. 21, 2016) (noting that "all of [the plaintiff's] claims are again made pursuant to § 1681s-2, § 1681e, and § 1681i, each of which has a threshold inaccuracy requirement").

Plaintiff next asserts that Trans Union inaccurately reported his REV account by failing to indicate that the account was in dispute. (ECF No. 29 at 5, 13, 15.) Upon review, the undersigned finds this argument similarly unconvincing.  First, "[c]ompliance codes are not required by the FCRA," and a dispute notation is considered a compliance code. *Llewellyn v. Carrington Mortg. Servs., LLC*, No. 21-00850-CV-W-GAF, 2023 WL 3734965, at *7 (W.D. Mo. Mar. 31, 2023). Further, though the Fourth Circuit has recognized situations in which a plaintiff can recover pursuant to § 1681s-2(b) for a failure to report a dispute, *see Saunders*, 526 F.3d at 149–50, the instant case does not present such a situation.

In support of his position, Plaintiff relies on *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008). (ECF No. 241 at 12.) However, *Saunders* is easily distinguished from the facts and evidence in this case.

In *Saunders*, the plaintiff purchased a car from a dealer, which thereafter assigned the plaintiff's loan to BB&T. *Saunders*, 526 F.3d at 145. After experiencing mechanical issues, the plaintiff traded in the car for a new car at the same dealership. The dealer paid the remaining debt on the original car loan, such that the plaintiff had no obligation on that loan. The loan for the replacement car was also assigned to BB&T. When the plaintiff did not receive a payment book for the second loan, he contacted BB&T, and a BB&T employee informed him that he did not owe any money on the loan. The plaintiff contacted

BB&T several more times inquiring regarding the money owed, and each time was informed that he did not owe any money. Later, the plaintiff received a letter from BB&T informing him that his loan was seriously delinquent. After receipt of the delinquency letter, the plaintiff again went to BB&T to discuss the issue. At that time, a BB&T loan officer acknowledged that BB&T erred in failing to acknowledge the existence of the loan prior to the letter. The plaintiff agreed to meet his obligations under the loan but refused to pay the penalties and late fees. Ultimately, the car was repossessed and reported in repossession status to the CRAs. The plaintiff submitted Automated Credit Dispute Verification Forms ("ACDVs") to the CRAs to lodge a dispute over the reported information. BB&T responded to the ACDV to update the record as a profit and loss write-off, which further reduced the plaintiff's credit score. Despite the verification form providing BB&T with "two opportunities to indicate that [the plaintiff] had contested the legitimacy of the debt with BB&T," BB&T failed to report the ongoing dispute. *Id.* at 146.

The Fourth Circuit found that the failure to report the ongoing dispute was a violation of § 1681s-2(b). The court emphasized the following:

> BB&T documented numerous communications from [the plaintiff] and [the plaintiff's] attorney. BB&T records entirely accord with [the plaintiff's] testimony. The bank records reveal that [the plaintiff] sought to resolve the dispute, informed BB&T of its error in failing to communicate with him earlier, and told BB&T that he had not paid earlier because BB&T had not provided him with an account number for the loan.

*Id*. Given that BB&T's own records indicated the dispute and its error, the Fourth Circuit found that a "jury could reasonably conclude that BB&T's decision to report the debt without any mention of a dispute was 'misleading in such a way and to such an extent that it can be expected to have an adverse effect.'" *Id*. at 150 (citation omitted). As a result, the Fourth Circuit found the district court did not err in so holding. *Id.* at 151

15

(assuming without deciding "that a furnisher incurs liability . . . only if it fails to report a meritorious dispute"); *cf. Roberts,* 131 F.4th at 250 (stating that in *Saunders*, "[the Fourth Circuit] held that failing to report the fact that a debt is disputed renders the reporting of the debt inaccurate").

As aptly summarized by another court in this district:

*Saunders* [recognized that] there are situations in which a plaintiff can recover pursuant to § 1681s-2(b) for a failure to report a dispute. Specifically, if the furnisher's records indicate that there is an ongoing dispute with the debtor, the furnisher fails to report the dispute, and the failure to report the dispute renders the report "materially misleading." *See Saunders*, 526 F.3d at 149 ("The second subsection [§ 1681s-2(b)] thus requires furnishers to review their prior report for accuracy and completeness; it does not set forth specific requirements as to what information must be reported, because these requirements have already been set forth in the first subsection [§ 1681s-2(a)]."). Thus, for liability to attach, the failure to report the dispute must "create a materially misleading impression." *Id*. at 148. Stated differently, "[a] furnisher is not liable for inaccurate reporting for merely failing to report a meritless dispute, 'because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading." *Wood [v. Credit One Bank]*, 277 F. Supp. 3d [821], 853 [(E.D. Va. 2017)].

*Timms v. USAA Fed. Sav. Bank*, No. 3:18-cv-01495-SAL, 2020 WL 12618897, at *15 (D.S.C. Aug. 20, 2020).

Here, by contrast, Plaintiff attempts to hold Trans Union liable for its failure to report a dispute notation on his REV account without recognizing that CRAs are not obligated to report disputes unless notified of the same by a furnisher. Indeed, a CRA is required to report a dispute notation under the FCRA *only if* such notation is received from the furnisher. *See* 15 U.S.C. §§ 1681c(f). Importantly, the amended complaint does not allege that Trans Union failed to indicate disputed information in a published consumer report after being notified of a bona fide dispute *by a furnisher*, and no record evidence indicates that REV, the furnisher in this instance, ever reported a dispute notation to Trans Union.

16

*See* 15 U.S.C. §§ 1681s-2(a)(3), 1681c(f). Thus, even if Plaintiff notified Trans Union of this purported error,[7] Trans Union was under no obligation to include a dispute notation on Plaintiff's credit report. In light of the foregoing, the Court cannot conclude that Trans Union inaccurately reported Plaintiff's REV account by failing to include a dispute notation such that it is liable to Plaintiff for violation of its reporting obligations under the FCRA.

Ultimately, the Court finds no genuine issue of material fact as to whether Trans Union reported inaccurate information regarding the REV account, and Plaintiff's arguments to the contrary lack merit. Accordingly, the Court finds that Trans Union is entitled to summary judgment on all of Plaintiff's FCRA claims regarding Plaintiff's REV account, and its motion is therefore **granted** as to all such claims. *See Henderson*, 53 F.4th at 125–26 (noting that "Fourth Circuit precedent requires that a plaintiff bringing a claim under . . . § 1681e(b) . . . show the defendant's 'consumer report contains inaccurate information'"); *Campbell*, 2024 WL 5498104, at *4 ("As courts in this circuit [have] repeatedly held, in asserting an FCRA claim under 15 U.S.C. §§ 1681e(b) and 1681i, 'a plaintiff must make a threshold showing of inaccuracy.'" (quoting *Dawkins*, 2022 WL 17668425, at *7)); *Peoples*, 2023 WL 6883650, at *2 ("[W]ithout pleading an inaccuracy Plaintiff does not have a valid claim under either § 1681[i] or § 1681e(b)."); *Alston*, 2016 WL 5231708, at *10 (noting that "all of [the plaintiff's] claims are again made pursuant to § 1681s-2, § 1681e, and § 1681i, each of which has a threshold inaccuracy requirement").

---

[7] It is undisputed that Plaintiff failed to provide a "Statement of Dispute" to trigger additional reporting obligations under 15 U.S.C. § 1681i(c). (ECF No. 241 at 16; ECF No. 245 at 6.)

17

### ii. Bankruptcy

Similarly, the record before the Court does not create a genuine issue of material fact as to whether Trans Union reported inaccurate information regarding Plaintiff's bankruptcy. Plaintiff filed a Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of South Carolina on June 13, 2017. (*See* ECF No. 241-5.) The Bankruptcy Court issued an order dismissing the bankruptcy on July 7, 2017, and subsequently closed the case on July 21, 2017. (ECF No. 241-5.) Trans Union reported Plaintiff's bankruptcy as "CH 13 BANKRUPTCY DISMISSED/CLOSED" with a file date of June 13, 2017. (ECF No. 29-1 at 5.) Plaintiff argues that Trans Union should have reported his bankruptcy as "withdrawn" rather than "dismissed" because he voluntarily withdrew his bankruptcy petition. (*See generally* ECF Nos. 29, 241.)   Plaintiff bases each of his bankruptcy-related claims on this alleged error. (*See generally* ECF Nos. 29, 241.)

Upon careful review, Plaintiff's argument lacks merit. At the outset, Trans Union's reporting is factually accurate—Trans Union reported the bankruptcy as dismissed, which it was. (ECF No. 29-1 at 5; ECF No. 241-5 at 5); *see also Fuller v. Trans Union, LLC*, No. 21-CV-03148-LKG, 2023 WL 4764594, at *5–6 (D. Md. July 26, 2023) (granting summary judgment motion on FCRA claim based on Trans Union's purported inaccurate reporting of Chapter 7 bankruptcy because information reported by Trans Union was consistent with the evidence before the Court showing the disposition by the Bankruptcy Court). In fact, Plaintiff's own testimony confirms that his bankruptcy was dismissed. (ECF No. 235-10 at 8–9, "[I]t's showing dismissed. So it looks accurate.").[8]

---

[8] Plaintiff's testimony also forecloses any attempted claim under 15 U.S.C. § 1681c. *See* 15 U.S.C. § 1681c(d)(1) ("If any case arising or filed under Title 11 is withdrawn by the consumer before a final judgment, the consumer reporting agency shall include in the report that such case or filing was withdrawn upon receipt of documentation certifying such withdrawal."). Plaintiff testified that he did not submit to Trans Union

What is more, Plaintiff fails to provide the Court with any argument, evidence, or reasoning to explain how reporting his bankruptcy as dismissed instead of withdrawn (when the bankruptcy was, in fact, dismissed) constitutes technically inaccurate or materially misleading reporting for which Trans Union should be held liable under the FCRA.[9] (*See generally* ECF Nos. 29, 241, 248.) Other courts have flatly rejected this contention. *See Childress v. Experian Inf. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015) (affirming summary judgment in favor of a CRA that reported bankruptcy as "dismissed" and consumer argued it was voluntarily withdrawn and explaining "[every bankruptcy case that is withdrawn at the request of the petitioner is dismissed [so there was] no inaccuracy in the statement in the plaintiff's credit report that her bankruptcy petition had been dismissed."); *see also Primrose v. Castle Branch, Inc.*, No. 7:14-CV-235-D, 2017 WL 57800, at *7 (E.D.N.C. Jan. 3, 2017) (noting that a CRA may reasonably rely on a court's electronic database).[10]

Because the record does not support a finding that Trans Union *inaccurately* reported Plaintiff's REV account and/or bankruptcy, Plaintiff's FCRA claims against Trans Union fail. *See Henderson*, 53 F.4th at 125–26 (noting that "Fourth Circuit precedent

---

any documentation certifying that his bankruptcy was withdrawn. (ECF No. 235-10 at 14.) Plaintiff claims he should not have to provide such documentation to Trans Union himself because Trans Union could easily access and/or request it; however, he provides no legal support for this contention, and the Court finds it unconvincing based on the text of the applicable statute. (*See generally* ECF Nos. 241, 248.) *See also* 15 U.S.C. § 1681c(d)(1).

[9] Additionally, Plaintiff has failed to articulate how Trans Union's reporting of his bankruptcy as "withdrawn," as opposed to "dismissed," would have alleviated any of his alleged damages. (*See generally* ECF. Nos. 29, 235-10, 241, 242-5, 248.) In fact, Plaintiff cannot show any harm resulting from this alleged error—to the extent it could be construed as one. *See Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239–40 (10th Cir. 2015) (noting that CRAs are not required to further inquire regarding an alleged inaccuracy "when 'the cost of verifying the accuracy of the source' outweighs the 'possible harm inaccurately reported information may cause the consumer.'" (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994))).

[10] To the extent Plaintiff attempts to allege that Trans Union inaccurately reported his bankruptcy by failing to include a dispute notation, the undersigned finds this argument unconvincing in light of the record evidence showing that Plaintiff never initiated a dispute with the Bankruptcy Court. (ECF No. 235-10 at 11.)

requires that a plaintiff bringing a claim under . . . § 1681e(b) . . . show the defendant's 'consumer report contains inaccurate information'"); *Campbell*, 2024 WL 5498104, at *4 ("As courts in this circuit [have] repeatedly held, in asserting an FCRA claim under 15 U.S.C. §§ 1681e(b) and 1681i, 'a plaintiff must make a threshold showing of inaccuracy.'" (quoting *Dawkins*, 2022 WL 17668425, at *7)); *Peoples*, 2023 WL 6883650, at *2 ("[W]ithout pleading an inaccuracy Plaintiff does not have a valid claim under either § 1681[i] or § 1681e(b)."); *Alston*, 2016 WL 5231708, at *10 (noting that "all of [the plaintiff's] claims are again made pursuant to § 1681s-2, § 1681e, and § 1681i, each of which has a threshold inaccuracy requirement").[11]

### 2.     Reasonable Procedures

Even assuming, *arguendo*, that the record contained sufficient admissible evidence from which a reasonable factfinder could conclude that Trans Union published inaccurate information on Plaintiff's consumer report under the theories set forth in Plaintiff's amended complaint, Plaintiff's FCRA claims against Trans Union would still fail. As noted above, Plaintiff must show that Trans Union "did not follow reasonable procedures to assure maximum possible accuracy" to prevail on his FCRA claims under § 1681e(b). *Dalton*, 257 F.3d 409, 415–16 (4th Cir. 2001) (noting that "the plaintiff bears the burden under § 1681e(b) to show that the consumer reporting agency did not follow

---

[11] To be clear, because no genuine dispute of material fact exists as to whether Trans Union inaccurately reported Plaintiff's REV account and/or bankruptcy, the Court need not consider Plaintiff's § 1681i claims and arguments regarding reinvestigation. (*See generally* ECF Nos. 29, 241, 248.) *See also Campbell*, 2024 WL 5498104, at *4 ("As courts in this circuit [have] repeatedly held, in asserting an FCRA claim under 15 U.S.C. §§ 1681e(b) and 1681i, 'a plaintiff must make a threshold showing of inaccuracy.'" (quoting *Dawkins*, 2022 WL 17668425, at *7)); *Peoples*, 2023 WL 6883650, at *2 ("[W]ithout pleading an inaccuracy Plaintiff does not have a valid claim under either § 1681[i] or § 1681e(b)."); *Alston*, 2016 WL 5231708, at *10 (noting that "all of [the plaintiff's] claims are again made pursuant to § 1681s-2, § 1681e, and § 1681i, each of which has a threshold inaccuracy requirement").

reasonable procedures"). Based on the record before the Court, Plaintiff cannot make this showing.

"While the 'reasonableness' of a [consumer reporting agency's] procedures is ordinarily a question of fact, the implementing regulations for the FCRA clarify that a [consumer reporting agency] follows reasonable procedures if it relies on information from a reputable source unless it has some notice of systemic problems with the accuracy of its reports," "the information furnished appears implausible or inconsistent," or there have been "numerous problems regarding information from a particular source." *Jianqing Wu v. Trans Union*, No. CIV. A. AW-03-1290, 2006 WL 4729755, at *6–7 (D. Md. May 2, 2006) (citing Commentary on the Fair Credit Reporting Act, 16 C.F.R. pt. 600 app.), *aff'd sub nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007). In support of its summary judgment motion, Trans Union has provided detailed evidence indicating that it follows reasonable procedures for ensuring the maximum possible accuracy of consumer credit files. (ECF No. 235-1 at 3–5.)

This evidence demonstrates that "[v]irtually every action undertaken by Trans Union is designed to ensure that Trans Union maintains reasonable procedures to ensure maximum possible accuracy of the data in its consumer files and reports," including vetting all of its data furnishers and accepting information only from data furnishers who have passed "Trans Union's membership standards and are under contract to provide complete and accurate data." (*Id.* at 3.) Further, Trans Union processes data from its furnishers through "complicated and proprietary algorithms, which are designed to combine data received from different creditors into a single credit file for an individual consumer," and "monitors [the] data provided [] to detect anomalies and patterns of

21

inaccuracies and works with creditors to ensure any problems are corrected." (*Id.*) In addition, "Trans Union has hundreds, if not thousands, of procedures in place, all designed to assure the maximum possible accuracy of the information contained in its consumer files and reports," taking "a comprehensive, collaborative team approach to processing and maintaining its consumer credit data to assure the maximum possible accuracy of its consumer files and reports." (*Id.*)

In sum, this evidence shows, *inter alia*, that Trans Union has implemented processes in accordance with industry standards and the FCRA. (*Id.*) Plaintiff has not provided *any* admissible evidence showing otherwise; rather, he relies on mere speculation and conjecture.[12] Indeed, Plaintiff has failed to submit admissible evidence that could create a genuine dispute as to whether Trans Union followed reasonable procedures to assure maximum possible accuracy when reporting his REV account and bankruptcy. For example, Plaintiff has submitted no admissible evidence from which a reasonable factfinder could conclude that: (1) Trans Union did not follow the procedures outlined above; (2) Trans Union was on notice of systemic problems with its procedures; (3) Trans Union had reason to doubt the accuracy of the information received; (4) Trans Union's sources should not have been considered "reputable"; or (5) the information furnished to Trans Union appeared implausible or inconsistent. *See Gadson v. Experian Info. Sols., Inc.*, No. 2:23-cv-00029-BHH-MHC, 2024 WL 3745476, at *7-8 (D.S.C. July 18, 2024) (referencing *Jianqing Wu*, 2006 WL 4729755, at *6-7), *adopted*, 2024 WL

---

[12] It is also worth noting that Plaintiff has not provided any admissible evidence indicating that Trans Union did not follow its typical procedures in investigating and reinvestigating the disputes at issue here. In fact, the record reveals that Trans Union did follow its established procedures when investigating and reinvestigating Plaintiff's disputes. (ECF No. 235-1 at 4–7; *see also* ECF Nos. 235-2, 235-3, 235-4, 235-5, 235-6, 235-7, 235-8, 235-9.)

3742464 (D.S.C. Aug. 9, 2024). Accordingly, Trans Union is entitled to summary judgment as to Plaintiff's claims under § 1681e(b) on this basis, as well. [13] *See Sarver v. Experian Info. Sols.*, 390 F.3d 969, 973 (7th Cir. 2004) (affirming summary judgment for defendant on § 1681e(b) claim upon finding that "there is nothing in this record to show that [the consumer reporting agency's] procedures are unreasonable").[14]

## II.    State Law Claims

Trans Union is similarly entitled to summary judgment on Plaintiff's state law claims against it. As such, the Court grants Trans Union's motion for summary fudgment (ECF No. 235) and dismisses Plaintiff's claims in full.

### A.  Defamation

With respect to Plaintiff's defamation claim against Trans Union, this claim fails for two reasons. First, it is preempted by the FCRA because Plaintiff has failed to

---

[13] Trans Union is also entitled to summary judgment on Plaintiff's FCRA claims because the record contains no admissible evidence indicating that Plaintiff suffered a credit denial or other adverse action because of Trans Union's reporting, as opposed to Plaintiff's undisputed failure to repay his debts and/or his decision to file for bankruptcy. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) (noting that conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion).

[14] To the extent the amended complaint can be construed as attempting to raise a claim against Trans Union under § 1681b based on T-Mobile and/or Bank of America improperly accessing Plaintiff's credit report through Trans Union, the record contains no admissible evidence that might raise a genuine issue of material fact as to any such claim. In fact, Plaintiff admits that he has or had accounts with T-Mobile (through Metro) and Bank of America and suffered no actual damages as a result of any purported impermissible access to his credit report. (ECF No. 242-5.) Further, the record indicates that Trans Union reasonably believed that T-Mobile and/or Bank of America had a permissible purpose for accessing Plaintiff's credit report. (*See* ECF Nos. 241-6, 242-5.) *See also* 15 U.S.C. § 1681b (noting that a consumer reporting agency may furnish a consumer report to a person which it has reason to believe has a legitimate business need for the information in connection with a business transaction that is initiated by the consumer or to review an account to determine whether the consumer continues to meet the terms of the account); *Harris v. Database Mgmt. & Mktg., Inc.*, 609 F. Supp. 2d 509, 515 (D. Md. 2009) (explaining that "[i]f the consumer reporting agency has reason to believe that the user had a permissible purpose in obtaining the report, there is no FCRA violation," and that "[i]n interpreting Section 1681b, courts have found that a consumer reporting agency had reason to believe that consumer reports were being accessed for a permissible purpose when the subscriber had certified such limited usage, the primary purpose of the subscriber's business involved accessing reports for a permissible purpose, and the agency was unaware of any impermissible use by the subscriber" (internal quotation marks and citations omitted)).

23

demonstrate that Trans Union acted with malice or willful intent to injure Plaintiff. *See* 15 U.S.C. § 1681h(e) ("[N]o consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information . . . except as to false information furnished with malice or willful intent to injure such consumer."); *Ross*, 625 F.3d at 814 ("The only exception to this bar is a narrow one, requiring proof of 'malice or willful intent to injure [the] consumer.'"). Under South Carolina law, "'[m]alice' is established only if 'the defendant acted with ill will toward the plaintiff or acted recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights.'" *Beattie v. Nations Credit Fin. Servs. Corp.*, 69 F. App'x 585 (4th Cir. 2003) (citing *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 750 (S.C. 2001)).

As support for his defamation claims against Trans Union, Plaintiff relies exclusively upon his belief that Trans Union reported inaccurate information. Plaintiff contends that Trans Union acted willfully and/or maliciously because it reported information it knew was inaccurate. More specifically, Plaintiff alleges:

94. The defendants are guilty of defamation per se, in that defendants intentionally reported and/or allowed third parties to submit inaccurate information which was published and sold to third parties without written permission from the plaintiff that showed account information that was inaccurate, unverified, and/or the correct nature of the accounts as it relates to the plaintiff and his rights. Defendants by reporting the accounts inaccurately, unverified and without the written consent of the plaintiff intended to harm and defame plaintiff's reputation when published to third parties who request for reports to qualify or approve Plaintiff based off of his credit and credit worthiness.

95. As a result of the conduct, action and inaction of Defendants, the Plaintiff suffered damage in one or more of the following forms: a diminished credit score, loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on credit applications, and the mental and emotional distress and pain, anguish, humiliation and embarrassment caused by the inability to obtain financing for everyday expenses, bank account denials, denial of credit and credit card applications, higher interest rates on loans and credit

24

cards that would otherwise be affordable and other damages that may be ascertained at a later date. . . .

(ECF No. 29 at 20.)

However, as described in greater detail above, Trans Union did not inaccurately report information on Plaintiff's credit report. What is more, the record before the Court does not support a finding that Trans Union otherwise acted with ill will or conscious indifference toward Plaintiff's rights; rather, the record indicates that Trans Union corresponded with Plaintiff regarding the disputes. As such, Plaintiff cannot prevail on his defamation claim. *See also Beattie*, 65 F. App'x at 898 ("NationsCredit did not report the alleged foreclosure 'with malice' because, as we have noted, such a report was, at least in NationsCredit's view, accurate."); *White v. Trans Union LLC*, No. 1:24-CV-324 (RDA/LRV), 2025 WL 409660, at *3–4 (E.D. Va. Feb. 5, 2025) ("[B]ecause Plaintiffs failed to plead malice or willful intent, Plaintiffs' defamation claim is preempted by Section 1681h(e)."); *Schmidt v. Fair Collection & Outsourcing, Inc.*, 2018 WL 445434, at *2 (E.D. Va. Jan. 12, 2018) (dismissing defamation, libel, and slander claims as preempted by FCRA); *Englert v. Nationstar Mortg., Inc.*, 2015 WL 9275662, at *5 (E.D. Va. Dec. 18, 2015) ("If a defendant makes a statement believing that it is true, the defendant does not act with malice.").

## B. South Carolina Consumer Protection Code

Plaintiff also alleges that Trans Union violated § 37-20-170 and § 37-20-200[15] of the SCCPC. (ECF No. 29 at 1.) Section 37-20-170 provides, in relevant part:

> (A) If a consumer disputes the accuracy of an item in the consumer's records with a consumer reporting agency, the consumer may give notice

---

[15] Any attempted claim for violation of § 37-20-200 similarly fails because this section explicitly states that "[d]amages provided by this section do not apply to Section 37-20-170." S.C. Code Ann. § 37-20-200. In his response, Plaintiff appears to withdraw any attempted claim under § 37-20-200. (ECF No. 241 at 37.)

25

in writing to the consumer reporting agency specifying in what manner the report is inaccurate and the consumer reporting agency shall reinvestigate the inaccuracy at no charge to the consumer, provide the consumer with sufficient evidence that the information is true and accurate information as it relates to that consumer, and record the current status of the disputed information. The consumer reporting agency shall provide forms for that notice and shall assist a consumer in preparing the notice when requested.

(B) Within thirty days after receiving a notice of inaccuracy, a consumer reporting agency shall deny or admit the inaccuracy to the consumer in writing. If the consumer reporting agency denies the inaccuracy, the consumer reporting agency shall include the following information with the written results of the reinvestigation:

(1) the basis for the denial;

(2) a copy of the consumer's file that is based on the consumer's file as revised as a result of the reinvestigation, including the business name and address of any furnisher of information who was contacted in connection with that information and, if reasonably available, the telephone number of the furnisher;

(3) a notice that, if requested by the consumer, the consumer reporting agency shall provide the consumer with a description of the procedure used by the consumer reporting agency to determine the accuracy and completeness of the information; and

(4) sufficient evidence that the information is true and accurate information as it relates to that consumer.

(C) If the consumer reporting agency admits that the item is inaccurate, it shall correct the item in its records and, on request by the consumer, it shall inform any person who within the last six months has previously received a report containing that inaccurate information.

S.C. Code Ann. § 37-20-170.

Here, Plaintiff alleges that Trans Union violated this provision as follows:

99. At all times, Defendants knowingly, intentionally, reported and allowed to be reported inaccurate information with malice and willful intent to injure the plaintiff, . . . as they failed to provide the basis for their denial of plaintiff's notice of dispute, failed to provide a description of the procedure used by the consumer reporting agency to determine the accuracy and completeness of the information as requested by the consumer, and failed to provide to the consumer, sufficient evidence that the information being

reported is true and 100% accurate information as it related to the consumer and his rights.

100. Defendants failed to correct, delete information found to be inaccurate, unauthorized, unverified, and in a reasonable time instead reinserted the information and failed to reasonably and properly investigate Plaintiff's disputes.

101. Defendants failed to promptly investigate and/or re-investigate the accuracy of the accounts being reported and failed to provide plaintiff with the basis for the denial, provide the consumer with a description of the procedure used to determine the accuracy and completeness of the information, and sufficient evidence that the information is true and accurate information as it relates to plaintiff within thirty days after receiving a notice of inaccuracy/notice of dispute from the plaintiff in violation of [S.C. Code Ann. § 37-20-170(A), (B)(1), and (B)(4)]. . . .

(ECF No. 29 at 21–22.)

Upon review, the Court finds that Plaintiff's claim under S.C. Code. Ann. § 37-20-170 fails because the record shows that Trans Union did not inaccurately report Plaintiff's REV account and/or bankruptcy, and the record contains no evidence that Trans Union acted willfully or negligently, as required by § 37-20-170. *See* S.C. Code Ann. § 37-20-170(I) ("This section is not intended, and must not be construed, to confer liability on a person who acts reasonably and who does not act wilfully [sic] or negligently."). What is more, to the extent Plaintiff's § 37-20-170 claim against Trans Union is based upon duties inconsistent with or beyond those set forth in the FCRA and/or stemming from an alleged failure to accurately report or correct information on Plaintiff's credit report, any such claim would be preempted by the FCRA. *See Strianese v. Diversified Consultants, Inc.*, No. 3:18-cv-00100-RJC-DSC, 2018 WL 7283269, at *3 (W.D.N.C. July 19, 2018) ("[The] FCRA preempts state law claims arising from any failure to accurately report or correct information on a consumer's credit report."), *adopted*, 2019 WL 495585 (W.D.N.C. Feb.

27

8, 2019); *see also* 15 U.S.C. §1681t.[16] As such, the Court **grants** Trans Union's summary judgment motion (ECF. No. 235) as to Plaintiff's claims under the SCCPC.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court **GRANTS** in full Trans Union's motion for summary judgment (ECF No. 235), and this matter is ended.

**IT IS SO ORDERED**.

/s/Bruce H. Hendricks<br>
United States District Judge

March 24, 2026
Charleston, South Carolina

---

[16] Regardless, Plaintiff has again provided no admissible evidence to support his S.C. Code Ann. § 37-20-170 claim or to suggest that he was actually harmed by Trans Union's alleged noncompliance with this statute, as opposed to his undisputed failure to repay his debts and file for bankruptcy. *See Ross*, 759 F.2d 355, 365 (4th Cir. 1985) (noting that conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion).